1  SCHIFF HARDIN LLP
   Stephen M. Hankins (CSB #154886)
2  Jeffrey V. Commisso (CSB #191267)
   One Market, Spear Street Tower, 32nd Floor
3  San Francisco, CA 94105
   Telephone:   (415) 901-8700
4  Facsimile:   (415) 901-8701

5  TROUTMAN SANDERS, LLP[1]
   J. Kirk Quillian
6  A. William Loeffler
   William M. Droze
7  5200 Bank of America Plaza
   600 Peachtree Street, N.E.
8  Atlanta, GA 30308-2216
   Telephone: (404) 885-3000
9  Facsimile:   (404) 885-3900

10 Attorneys for Defendant
   WYNDHAM RESORT DEVELOPMENT CORPORATION,
11 formerly known, and erroneously sued, as TRENDWEST RESORTS, INC.

12

13

14                  UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16 CLARKE and REBECCA WIXON and          Case No.:
   NORMAN and BARBARA WIXON, on
17 behalf of themselves and all others
   similarly situated,                   **NOTICE OF REMOVAL**
18
            Plaintiff,
19
        v.
20
   TRENDWEST RESORTS, INC. (a/k/a
21 Worldmark by Wyndham), and DOES 1-
   50,
22
            Defendants.
23

24

25

26

27

28 _____
          [1] Not admitted in California.  Application for admission *pro hac vice* forthcoming.

ORIGINAL
FILED

MAY - 1 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

JCS

C 07 2361

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:

Pursuant to 28 U.S.C. §§ 1441 and 1453, Defendant Trendwest Resorts, Inc., now known as Wyndham Resort Development Corporation, ("WRDC") hereby files this Notice of Removal showing this Honorable Court the following:

1.    Plaintiffs filed this putative class action against WRDC in the Superior Court of the State of California, County of San Mateo, Case No. CIV461931, on April 2, 2007.  True and correct copies of all process, pleadings and orders on file with the Clerk of the Superior Court of the State of California, County of San Mateo, specifically including copies of the Complaint and Summons, are appended hereto as Exhibit "A".

2.    WRDC first received a copy of the Complaint and Summons on April 5, 2005, by service.[2]  This Notice of Removal is timely filed under 28 U.S.C. § 1446(b).

3.    In their Complaint, Plaintiffs allege that they purchased vacation ownership interests -- or timeshare interests -- from WRDC (then known as Trendwest Resorts, Inc.), in a program called "WorldMark, The Club" ("WTC").  By purchasing those interests, Plaintiffs acquired a certain number of annually renewable "Vacation Credits" which could be used to book accommodations at resorts in the WTC program.  Plaintiffs claim that they subsequently have been injured by a program called "TravelShare," implemented in November 2006 by WRDC and offered to new and existing WTC members.

---

[2] WRDC does not concede that service of process was effective or sufficient, and WRDC reserves the right to assert insufficiency of service of process as an affirmative defense.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

33993.33993-0100
656641.1

NOTICE OF REMOVAL

4.     This action is properly removed to this Court because this Court has original subject matter jurisdiction over the claims brought by Plaintiffs. 28 U.S.C. § 1441(a).   This Court has original diversity subject matter jurisdiction over the claims brought by Plaintiffs, under 28 U.S.C. § 1332(d), implemented by the Class Action Fairness Act of 2005, Pub. L. 109-2, for the following reasons:

a.     Named Plaintiffs Clarke and Rebecca Wixon are residents and citizens of the State of California, and named Plaintiffs Norman and Barbara Wixon are residents and citizens of the State of Colorado. [Complaint, ¶¶ 4, 5.]  WRDC is a corporation incorporated in the State of Oregon, with its headquarters in Redmond, Washington and administrative offices in Orlando, Florida.  [Complaint, ¶ 6]  WRDC is not a citizen of the State of California.  28 U.S.C. § 1332(c)(1).  Therefore, diversity is satisfied, as at least one Plaintiff is a citizen of a different state than the Defendant. 28 U.S.C. § 1332(d)(2)(A).

b.     Plaintiffs seek to have certified a putative plaintiff class of "all persons who purchased WorldMark Premier Vacation Credits before November 5, 2006 and who reside in the State of California or who purchased Vacation Credits in California," excluding persons who have become members of TravelShare.  [Complaint, ¶ 41.]  As defined, the putative class would include more than 97,000 members.

c.     Plaintiffs allege claims for breach of contract, breach of the implied covenant of good faith and fair dealing, declaratory judgment, and violations of California's Consumers Legal Remedies Act ("CLRA"), the Unlawful, Unfair, and Fraudulent Business Practices Act, and the Vacation Ownership and Time-Share Act of 2004.  Plaintiffs' Complaint seeks injunctive relief, declaratory relief, restitution and disgorgement, a

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

constructive trust, compensatory damages, and litigation costs including attorney's fees. [Complaint, p. 21.]

        d.    Plaintiffs' Complaint does not specify the amount of damages sought against WRDC. Nevertheless, taken together, the size of the class defined by Plaintiffs, the broad time span encompassed by Plaintiffs' proposed class definition, and the types and scope of relief sought by Plaintiffs (again, which include compensatory damages, injunctive relief, a constructive trust, disgorgement, restitution, and attorneys' fees), result in the $5 million amount in controversy requirement mandated by 28 U.S.C. § 1332(d)(2) being met. In determining whether the $5 million amount in controversy requirement is satisfied, the claims of the putative class members are to be aggregated. 28 U.S.C. § 1332(d)(6).

        e.    Plaintiffs do not indicate whether the purported damages of the individual class members are relatively large or small. However, since the class as defined includes more than 97,000 members, each member would only have to have the *de minimis* amount of $51.55 in purported damages to meet the $5 million threshold ($5,000,000 ÷ 97,000).[3]

        f.    Plaintiffs allege that the resale value of a Premier Vacation Credit is currently around $0.70. [Complaint, ¶ 27.] As a part of their purported damages, Plaintiffs claim that the TravelShare program "will destroy the resale market for Vacation Credits" held by the putative class. [Complaint, ¶ 38.] The putative class members collectively own more than 880,000,000 Premier Vacation Credits. The $5 million jurisdictional threshold is exceeded if the resale value of each Vacation Credit owned by the putative class is adversely impacted as a result of the conduct alleged in

---

[3] While acknowledging that the amount in controversy threshold has been met under Plaintiffs' allegations and claims for the sake of removal jurisdiction, WRDC denies that it has engaged in any wrongdoing and denies that the named Plaintiffs or members of the putative class have been injured by any conduct on the part of WRDC.

SCHIFFHARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

the Complaint by the miniscule amount of $0.0057 ($5,000,000 ÷ 880,000,000).

       g.     In addition to damages, Plaintiffs seek the imposition of a constructive trust as to "all money collected by [WRDC] from the TravelShare program" and a permanent injunction as to the TravelShare program. [Complaint, p. 21] These forms of relief also must be figured into the amount in controversy. <u>See, e.g.</u>, <u>International Padi, Inc. v. Diverlink</u>, Nos. 03-56478, 03-56788, 2005 U.S. App. LEXIS 14234, at *3 (9th Cir. July 13, 2005) ("in determining the amount in controversy, we may also include the value of the requested injunctive relief to either party"); <u>Cohn v. Petsmart, Inc.</u>, 281 F.3d 837, 840 (9th Cir. 2002).

       h.     Lastly, attorneys' fees must be factored into the amount in controversy. <u>See, e.g.</u>, <u>Galt G/S v. JSS Scandinavia</u>, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). Plaintiffs have prayed for an award of "attorneys' fees and costs of suit, including expert witness fees," and they have alleged a claim under the CLRA, which affords an award of attorneys' fees to successful claimants. [Complaint, Third Cause of Action, and Prayer for Relief, ¶ g] <u>See</u> Cal. Civ. Code § 1780(d).

    5.    For the reasons stated above, this Court has original diversity subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1332(d)(2) because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one Plaintiff is diverse from the Defendant.

    6.    A Removal Notice, together with a copy of this Notice, shall be filed with the Clerk of the Superior Court of the State of California, County of San Mateo, and shall be served on counsel for the named Plaintiffs.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1      WHEREFORE, WRDC hereby removes this case from the Superior

2  Court of the State of California, County of San Mateo, to the United States

3  District Court for the Northern District of California.

4

5  DATED:  May 1, 2007                    SCHIFF HARDIN LLP

6

7                                         By _____

8                                         Jeffrey V. Commisso
                                          Attorneys for Defendant
9                                         WYNDHAM RESORT
                                          DEVELOPMENT CORPORATION

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**CERTIFICATE OF SERVICE**
*Wixon v. Trendwest Resorts, Inc., et al.*
USDC, Northern District of California

I, the undersigned, declare:

I am a resident of the State of California and over the age of eighteen (18) years, and not a party to the within action. I am an employee of Schiff Hardin LLP, and my business address is One Market, Spear Street Tower, Thirty-Second Floor, San Francisco, California 94105.

On the date below, I caused to be served the following document(s):

**NOTICE OF REMOVAL**

on the parties involved addressed as follows:

☒   **BY OVERNIGHT DELIVERY**: By placing the document(s) listed above in a sealed Federal Express envelope, addressed and affixing a pre-paid air bill addressed as set forth below. I am readily familiar with the practice of Federal Express at my place of business to collect and process correspondence and documents for overnight delivery.

Jonathan K. Levine, Esq.
Elizabeth C. Pritzker, Esq.
Daniel T. LeBel, Esq.
GIRARD GIBBS LLP
601 California Street
San Francisco, CA 94108
Tel:  (415) 981-4800
Fax:  (415) 981-4846
*Attorneys for Plaintiffs*

I certify under penalty of perjury that the foregoing is true and correct. Executed on May 1, 2007, at San Francisco, California.

_____
Ling Chiou

# EXHIBIT A

```
                             SAN MATEO SUPERIOR COURT
   4/23/07                      Register of Actions                 Page:      1
--------------------------------------------------------------------------------
   Case Number :     CIV461931
   Case Name ..: CLARKE WIXON, ET AL VS TRENDWEST RESTORTS, ET AL
   Case Type ..: Unlimited Civil        Case Status : Active
   Category ...: BREACH OF CONTRACT
   Jurisdiction: South Court
================================================================================
```

Complaint Type : COMPLAINT                        Filed :   4/02/07

PLAINTIFF(s):                          | DEFENDANT(s):

CLARKE   WIXON                         | TRENDWEST RESORTS, INC.     Not Served
                                       | AKA: WORLDMARK BY WYNDHAM
ATTORNEY:                              |
GIRARD GIBBS LLP                       |
JONATHAN K LEVINE                      |

REBECCA   WIXON                        |
ATTORNEY:                              |
GIRARD GIBBS LLP                       |
JONATHAN K LEVINE                      |

NORMAN   WIXON                         |
ATTORNEY:                              |
GIRARD GIBBS LLP                       |
JONATHAN K LEVINE                      |

BARBARA   WIXON                        |
ATTORNEY:                              |
GIRARD GIBBS LLP                       |
JONATHAN K LEVINE                      |
                                       |
                                       | and DOES   1 through   50

---

```
   Action
    Date        Description                                     Disposition
               ---------------------------
   4/02/07     (S) Complaint filed                                  -
               Receipt: 070403-0030         $320.00
               ---------------------------
               Complex litigation fee of $550.00 received from      -
               CLARKE WIXON (plaintiff).
               Receipt: 070403-0031         $550.00
               ---------------------------
               Affidavit OF PERSONAL DELIVERY by A. DELEON filed    -
               ---------------------------
               30 day summons, issued and filed.                    -
               ---------------------------
               Certificate of COMPLEX CASE DESIGNATION filed by     -
               CLARKE WIXON, REBECCA WIXON, NORMAN WIXON,
               BARBARA WIXON
               ---------------------------
```

```
                          SAN MATEO SUPERIOR COURT
  4/23/07                 Register of Actions                 Page:      2

------------------------------------------------------------------------
Case Number :     CIV461931
Case Name ..: CLARKE WIXON, ET AL VS TRENDWEST RESTORTS, ET AL
Case Type ..: Unlimited Civil          Case Status : Active
Category ...: BREACH OF CONTRACT
Jurisdiction: South Court
========================================================================
  6/05/07   COMPLEX CASE STATUS CONFERENCE
            Dept.: PJLM  Time :  9:00
            ------------------------
  8/03/07   CASE MANAGEMENT CONFERENCE
            Dept.: 2    Time :  9:00

            ****  END OF CASE PRINT  ****
```

1  Jonathan K. Levine (State Bar No. 220289)
2  Elizabeth C. Pritzker (State Bar No. 146267)
   Daniel T. LeBel (State Bar No. 246169)
3  **GIRARD GIBBS LLP**
   601 California Street
4  San Francisco, California 94108
   Telephone: (415) 981-4800
5  Facsimile: (415) 981-4846
6
   Attorneys for Individual and Representative
7  Plaintiffs Clarke and Rebecca Wixon and
   Norman and Barbara Wixon
8

**FILED**
SAN MATEO COUNTY

APR  2 2007

Clerk of the Superior Court
By
DEPUTY CLERK

9
10            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
11                     **COUNTY OF SAN MATEO**
12

| | |
|---|---|
| Clarke and Rebecca Wixon and Norman and Barbara Wixon, on behalf of themselves and all others similarly situated, | Case No.  **CIV 461931** |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| Trendwest Resorts, Inc. (a/k/a Worldmark by Wyndham), and DOES 1-50, | |
| Defendants. | |

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    Plaintiffs Clarke and Rebecca Wixon and Norman and Barbara Wixon (collectively, "Plaintiffs")

2  allege on behalf of themselves and all others similarly situated the following:

3                                          I.

4                         **JURISDICTION AND VENUE**

5        1.      This Court has jurisdiction over this class action pursuant to Article VI, § 10 of the

6  California Constitution.  Pursuant to California Code of Civil Procedure § 410.10 and California

7  Business and Professions Code §§ 17203 and 17204, Defendant Trendwest Resorts, Inc. ("Trendwest")

8  is subject to the jurisdiction of this Court by virtue of its extensive business dealings and transactions

9  within the State of California.  Trendwest is registered to do business in the State of California and, as a

10  seller of timeshares in California, has consented to regulation by the California Department of Real

11  Estate.  Trendwest has approximately fourteen (14) sales offices in California.

12        2.      Venue is proper in this Court pursuant to California Code of Civil Procedure §§ 395 and

13  395.5 and California Business and Professions Code § 17203 because, among other things, Plaintiffs

14  Clarke and Rebecca Wixon reside in San Mateo County and purchased timeshare interests from

15  Trendwest while in San Mateo County, and Trendwest solicits sales of timeshares in San Mateo County.

16        3.      Trendwest has also consented to jurisdiction in California and to venue in San Mateo

17  County pursuant to a Final Judgment and Permanent Injunction entered by this Court in *The People of*

18  *the State of California v. Trendwest Resorts, Inc.*, CIV43529, in November, 2003.

19                                         II.

20                                     **PARTIES**

21        4.      Plaintiffs Clarke and Rebecca Wixon are citizens of California, residing in San Mateo,

22  California.  They purchased timeshare interests (denominated as "Vacation Credits") in Worldmark, The

23  Club ("Worldmark") from Trendwest.  The Wixons currently own 20,000 Premier Vacation Credits,

24  four times the minimum amount required for membership in Worldmark.  They have been damaged and

25  have suffered economic harm due to Trendwest's actions, as more fully described herein.

26        5.      Plaintiffs Norman and Barbara Wixon are citizens of Colorado, residing in Parker,

27  Colorado.  They purchased 10,000 Worldmark Premier Vacation Credits (twice the minimum amount

28  required for membership) from Trendwest while staying at a Trendwest-managed Worldmark resort in

1    Windsor, California.  They have been damaged and have suffered economic harm due to Trendwest's

2    actions, as more fully described herein.

3        6.    Defendant Trendwest Resorts, Inc., also known as Worldmark by Wyndham, is a

4    corporation organized and existing under the laws of the State of Oregon, with its principal place of

5    business located in Redmond, Washington.  Trendwest was created in March 1989 by Jeld-Wen Inc., a

6    privately-held company based in Klamath Falls, Oregon.  Trendwest began selling Worldmark Vacation

7    Credits in October 1989.  In August 1997, Trendwest became a publicly traded company.  In April 2002,

8    Trendwest was acquired by Cendant Corporation ("Cendant"), and became a wholly-owned subsidiary

9    of Cendant, included as a part of Cendant Timeshare Resort Group, Inc.  In May 2006, Cendant

10   Timeshare Resort Group, Inc. was renamed Wyndham Vacation Ownership, Inc.  In August 2006,

11   Cendant spun off Wyndham Worldwide Corp., which included Trendwest as a part of Wyndham

12   Vacation Ownership, Inc.

13       7.    Plaintiffs are presently ignorant of the true names and capacities of defendants sued

14   herein as Does 1-50, inclusive, and therefore sue these defendants by fictitious names.  Plaintiffs will

15   amend this complaint to allege these defendants' true names and capacities when ascertained.  Plaintiffs

16   are informed and believe and thereon allege that each of the fictitiously-named defendants is an aider

17   and abettor, joint tortfeasor, agent, employee or affiliate of Trendwest, legally responsible for the

18   unlawful conduct herein alleged, and that such defendants may be served with process within the State

19   of California.

20                                    **III.**

21                    **SUBSTANTIVE ALLEGATIONS**

22   **A.    The Relationship between Trendwest and Worldmark**

23       8.    Trendwest purchases and develops the properties that become Worldmark resorts.  Upon

24   completion of development, Trendwest transfers complete ownership of the properties to Worldmark.

25   Trendwest retains only the rights to market the properties and to sell the original timeshare interests

26   created by the development of each property.  Trendwest also is the managing agent for all of the

27   Worldmark properties.

28

9.     Worldmark is a non-profit California mutual benefit corporation owned by its members. Worldmark owns, operates and maintains all of the Worldmark properties on behalf of its members. There are currently more than 60 Worldmark resorts in the United States, Canada, Mexico and Fiji. Most Worldmark resorts are within driving distance of a major metropolitan region.

10.    Worldmark is run by its Board of Directors. Worldmark's Board of Directors is, and always has been, dominated and controlled by current and former Trendwest officers and executives. Four of the five Directors currently on Worldmark's Board are employed by or affiliated with Trendwest.

11.    Trendwest profits from the Worldmark development scheme through the sale of Worldmark Vacation Credits and from the management fees it receives from Worldmark. Trendwest maintains the exclusive right to market and sell the original Vacation Credits that are created each time it develops a new resort and ownership is then transferred to Worldmark. The number of Vacation Credits generated by each additional new Worldmark property is determined by the size of the resort, the value of a night at the resort in comparison to other comparable Worldmark resorts, and the number of nights in the year available for usage by Worldmark members. For example, a new resort with 100 rooms, each valued at 1,200 credits per night, would generate 42,900,000 Vacation Credits to be sold by Trendwest (100 rooms x 1,200 credits per room x 358 nights of usage per year (one week is set aside for maintenance)). When purchased through Trendwest, each Vacation Credit currently costs approximately $1.77.

12.    Worldmark pays Trendwest substantial fees for the ongoing management of the Worldmark resorts. At its inception in 1989, Worldmark entered into a management agreement with Trendwest. The management agreement sets forth Trendwest's obligations and rights as the managing agent of the Worldmark resorts and provides that Trendwest will receive a significant management fee from Worldmark in exchange for performing its management duties. The management fee for 2006 was approximately $8.3 million. The management agreement automatically renews each year. Worldmark's Board of Directors, dominated and controlled by Trendwest, has never sought to renegotiate the management agreement or to put the management agreement out for competitive bidding.

3

**B.    Trendwest is Sued by the State Of California**

13.    In October 2003, the California Attorney General and the District Attorney for the County of San Mateo sued Trendwest in the Superior Court in San Mateo County.  The complaint, filed on behalf of the People of the State of California, alleged that Trendwest engaged in the unauthorized sale of goods, products and services in California, that Trendwest made material misrepresentations in the marketing of its products and services, and that Trendwest engaged in unfair and unlawful sales practices.

14.    Specifically, the complaint alleged that Trendwest made material misrepresentations to lure consumers to attend Worldmark sales presentations, that during those sales presentations, Trendwest materially misrepresented the nature, value, terms and conditions of Worldmark membership, that Trendwest failed to disclose that consumers had a right to cancel their contract, and that Trendwest engaged in coercive sales tactics.  The complaint alleged violations of §§ 17200 and 17500 of the Business and Professions Code.

15.    Simultaneous with the filing of the complaint, Trendwest consented to the entry of a Final Judgment and Permanent Injunction.  The Final Judgment permanently enjoins Trendwest from engaging in any of the practices and acts alleged in the complaint and summarized above.  The settlement also required Trendwest to notify new Worldmark members of the Judgment and offer to rescind their Vacation Credit purchases.  Finally, Trendwest paid $1.475 million to the Office of the Attorney General and the San Mateo County District Attorney's office.

**C.    How Worldmark Membership Works**

16.    In a traditional timeshare, a participant typically purchases a fractional interest in a specific piece of property.  The participant owns the right to a specific week of occupancy in a specific unit in a specific resort.  While the participant may be entitled to trade that week for a week in some other resort, what the participant is purchasing is a guaranteed week in a specific unit of a specific resort.

17.    Worldmark is not a traditional timeshare.  Worldmark members do not purchase the right to usage for a specific week or a specific unit or a specific resort.  Instead, Worldmark members purchase Vacation Credits, which can be used (like currency) at any Worldmark resorts (and other

1  affiliated resorts throughout the world) at any time, depending only on availability and whether the
2  member possesses enough Vacation Credits to make the reservation.

3      18.    A person who owns at least 5,000 Worldmark Vacation Credits is a Worldmark member.
4  However, the minimum initial purchase requirement for Worldmark Vacation Credits purchased from
5  Trendwest is 6,000 Vacation Credits. Most Worldmark members own substantially more than 5,000
6  Vacation Credits. There are two types of Vacation Credits – Standard and Premier. Standard Vacation
7  Credits renew annually for 40 years and then expire. They do not include Bonus Time (described
8  below). Premier Vacation Credits renew annually in perpetuity and include Bonus Time. Almost all
9  Worldmark members purchase Premier Vacation Credits. For the purpose of this Complaint, the term
10 "Vacation Credits" refers to Premier Vacation Credits and the term "Worldmark members" refers to
11 those members owning at least 5,000 Worldmark Premier Vacation Credits.

12     19.    One of the fundamental principles, and key selling points, of Worldmark membership is
13 that all members are treated equally in terms of the ability to make reservations, regardless of how many
14 Vacation Credits any particular member may own. While Worldmark members who own more
15 Vacation Credits may be able to book longer or more frequent vacations, no member has priority over
16 another member in making reservations.

17     20.    This "first-come, first-served" policy has been in existence since Worldmark was founded
18 in 1989 and is presented as one of the key membership rights and benefits in all of the uniform
19 governing documents available to prospective and current Worldmark members, including (a) the
20 California Permit filed with the California Department of Real Estate, (b) the official Worldmark
21 Guidelines (Rules), (c) the Worldmark Bylaws, (d) the Declaration of Vacation Owner Program filed
22 and recorded in every county in California (and elsewhere) where a Worldmark resort is located, (e) the
23 Management Agreement with Trendwest, (f) the Security Agreement (Retail Installment Contract), (g)
24 the Owner Understanding, and (h) the Worldmark Owner Education Guide. These documents are
25 hereinafter collectively referred to as the "Governing Documents."

26     21.    The Governing Documents form the basis of the bargain between Trendwest and
27 Worldmark members and are provided to all Worldmark members before the purchase of Vacation
28

1  Credits.  The Governing Documents collectively form the contract between Trendwest and all

2  Worldmark members, and are attached hereto as Exhibit A.

3       22.    The Governing Documents state that Worldmark members can make only two types of

4  reservations – Vacation Credit Reservations and Bonus Time Reservations.  Vacation Credit

5  Reservations can be booked up to 13 months in advance and must be reserved using annual Vacation

6  Credits.  All Worldmark locations and dates are available on a first-come, first-served basis for Vacation

7  Credit Reservations.  Bonus Time Reservations can be booked up to 14 days in advance and must be

8  reserved and paid for in cash based upon a formula established by Worldmark.  The current formula is

9  $.044 for each Vacation Credit that would be required to reserve the same unit under a Vacation Credit

10  Reservation.

11       23.    Bonus Time Reservations serve two important purposes, and are a key membership right

12  and benefit.  First, they enable Worldmark members to use Worldmark resorts on short notice and at a

13  discounted rate without using up their annual Vacation Credits.  This is an important benefit because

14  most Worldmark resorts are within driving distance of major metropolitan regions and can be used by

15  members for short-notice vacations and weekend trips.  In 2006, Worldmark estimated that Bonus Time

16  Reservations equivalent to more than 309 million Vacation Credits would be booked by Worldmark

17  members.  Second, Bonus Time Reservations are paid for in cash, and the payments go directly to

18  Worldmark.  These cash payments are mutually beneficial to Worldmark and Worldmark members

19  because the payments defray the operating costs of the resorts, help keep annual member dues down,

20  and fill rooms that would otherwise go unoccupied.  In 2006, Worldmark estimated that Bonus Time

21  Reservations would result in revenues to Worldmark of approximately $13 million.  All Worldmark

22  locations and dates are available on a first-come, first-served basis for Bonus Time Reservations,

23  assuming that there is availability 14 days or less before travel.

24       24.    Because Worldmark operates more like a hotel chain (with multiple resorts and different

25  types of accommodations available for reservation at any time), and less like a typical timeshare resort,

26  the rights, rules and regulations concerning the Worldmark reservation system are important to

27  Worldmark members.

28

25.     The rights, rules and regulations concerning Worldmark reservations are detailed in the Governing Documents.  None of the Governing Documents allow for any type of reservation other than a Vacation Credit Reservation or a Bonus Time Reservation.  None of the Governing Documents allow any person or entity to reserve time ahead of the schedules for Vacation Credit Reservations and Bonus Time Reservations described above.  The Governing Documents also provide that only Worldmark's members or its Board of Directors can change the reservation guidelines and rules and that Trendwest is required to implement the reservation guidelines and rules established by Worldmark and its members. Finally, the Governing Documents provide that once Trendwest has transferred the properties to Worldmark, Trendwest cannot enter into any transaction which can cause loss of usage at the properties for Worldmark members.

**D.      The Resale and Rental Market for Worldmark Vacation Credits**

26.     Vacation Credits may be transferred entirely or partially at any time and without limitation to the number of transfers, through sale, gift, inheritance, dissolution of marriage, or by any operation of law.  Since Worldmark was founded in 1989, Worldmark members who purchased Vacation Credits on the open market have had the same rights and privileges as members who purchased Vacation Credits directly from Trendwest.  With the advent of the Internet and the increase in the number of Worldmark members in the United States over the years, an active resale market has arisen for Worldmark Vacation Credits.  There are a number of websites devoted exclusively to the resale of Worldmark Vacation Credits.

27.     Because (at least in part) those Worldmark members selling Vacation Credits on the resale market do not have the significant overhead and marketing expenses that Trendwest has, the price per Vacation Credit on the resale market is significantly lower than the price per Vacation Credit purchased from Trendwest.  Currently, Trendwest sells Vacation Credits for approximately $1.77 per Credit, while a Vacation Credit can be purchased on the resale market for about $0.70.  This significant price differential, coupled with the fact that Vacation Credits purchased on the resale market are no different than those purchased from Trendwest, has had a material negative impact on sales of Vacation Credits by Trendwest.

**E.     Trendwest Implements the TravelShare Program**

28.     In early November 2006, Trendwest implemented a program called "TravelShare." In order to join Travelshare, existing Worldmark members must purchase an additional 5,000 Vacation Credits directly from Trendwest, while new Worldmark members must purchase at least 6,000 Vacation Credits directly from Trendwest. Once in TravelShare, the annual dues payable to Trendwest are anywhere from $74 to $530, depending on the number of Vacation Credits owned. This is over and above the annual Worldmark membership dues payable to Worldmark.

29.     The TravelShare program purports to contain a number of benefits for Worldmark members. TravelShare benefits include the ability to make "Fun Time" reservations between 15 and 42 days prior to arrival, membership in RCI (a resort exchange club owned by Cendant/Wyndham), access to various travel-related services offered by other Cendant/Wyndham companies, and other incidental benefits such as e-mail reservation reminders and complimentary movie rentals. There are four tiers of membership in TravelShare: Standard, Elite, Diamond Elite and Platinum Elite. All of the tiers include the basic TravelShare benefits.

30.     Virtually all of the benefits offered by TravelShare already are available to Worldmark members without the significant expense and restrictions imposed by the TravelShare program. For example, membership in RCI is available to all existing and new Worldmark members for an $89 annual fee, which in most instances is significantly less than the annual fee for TravelShare. Similarly, existing Worldmark members already have access to the various travel-related services offered by other Cendant/Wyndham companies.

31.     The one benefit not available to existing Worldmark members is "Fun Time." Fun Time is substantially similar to Bonus Time, with one significant exception. Fun Time reservations can be booked up to 42 days before arrival, as opposed to 14 days before arrival under Bonus Time. Because the ability to make short-term reservations in most of the Worldmark resorts is limited by demand, particularly at the popular resorts near metropolitan regions, the ability of a Worldmark member to make a short-term reservation up to 42 days before arrival is a valuable benefit, as it gives those Worldmark members who join TravelShare a priority over all other Worldmark members in terms of booking short-term reservations.

32.    Fun Time represents a material and detrimental change in Worldmark's fundamental guarantee, namely, the right to reservations on a first-come, first-served basis. This change was instituted unilaterally by Trendwest without the knowledge or consent of Worldmark members and violates the provisions in the Governing Documents setting forth the relative rights and obligations of Trendwest, Worldmark and Worldmark members. Fun Time does not benefit Worldmark or its members. Instead, Fun Time was implemented solely to benefit Trendwest at the expense of existing Worldmark members.

33.    TravelShare benefits Trendwest, to the detriment of Worldmark members, in a number of ways. First, proceeds from the sale of Fun Time go to Trendwest, not Worldmark. As a result, Worldmark will see decreased revenues from the sale of Bonus Time reservations, which may in turn increase the annual dues for existing Worldmark members to compensate for the lower Bonus Time revenues. Second, while Trendwest claims that none of the expenses required to implement TravelShare will be paid by Worldmark, in fact, in order to provide TravelShare benefits at the various Worldmark resorts, Trendwest uses Worldmark-funded employees and has not hired separate employees at its own expense. Third, Fun Time places Trendwest and TravelShare members ahead of Worldmark members in terms of making short-term reservations, in violation of the longstanding Worldmark guarantee and right of first-come, first-served reservations. Fourth, there are no provisions in any of the Governing Documents allowing for another form of reservation other than either a Vacation Credit reservation or a Bonus Time reservation. In other words, Fun Time reservations are neither contemplated nor permitted under the Governing Documents. Fifth, Trendwest has designed TravelShare to create an artificial distinction between Vacation Credits purchased from Trendwest and those purchased on the resale market. This was done intentionally to force potential Vacation Credit purchasers to pay more for Vacation Credits from Trendwest, rather than less on the resale market. This artificial distinction created by TravelShare will further diminish the value of the Vacation Credits held by existing Worldmark members.

34.    TravelShare (i) forces existing Worldmark members to incur significant one-time and recurring costs to maintain their first-come, first-served access to short-term reservations, and (ii)

1    imposes retroactive restrictions on the resale and use of Vacation Credits to the detriment of existing

2    Worldmark members.

3         35.    Regardless of how many Vacation Credits an existing Worldmark member currently

4    owns, to become a member of TravelShare and continue to have first-come, first-served access to short-

5    term reservations, the Worldmark member must purchase an additional 5,000 Vacation Credits directly

6    from Trendwest. This essentially forces existing Worldmark members to purchase an entirely new

7    membership at the inflated Trendwest price rather than the reduced resale market price. Once a

8    Worldmark member has purchased the 5,000 additional Vacation Credits from Trendwest and become a

9    member of TravelShare, the member must pay a monthly "TravelShare" fee to Trendwest on top of the

10   regular monthly Worldmark dues. If a Worldmark member fails at any time to pay the monthly

11   TravelShare fee, the member loses his membership in TravelShare. If the member then wants to rejoin

12   TravelShare again, the member must purchase another 5,000 Vacation Credits directly from Trendwest.

13        36.    While Vacation Credits are freely transferable, TravelShare is not. A Worldmark member

14   who has purchased 5,000 additional Vacation Credits from Trendwest to join TravelShare loses the right

15   to sell, rent, borrow or otherwise transfer those Vacation Credits to anyone but a family member,

16   without losing membership in TravelShare. Thus, a Worldmark member who must go to the significant

17   expense of joining TravelShare simply to maintain his or her right to have first-come, first-served access

18   to short-term reservations is, as a result, giving up the right to sell or rent all of his/her Vacation Credits

19   on the open-market.

20        37.    Future potential Worldmark members who purchase Vacation Credits on the open market

21   also cannot join TravelShare, even if they thereafter purchase additional Vacation Credits directly from

22   Trendwest.

23        38.    In short, the restrictions in the TravelShare program will destroy the resale market for

24   Vacation Credits and impede existing Worldmark members from freely transferring their Vacation

25   Credits, as they have the right to do. The restrictions force prospective purchasers of Vacation Credits

26   to purchase Vacation Credits exclusively from Trendwest (at a considerably higher price), rather than on

27   the resale market. As a result of TravelShare, the Vacation Credits owned by existing Worldmark

28   members now are worth less than those sold by Trendwest.

**IV.**

**TOLLING OR NON-ACCRUAL OF STATUTE OF LIMITATIONS**

39.     Any applicable statutes of limitations have been tolled or have not run because Trendwest knowingly and actively concealed and denied the facts as alleged herein.  Trendwest had actual or constructive knowledge of the wrongful courses of action alleged here.  Plaintiffs and Class members have been kept in ignorance of information essential to the pursuit of their claims, without any fault or lack of diligence on their part.  Plaintiffs and Class members did not discover the facts constituting Defendants' unlawful business practices until a date within the limitations period governing this action, and promptly exercised due diligence by filing this complaint.  Plaintiffs and Class members were not at fault for failing to discover Trendwest's misconduct sooner, and had no actual or presumptive knowledge of the facts of Trendwest's misconduct to put them on inquiry notice.  Plaintiffs and Class members could not reasonably have discovered Trendwest's misrepresentations and/or material omissions before November 5, 2006.  Therefore, their claims accrued on that date, and/or any applicable statutes of limitations were tolled until that date.

40.     Trendwest was and is under a continuing duty to disclose all material facts concerning ownership interests in Worldmark to Plaintiffs and Class members.  Because of Trendwest's concealment of material information concerning Worldmark, Trendwest is estopped from relying on any statute of limitations defense.

**V.**

**CLASS ACTION ALLEGATIONS**

41.     Plaintiffs bring this action on behalf of themselves and all other similarly situated persons as members of a Class defined as follows:  All persons who purchased Worldmark Premier Vacation Credits before November 5, 2006 and who reside in the State of California or who purchased Vacation Credits in California (the "Class").  Excluded from the Class are members of Trendwest's TravelShare program, Trendwest, any entity in which Trendwest has or had a controlling interest, any entity which has or had a controlling interest in Trendwest, any officers or directors of Trendwest, the legal representatives, heirs, successors, and assigns of Trendwest, any Trendwest-affiliated members of the Board of Directors of Worldmark, and any judge assigned to this action and his or her immediate family.

11

42.   This action has been brought and may be properly maintained pursuant to the provisions of California Code of Civil Procedure § 382, California Civil Code § 1781, and Rule 23 of the Federal Rules of Civil Procedure, and case law thereunder, to which the California trial courts have been directed by the California Supreme Court to look for guidance.

43.   **Numerosity** -- Cal. Code Civ. Proc. § 382; Cal. Civ. Code § 1781(b)(1); Fed. R. Civ. P. 23(a)(1):  Members of the Class are so numerous and widely dispersed that joinder of them in one action is impracticable.  Trendwest promotes, markets and sells Worldmark Vacation Credits to consumers throughout California and manages fifteen Worldmark resorts in California, many of which have Trendwest sales offices.  While the precise number of Class members is unknown to Plaintiffs at this time, the Class is believed to number in the tens of thousands.  Because Trendwest manages Worldmark, and Worldmark maintains a list of all of its current members and their mailing addresses, the identity of each and every Class member is readily ascertainable from information and records in Trendwest's possession or control.  Class members may be notified of the pendency of this action by first-class or electronic mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.

44.   **Common Questions of Fact and Law** -- Cal. Code Civ. Proc. § 382; Cal. Civ. Code § 1781(b)(2); Fed. R. Civ. P. 23(a)(2), (b)(3):  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

      (a)    Whether the Governing Documents create a contract between Trendwest and Worldmark members;

      (b)    Whether Trendwest has the right under the Governing Documents to unilaterally impose TravelShare upon existing Worldmark members;

      (c)    Whether Trendwest's unilateral imposition of TravelShare on existing Worldmark members constitutes a breach of contract by Trendwest;

      (d)    Whether Trendwest's unilateral imposition of TravelShare on existing Worldmark members constitutes a breach of the covenant of good faith and fair dealing by Trendwest;

(e)  Whether TravelShare causes a loss of usage of Worldmark resorts by Worldmark members;

(f)  Whether TravelShare reduces the availability of Bonus Time reservations for existing Worldmark members;

(g)  Whether TravelShare restricts the free transfer of Vacation Credits by Worldmark members;

(h)  Whether TravelShare diminishes the value of Vacation Credits owned by existing Worldmark members;

(i)  Whether the Governing Documents are materially misleading and/or conceal material information concerning Worldmark membership;

(j)  Whether Trendwest failed to disclose, inadequately disclosed, or concealed material information concerning Worldmark membership and the purchase and/or ownership of Worldmark Vacation Credits;

(l)  Whether Trendwest's sales, advertising and marketing practices in connection with the sale of Worldmark Vacation Credits are likely to deceive a reasonable person;

(m)  Whether Trendwest's business practices, as described herein, are unlawful, unfair and/or fraudulent;

(n)  Whether Trendwest's business practices, as described herein, violate the Final Judgment and Permanent Injunction entered in *The People of the State of California v. Trendwest Resorts, Inc.*, CIV43529, in November, 2003;

(o)  Whether Trendwest's wrongful conduct damaged Plaintiffs and Class members; and

(p)  Whether Plaintiffs and Class members are entitled to declaratory, injunctive and/or equitable relief.

45.  **Typicality** -- Cal. Civ. Code § 1781(b)(3); Fed. R. Civ. P. 23(a)(3):  Plaintiffs' claims are typical of the claims of the members of the Class in that Plaintiffs and all Class members purchased

Premier Vacation Credits pursuant to uniform offering documents prior to November 5, 2006, currently

own those Vacation Credits, and are not members of TravelShare.

46.    **Adequacy** -- Cal. Civ. Code § 1781(b)(4); Fed. R. Civ. P. 23(a)(4):  Plaintiffs will fairly

and adequately protect the interests of the Class in that Plaintiffs have no interests that are adverse or

antagonistic to those of the Class.  Plaintiffs have retained counsel competent and experienced in

complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

47.    **Superiority** -- Cal. Code Civ. Proc. § 382; Fed. R. Civ. P. 23(b)(3): A class action is

superior to all other available means for the fair and efficient adjudication of this controversy.  The

economic harm suffered by each individual Class member may be limited.  Given the size of individual

Class members' claims, the expense and burden of individual litigation make it economically infeasible

and procedurally impracticable for Class members to seek redress individually for the wrongs done to

them.  The likelihood of individual Class members prosecuting separate claims is exceedingly remote,

and even if the members of the Class could afford individual litigation, given the size of the Class, the

court system could not.  Individual litigation increases the delay and expense to all parties and the court

system presented by the complex legal and factual issues of the case.  By contrast, a class action will

present far fewer management difficulties, promote an orderly and expeditious administration and

adjudication of the class claims, foster economies of scale, ensure uniformity of decisions, and provide

comprehensive supervision by a single court.

48.    In the alternative, the Class may be certified because:

(a)    the prosecution of separate actions by the individual members of the Class would

create a risk of inconsistent or varying adjudication with respect to individual

Class members which would establish incompatible standards of conduct for

Trendwest;

(b)    the prosecution of separate actions by individual Class members would create a

risk of adjudications with respect to them which would, as a practical matter, be

dispositive of the interests of other Class members not parties to the adjudications

or substantially impair or impede their ability to protect their interests; and

(c)     Trendwest has acted or refused to act on grounds generally applicable to the
Class, thereby making appropriate final and injunctive relief with respect to the
members of the Class as a whole.

## FIRST CAUSE OF ACTION

### Breach of Contract

49.     Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.
These claims are brought on behalf of the Class against Trendwest.

50.     At all relevant times, a contract existed between Plaintiffs and Class members, on the one
hand, and Trendwest, on the other.  The contract is embodied in writing in the Governing Documents,
which are uniform in all material respects for Plaintiffs and Class members.

51.     Pursuant to the Governing Documents, Trendwest agreed, among other things, to:

(a)     Enter into no transaction which would cause a loss of usage of the Worldmark
resorts by Worldmark members;

(b)     Maintain no ownership interest in the Worldmark resorts once they are
transferred to Worldmark;

(c)     Manage the Worldmark resorts for the benefit of Worldmark members;

(d)     Honor all advance and short-term reservations on a first-come, first-served
basis;

(e)     Honor only two types of reservations (Vacation Credits and Bonus Time),
unless directed to do otherwise by Worldmark and its members;

(f)     Implement the reservation guidelines and rules established by Worldmark and
its members;

(g)     Permit the free transferability of Vacation Credits by Worldmark members;

(h)     Provide for only two forms of ownership of Vacation Credits; and

(i)     Manage and operate Worldmark in manner consistent with the Governing
Documents.

52.     By its actions alleged herein, Trendwest breached its contract with Plaintiffs and Class
members by unilaterally imposing Travelshare on Worldmark members, impairing the ability of

1   Worldmark members to use Worldmark resorts, exercising a continued ownership interest in the

2   Worldmark properties, managing the Worldmark resorts for its own benefit rather than for the benefit of

3   Worldmark members, giving priority to TravelShare members for short-term reservations, honoring

4   more than two types of reservations without the approval of Worldmark and its members, implementing

5   a reservations system not consistent with the guidelines and rules established by Worldmark and its

6   members, inhibiting the free transfer of Vacation Credits by Worldmark members, taking actions to

7   diminish the value of the Vacation Credits owned by Worldmark members, and generally managing and

8   operating Worldmark for its own benefit rather than for the benefit of Worldmark and its members in a

9   manner inconsistent with the Governing Documents.

10        53.    At all times, Plaintiffs and Class members fully performed under the Governing

11   Documents.

12        54.    Because of Trendwest's breach of its contract with Plaintiffs and Class members,

13   Plaintiffs and Class members have suffered damage, in an amount to be determined at trial.

14                              **SECOND CAUSE OF ACTION**

15          **Breach of the Implied Covenant of Good Faith and Fair Dealing**

16        55.    Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

17   These claims are brought on behalf of the Class against Trendwest.

18        56.    Under an implied term of the contract between Trendwest and Plaintiffs and Class

19   members, identical in all material respects and necessary to carry out the intent of the parties, Plaintiffs

20   and Class members reasonably expected that they would always have access to Worldmark's reservation

21   system on a first-come, first-served basis for all reservations, that there would never be more than two

22   types of reservations unless agreed to by a majority of the Worldmark members, that Trendwest would

23   take no action that might cause a loss of usage by Worldmark members, and that their Vacation Credits

24   would be equal in all respects to the Vacation Credits offered for sale by Trendwest.

25        57.    By its actions, described above, Trendwest has deprived Plaintiffs and Class members of

26   the benefit of their bargains, and breached the implied covenant of good faith and fair dealing inherent in

27   the contracts between Trendwest and all Worldmark members.  Trendwest has unilaterally imposed

28   Travelshare on Worldmark members, impaired the ability of Worldmark members to use Worldmark

16

resorts, exercised a continued ownership interest in the Worldmark properties, managed the Worldmark resorts for its own benefit rather than for the benefit of Worldmark members, given priority to TravelShare members for short-term reservations, honored more than two types of reservations without the approval of Worldmark and its members, implemented a reservations system not consistent with the guidelines and rules established by Worldmark and its members, inhibited the free transfer of Vacation Credits by Worldmark members, taken actions to diminish the value of the Vacation Credits owned by Worldmark members, and generally managed and operated Worldmark for its own benefit rather than for the benefit of Worldmark and its members in a manner inconsistent with the Governing Documents.

58.     Because of such breach, Plaintiffs and Class members have suffered damages, in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### Violation of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*

59.     Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein. These claims are brought on behalf of the Class against Trendwest.

60.     Trendwest is a "person" within the meaning of Civil Code §§ 1761(c) and 1770, and provides "goods" or "services" within the meaning of Civil Code §§ 1761(b) and 1770.

61.     Plaintiffs and members of the Class are "consumers" within the meaning of Civil Code §§ 1761(d) and 1770.

62.     Each purchase of WorldMark Vacation Credits constitutes a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.

63.     As set forth herein, Trendwest's acts, practices, representations, omissions, and courses of conduct with respect to the marketing and sale of Worldmark Vacation Credits and management of Worldmark violate § 1770 of the Consumers Legal Remedies Act in that Trendwest: (a) represented that Worldmark Vacation Credits and Worldmark membership have characteristics, uses, and benefits which they do not have; (b) represented that Worldmark Vacation Credits and Worldmark membership are of a particular standard, quality, or grade when they are of another; (c) advertised Worldmark Vacation Credits and Worldmark membership with intent not to sell them as advertised; (d) represented that the purchase of Worldmark Vacation Credits and Worldmark membership confers or involves rights,

1   remedies, or obligations which it does not have or involve; (e) represented that the purchase of

2   Worldmark Vacation Credits and Worldmark membership was in accordance with previous

3   representations, when it was not; and (f) inserted unconscionable provisions in the Governing

4   Documents.

5       64.    Pursuant to the provisions of Civil Code § 1780, Plaintiffs and Class members seek an

6   order for declaratory relief, an order enjoining the methods, acts and practices complained of herein, and

7   any other relief the Court deems proper.

8   **FOURTH CAUSE OF ACTION**

9   **Unlawful, Unfair and Fraudulent Business Practices in Violation of**
10  **Cal. Bus. & Prof. Code §§ 17200,** *et seq.*

11      65.    Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

12  These claims are brought on behalf of the Class against Trendwest.

13      66.    The acts and practices engaged in by Trendwest, and described herein, constitute

14  unlawful, unfair and/or fraudulent business practices, in that: (a) Trendwest's practices violate the letter

15  and policy of the Consumers Legal Remedies Act; and/or (b) Trendwest's practices violate the Final

16  Judgment and Permanent Injunction entered in *The People of the State of California v. Trendwest*

17  *Resorts, Inc.*, CIV43529, in November, 2003; and/or (c) the justification for Trendwest's conduct is

18  outweighed by the gravity of the consequences to Plaintiffs and Class members; and/or, (d) Trendwest's

19  conduct is immoral, unethical, oppressive, unscrupulous or substantially injurious to Plaintiffs and Class

20  members; and/or, (e) the conduct of Trendwest constitutes fraudulent, untrue or misleading actions in

21  that such conduct has a tendency to deceive Plaintiffs and Class members, and/or (f) Trendwest's

22  conduct violates and contradicts California's prohibition and policies against bad faith and unfair

23  dealing, and/or (g) Trendwest's practices violate the letter and policy of the Vacation Ownership and

24  Time-Share Act of 2004.  Such conduct violates California Business & Professions Code §§ 17200, *et*

25  *seq.*

26      67.    Plaintiffs and Class members have suffered injury in fact and have lost money or property

27  as a result of Trendwest's unlawful, unfair and fraudulent business practices, as described herein.

28      68.    Pursuant to California Business and Professions Code § 17203, Plaintiffs and Class

members therefore are entitled to equitable relief, including restitution, disgorgement of all profits

18

1    accruing to Trendwest because of its unlawful, unfair, and fraudulent business practices, and a

2    permanent injunction enjoining Trendwest from engaging in the unlawful, unfair, and fraudulent acts

3    and practices described herein.

4        69.    Trendwest's unlawful, unfair and fraudulent business acts and practices are described

5    herein and include, but are not limited to, the following:

6        (a)    Trendwest misrepresented and/or failed to disclose material facts concerning Worldmark

7            and Worldmark Vacation Credits;

8        (b)    Trendwest unilaterally imposed additional obligations upon existing Worldmark

9            members;

10       (c)    Trendwest unilaterally altered the terms and features of Worldmark membership;

11       (d)    Trendwest breached its contract with existing Worldmark members, as described in

12            Paragraphs 51 and 52 above;

13       (e)    Trendwest diluted the use and value of WorldMark Vacation credits owned by existing

14            Worldmark members who have not signed up for the TravelShare program;

15       (f)    Trendwest falsely represented that all WorldMark members held equal rights to make

16            Vacation Credit Reservations and Bonus Time Reservations on a first-come, first-

17            reserved basis within time periods that applied to all Worldmark members equally; and

18       (g)    Trendwest violated Paragraphs 3(K), 3(M), 3(N), and 3(O) of the Final Judgment and

19            Permanent Injunction entered in *The People of the State of California v. Trendwest*

20            *Resorts, Inc.*, CIV43529, in November, 2003, which forbids: "failing to disclose that an

21            association decision could result in a diminution of vacation credit values," materially

22            misrepresenting the "availability of services," "materially misrepresenting the quantity of

23            vacation credits sufficient to obtain any other benefit or service," and "materially

24            misrepresenting the ability or ease with which an owner may make a reservation."

## FIFTH CAUSE OF ACTION

### For Declaratory Relief Pursuant to Code of Civil Procedure § 1060

27       70.    Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

28    These claims are brought on behalf of the Class against Trendwest.

71.     An actual controversy exists between the parties relating to the legal rights and duties of Plaintiffs and Class members and Trendwest for which Plaintiffs and Class members desire a declaration of their rights.

72.     A declaratory judgment is necessary to determine Plaintiffs' and Class members' rights and Trendwest's duties in connection with Trendwest's TravelShare program, including, among other things, a declaration that the TraveShare program constitutes a breach of contract by Trendwest, that Trendwest may not unilaterally impose the TravelShare program on Worldmark members, and that Trendwest may not alter the features or benefits of Worldmark membership without the express consent of Worldmark members.

## SIXTH CAUSE OF ACTION

### Violation of the Vacation Ownership and Time-Share Act of 2004, Cal. Bus. & Prof. Code § 11210, *et seq.*

73.     Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein. These claims are brought on behalf of the Class against Trendwest.

74.     Plaintiffs are owners of time-share interests purchased in California and are permitted to sue under the Time-Share Act by California Business & Professions Code § 11285.

75.     Trendwest is a developer and a marketer of time-share interests as well as a manager of time-share interests and, therefore, a proper defendant under the Time-Share Act, Cal. Bus. & Prof. Code § 11285.

76.     As set forth herein, Trendwest's acts, practices, representations, omissions, and courses of conduct with respect to the marketing and sale of Worldmark Vacation Credits and management of Worldmark violate § 11245(a)(3) of the Vacation Ownership and Time-Share Act of 2004 in that Trendwest materially misrepresented the nature, qualities, or characteristics of the offered time-share plan by describing memberships in Worldmark as holding equal rights to all other memberships with respect to the use of Bonus Time.

77.     Pursuant to the provisions of Civil Code § 11285, Plaintiffs and Class members seek an order for declaratory relief, an order enjoining the methods, acts and practices complained of herein, and any other relief the Court deems proper.

1

## VI.

2

## **PRAYER FOR RELIEF**

3      WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for

4  judgment against Trendwest as follows:

5      a.      For an order certifying the proposed Class herein under California Code of Civil

6  Procedure § 382 and California Civil Code § 1781, and appointing Plaintiffs and their counsel of record

7  to represent said Class;

8      b.      For an order that Trendwest be permanently enjoined from engaging in the unlawful

9  activities and practices complained of herein, including specifically the TravelShare program;

10     c.      For an order awarding restitution and disgorgement of all money paid by Plaintiffs and

11  Class members because of Trendwest's unlawful, unfair, and/or fraudulent business practices

12  complained of herein;

13     d.      For an order imposing a constructive trust for the benefit of Plaintiffs and Class members

14  upon all money collected by Trendwest from the TravelShare program;

15     e.      For declaratory relief as this Court deems appropriate;

16     f.      For actual damages to be awarded to Plaintiffs and Class members;

17     g.      For attorneys' fees and costs of suit, including expert witness fees;

18     h.      For an order awarding pre-judgment and post-judgment interest as prescribed by law; and

19     i.      For such other and further relief as this Court may deem just and proper.

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

1

**JURY DEMAND**

2          Plaintiffs hereby demand a trial by jury on all claims so triable.

3

4    DATED: April 2, 2007                    Respectfully submitted,

5

6                                            **GIRARD GIBBS LLP**

7

8                                            By: _____

9                                                    Jonathan K. Levine

10                                           Elizabeth C. Pritzker
                                             Daniel T. LeBel
11                                           601 California Street
                                             San Francisco, California 94108
12                                           Telephone: (415) 981-4800
                                             Facsimile: (415) 981-4846
13

14                                           Attorneys for Individual and Representative
                                             Plaintiffs Clarke and Rebecca Wixon and Norman
15                                           and Barbara Wixon

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLASS ACTION COMPLAINT**

**EXHIBIT A-1**

STATE OF CALIFORNIA

DEPARTMENT OF REAL ESTATE
SUBDIVISIONS

**RESCISSION RIGHTS** *(Time-Share)*

RE 615 (Rev. 5/05)

*This notice must be attached to the front of each Time Share Public Report given to a prospective purchaser*

### Notice of Cancellation Rights

**You may cancel the purchase of the time-share interest(s) in the time-share plan identified below without any penalty or obligation and are legally entitled to the return of all money and other considerations that you have given toward the purchase. If you decide to cancel your purchase, you must notify the developer in writing of your intent to cancel within seven calendar days of receipt of the public report or the date you sign the purchase contract, whichever date is later. Your notice of cancellation shall be effective upon the date sent and shall be sent to the developer at the address or facsimile number provided in your purchase contract. Any attempt to obtain a waiver of your cancellation right is void and of no effect.**

*Refer to §11239 of the Business and Professions Code.*

| Election to Cancel the Sale of a Time-Share Interest(s) | |
|---|---|
| 1.   NAME OF DEVELOPER<br><br>TRENDWEST RESORTS, INC | FAX NUMBER<br><br>(425) 818-7020 |
| 2.   ADDRESS OF DEVELOPER<br><br>**3655 131ST AVENUE SE, FOURTH FLOOR, BELLEVUE, WA  98006** | |
| 3.   NAME OF TIME-SHARE PLAN<br><br>WORLDMARK, THE CLUB | DRE REGISTRATION FILE #<br><br>001058HS-AE3 |
| *I hereby elect to cancel my purchase of time-share interest(s) in the above named time-share plan* | |
| OWNER'S NUMBER<br>➢ | |
| SIGNATURE<br>➢ | PRINTED NAME | DATE |
| SIGNATURE<br>➢ | PRINTED NAME | DATE |

*Note:*
- *Lines 1, 2, and 3 must be completed by the Developer prior to attaching this notice to the public report.*
- *This notice must be attached to the front of each Time-Share Public Report given to a prospective purchaser.*

*Department of Real Estate*
*of the*
*State of California*

### FINAL  TIME-SHARE PLAN PUBLIC REPORT
### MULT-SITE TIME-SHARE PLAN
### NON-SPECIFIC TIME-SHARE INTEREST

*In the matter of the application of*

**TRENDWEST RESORTS, INC.**
**an Oregon Corporation**

| | |
|---|---|
| FILE NO: | **001058HS- AE3** |
| ISSUED: | **MARCH 28, 1991** |

*For a Time-Share Plan Public Report on*

**WORLDMARK, THE CLUB**

**A California nonprofit mutual benefit corporation**

| | |
|---|---|
| AMENDED: | **AUGUST 16, 2006** |
| EXPIRES: | **DECEMBER 26, 2010** |

JEFF DAVI
Real Estate Commissioner

By _____
Deputy Commissioner

---

## CONSUMER INFORMATION

❖  **This Report is not a recommendation or endorsement of the time-share plan; It is informative only.**

❖  **Buyer or lessee must sign that (s)he has received and read this report.**

This Permit expires on the date shown above.  All material changes must be reported to the Department of Real Estate. *(Refer to Section 11226(f) of the B&P Code; and Chapter 6, Title 10 of the California Administrative Code, Regulation 2806.)* Some material changes may require amendment of the Public Report.

Section 12920 of the California Government Code provides that the practice of discrimination in housing accommodations on the basis of race, color, religion, sex, marital status, national origin, physical handicap or ancestry, is against public policy.

Under Section 125.6 of the B&P Code, California real estate licensees are subject to disciplinary action by the Real Estate Commissioner if they discriminate or make any distinction or restriction in negotiating the sale or lease of real property because of the race, color, sex, religion, ancestry, national origin, or physical handicap of the client.  If any prospective buyer or lessee believes that a licensee is guilty of such conduct, (s)he should contact the Department of Real Estate.

*Read the entire report on the following pages before contracting to buy or lease an interest in this time-share plan.*

RE 618C (Rev. 7/05)

STATE OF CALIFORNIA

DEPARTMENT OF REAL ESTATE
SUBDIVISIONS

**General Information**
*(Time Share Plan)*

RE 646A

The project described in this Public Report is known as a Time-Share Plan.  Read the Public Report carefully for more information about the type of Time-Share Plan.  The Time-Share Plan includes common areas and facilities which will be owned and/or operated by an owners' association and, in most cases, includes a beneficial interest in the areas and facilities.  Since membership in the association is mandatory, you should be aware of the following information before you purchase.

*Governing instruments ...*
Your interest in this development and your rights and remedies as a member of its association will be controlled by governing instruments which generally include a Declaration of Restrictions (also known as CC&R's), Articles of Incorporation (or association) and Bylaws. The provisions of these documents are intended to be, and in most cases are, enforceable in a court of law. Study these documents carefully before entering into a contract to purchase a time-share interest.

*Assessments ...*
In order to provide funds for operation and maintenance of the common facilities, the association will levy assessments against your time share interest.  If you are delinquent in the payment of assessments, the association may enforce payment through court proceedings or your interest may be liened and sold through the exercise of a power of sale.  The anticipated income and expenses of the association, including the amount that you may expect to pay through assessments, are outlined in the proposed budget.  Ask to see a copy of the budget if the subdivider has not already made it available for your examination.

*Owners' association ...*
A time share owners' association provides a vehicle for the ownership and use of recreational and other common facilities which were designed to attract you to buy in this Time-Share Plan.  The association will also, through its Board of Directors, employ an agent to manage the day-to-day operation of the Time-Share Plan.  You should con-

sider taking an active part in the affairs of the association to insure that the integrity of your time share interest is maintained.  You can accomplish this by being elected to and serving as a member of the Board of Directors.  Otherwise, your control over the operation of the time share program is limited to your vote as a member of the association.  There are actions that can be taken by the governing body with a vote of the members of the association which can have a significant impact upon the operation of the time share program.

*Association control ...*
Until there is sufficient number of purchasers of interest in a Time-Share Plan to elect a majority of the governing body, it is likely that the developer will effectively control the affairs of the association.  It is frequently necessary and equitable that the developer does so during the early stages of the project.  It is vitally important to the owners of individual Time-Share Plan interests that the transition from developer to interest-owner control be accomplished in an orderly manner and in a spirit of cooperation.

*Overall consideration ...*
When contemplating the purchase of an interest in a Time-Share Plan, you should consider factors beyond the attractiveness of the dwelling units themselves. Study the governing instruments and give careful thought to your costs as well as the operation and management of the project.

## TABLE OF CONTENTS

| Item # | Item Name: | Page |
|--------|-----------|------|
| 1. | Name and Address of the Developer | 4 |
| 2. | Interest To Be Offered | 5 |
| 3. | Description of Duration and Operation of Timeshare Plan | 5 |
| 4. | Insurance Coverage | 5 |
| 5. | Title | 5 |
| 6. | Description of Each Component Site | 6 |
| 7. | Number of Accommodation and Time-share Interests | 6 |
| 8. | Type of Accommodation | 6 |
| 9. | Description of Amenities | 7 |
| 10. | Description of Incomplete Amenities | 7 |
| 11. | Historical Occupancy Report | 7 |
| 12. | Additions, Substitution and Deletion | 7 |
| 13. | Reservation System | 7 |
| 14. | Liens, Defects or Encumbrances | 8 |
| 15. | Managing Entity | 8 |
| 16. | Annual Budget | 8 |
| 17. | Current Fees and Charges | 9 |
| 18. | Initial or Specific Fees Due at Closing | 11 |
| 19. | Financing Offered | 11 |
| 20. | Bankruptcies, Pending Civil or Criminal Suits | 12 |
| 21. | Transferability of Vacation Credits | 12 |
| 22. | Purchase Money Handling | 12 |
| 23. | External Exchange Participation Program | 12 |
| 24. | Other | 13 |
| | EXHIBITS: | |
| Table 1 | Resorts Description | |
| Table 2 | Vacation Credit Summary | |
| Table 3 | Occupancy Report | |
| Exhibit A | WorldMark 2006 Budget | |

File No. 001058HS-AE3

**TIMESHARE PLAN DISCLOSURES (RE622I 6/05):** This timeshare plan is registered with the California Department of Real Estate as required by law. Registration does not constitute an endorsement of the timeshare plan and the California Department of Real Estate has not passed on the merits of the timeshare property being offered for sale.

As a general rule, a developer's promotional and marketing costs in a timeshare offering constitute a major portion of the purchase price. Should you purchase a timeshare interest, you may find it difficult to resell your timeshare interest without the use of an extensive promotional and advertising campaign or use of a sales organization.

You are urged to visit and inspect the timeshare property before entering into an agreement to purchase. You should determine for yourself that the property meets your personal requirements and expectations. Misunderstanding more easily arises as to the desirability of the property when this is not done. You should also carefully review the purchase contract to ensure that any promises of importance to you are included in the contract.

Failure to pay the assessments levied by the timeshare association will prevent you from occupying and using the timeshare accommodation and result in a lien on your interest. In the event of any other breach by a timeshare owner of any of the project's governing documents, the timeshare association may, after notifying the timeshare owner, suspend such owner's right to occupy his accommodation.

The developer must, prior to close of escrow, provide you with a notice describing any and all material changes to the offering since the date of issuance of this public report. (See Section 11226(f)(2) of the Business & Professions Code.)

The ability of timeshare owners to control operations and management of the timeshare plan may be severely limited as long as the developer controls the association or management or the reservation system. You should thoroughly review the governing documents for the timeshare plan so that you will have a better understanding of your rights as a member of the timeshare plan association.

You have a duty to pay assessments even if you are unsuccessful in reserving an accommodation.

1. **Name and Address of the Developer:** The developer of this offering is Trendwest Resorts, Inc. ("Developer") An Oregon corporation, also registered to conduct business as a foreign corporation in the states of Alaska, Arizona, Arkansas, California, Colorado, Florida, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, Ohio, Oklahoma, Tennessee, Texas, Utah, Washington, Wisconsin, Wyoming, and the province of British Columbia, Canada. This company was incorporated in Oregon on June 22, 1989. The address and telephone number of the corporate office of the Developer is:

Trendwest Resorts, Inc.
8427 South Park Circle
Orlando, Florida 32819
(800)722-3487

Page 4 of 13                                File No. 001058HS-AE3

The Developer was established for the purpose of acquiring and marketing resort properties and recreation facilities through a vacation club concept. Trendwest is a direct wholly owned subsidiary of Wyndham Vacation Ownership, Inc. (formally known as Cendant Timeshare Resort Group, Inc.)., which is subsidiary of Wyndham Worldwide Corporation ("WWC") a publicly traded, New York Stock Exchange Company, whose principal executive offices are located at 9 West 57th Street, New York, New York 10019.

2. **Interest to Be Offered:** You are purchasing Vacation Credits, which give you a beneficial ownership interest in WorldMark, The Club. WorldMark, The Club is a nonprofit corporation, which owns or leases units in resorts and manages those units and the Vacation Credit Program for the usage and benefit of the Vacation Credit Owners. Your beneficial ownership interest in WorldMark, The Club entitles you to voting rights to elect WorldMark, The Club board members and to vote on certain major Club decisions as described in the Bylaws, and a right to participate in the corporate ownership along with other Vacation Credit Owners in all WorldMark, The Club assets including the WorldMark, The Club resort properties.

3. **A description of the Duration and Operation of the Timeshare Plan:** There is a pool of usage time available to Owners, which is allocated among the Owners through a point system called "Vacation Credits." The minimum number of Vacation Credits to establish rights in WorldMark, The Club is 5,000, though the minimum number that can be purchased is usually higher than this. Voting and use rights are determined by the number of Vacation Credits purchased. There is one vote for every 5,000 Vacation Credits owned. The current minimum purchase amount is 6,000 Vacation Credits for a Premier Ownership, and 12,000 Vacation Credits for a Standard Ownership.

The total number of Vacation Credits registered in California is 2,337,513,000. The total number of Vacation Credits available for sale in California as of August 16, 2006, the date of this amended Public Report, is 106,459,000, representing the number of unsold Vacation Credits as of that date. The number of Vacation Credits available for sale in California will vary from day to day, due to sales, which would reduce the amount of inventory available for sale, and defaults on sold Vacation Credits by the Developer, which would increase the amount of inventory available for sale.

Terms of multisite timeshare plan: There are two (2) different types of ownership of Vacation Credits: Standard Ownership, which lasts for forty (40) years, and Premier Ownership, which lasts perpetually. Both types of Ownership include the same usage and voting benefits, except that: (i) the rights expire at the end of forty (40) years for Standard Ownership of Vacation Credits; (ii) Standard Owners cannot use Bonus Time;

There are a total of 358 days per year of usage available in each Club unit, including Bonus Time, where available.

Trendwest Resorts, Inc. and its agents will not be selling or advertising the WorldMark, The Club Vacation Owner Program for investment purposes and any sales person making such a representation has no authority to do so.

4.  **Insurance:** WorldMark, The Club maintains fire and extended coverage and public liability coverage on all personal property, structures, improvements and equipment in resorts owned by WorldMark that meets or exceeds the requirements outlined in Sections 8.2 (a) and 8.2 (b) of the WorldMark Bylaws.

5.  **Title:** Trendwest Resorts, Inc. has assured future availability of Program properties by transferring all property interests in completed units to WorldMark, The Club, unaffected by any debt encumbrance. These properties are also transferred to the Club subject to a covenant or declaration, dedicating their use to the WorldMark, The Club Vacation Owner Program. By virtue of these legal arrangements, no loss of resort usage can occur to Owners as a result of bankruptcy, debt or future transactions of the Developer, Trendwest Resorts, Inc. Since all units or timeshare weeks are wholly owned by WorldMark, The Club, they are not subject to tax or other liens against any other owner of the same unit.

    WorldMark, The Club does have the right under the Declaration of Vacation Owner Program, to change the location and specific nature of units and resorts. However, in making such changes, the Club is always obligated to provide comparable units and resorts. This provision allows Club management the ability and flexibility to satisfy Owner needs and desires as real estate and/or recreation opportunities change.

    In summary, future availability of properties is assured in the following way: WorldMark, The Club holds and controls the Club properties for the full term acquired in the property, through purchase or lease, unaffected by debt encumbrance, and for the sole benefit of Owners, until the Club desires to exchange the property for equivalent or more desirable property.

6.  **Description of each component site:** Resorts are described in Table 1, an Exhibit to this Permit. Purchasers should be aware that each location or resort has its own characteristics and may not meet the purchaser's expectations.

7.  **Number of accommodations and timeshare interests:** The number of accommodations and timeshare interests, expressed in periods of seven-day use availability are outlined in Table 2 attached hereto. The percentage of usable time committed to the multisite time-share plan ranges from 92% to 98% depending upon the actual number of weeks registered for each resort in the program which are outlined in Table 2.

8.  **Type of Accommodations:** This information is in the Description of Resorts included as Table 1 and in the Vacation Credit Summary included as Table 2. A full description of the accommodations is also included in the Resort Directory that each purchaser receives at the time of purchase.

    Common Areas: The common areas of WorldMark, The Club owned resorts are operated and maintained by WorldMark, The Club. The Common areas of resorts where WorldMark, The Club does not own all of the units are operated and maintained by each project's master association.

    Common Furnishings: The furnishings in WorldMark, The Club owned resorts are owned and maintained by WorldMark, The Club. Your right to use them results from your

ownership of Club Vacation Credits. In projects where WorldMark does not own the furnishings, the furnishings are owned and maintained by a master association. WorldMark, The Club is a member of the master association and your right to use them results from your ownership of Club Vacation Credits.

Pursuant to the developer's rights reserved under the declaration, units may be used for sales purposes and will not be available for reservations during such time.

9. **Description of Amenities:** The amenities for each resort are outlined in the WorldMark Resort Directory, which is provided to purchasers at time of purchase.

10. **Description of Incomplete Amenities:** All promised amenities have been built or are in the process of being built at resorts that are in the construction process. If amenities are not complete at the time of transfer, a completion bond is issued to WorldMark to guaranty completion of construction of these facilities. If resorts amenities are incomplete, that information is included with the description of the resorts included in Table 1. An approximate time frame for completion is a part of this Table. Currently the incomplete resorts are Estes Park, Colorado, Indio, San Diego, California, Midway and St. George, Utah; scheduled estimated completion date for buildings 5 and 14, is August, 2006 and estimated completion for buildings 6 and 13 is September, 2006. Scheduled estimated completion date for building E in St. George Utah, is August, 2006 and building D is October, 2006. Scheduled estimated completion date for Estes Park is August, 2006. Scheduled estimated completion date for Midway, Utah is August, 2006 and scheduled completion date for San Diego is August, 2006. The developer has posted a bond to assure completion of these projects.

11. **Historical Occupancy Report:** This information is included in Table 3, an Exhibit to this Permit.

12. **Addition, Substitution and Deletion:** Trendwest Resorts, Inc. is continually adding inventory as sales are made. However, to avoid overburdening WorldMark, The Club with operating costs of unsold inventory, Trendwest Resorts, Inc. plans to pace its acquisitions and additions to WorldMark, The Club inventory.

There is no contractual obligation for Trendwest Resorts, Inc. to increase WorldMark, The Club inventory; nor does WorldMark, The Club have any contractual obligation to the Owner to add to WorldMark, The Club inventory. There is no maximum number of units that may be added to the WorldMark, The Club Vacation Club Program.

13. **Reservation System:** Trendwest Resorts, Inc. is responsible for operating the reservation system. These reservations must be made in accordance with the WorldMark, The Club Guidelines, which are a part of the Governing Documents provided to Purchaser at time of Purchase. The right to use a unit is on a first-reserved, first-served basis.

If you are delinquent in the payment of any amounts owed to the Club, or if the Club has suspended your owner's rights, you will not be permitted to use Club Units.

Duty to pay assessments continues even if you are unsuccessful in reserving a unit at the particular time and place you request.

No time-share interest owner shall be prevented from using a time-share plan as a result of changes in the manner in which point values may be used. (Refer to B&P Code Section 11233(c)(2).)

**THERE IS NO GUARANTEE THAT YOU WILL BE ABLE TO SECURE OCCUPANCY EVERY TIME YOU MAKE A RESERVATION. YOU SHOULD MAKE YOUR RESERVATIONS AS EARLY AS POSSIBLE.**

14. **Liens, Defects or encumbrances:** All resorts and units in the Program are subject to one or more common encumbrances that could have an effect on a WorldMark owner's use rights. Certain resorts and units are subject to unique encumbrances as described in resort description under Table 1. Trendwest has secured their right to sell vacation credit allocated to each resort by recording Deed of Trust or Mortgage against each property. Each document contains a non-disturbance provision. For additional information please contact the California Department of Real Estate.

15. **Managing Entity:** WorldMark, The Club has entered into a Management Agreement with which engages the Developer as the exclusive managing and servicing agent for the WorldMark, The Club Vacation Owner Program. The agreement is for three years beginning October 1, 1989, and is automatically renewed annually, unless certain notices are given by either party for termination.

The Developer may sub-contract on-site management services, such as guest registration, cleaning and maintenance to local management entities at particular resorts or which are located near particular resorts. This will be especially true in cases where WorldMark, The Club does own or lease a majority of the units at the resort. The Developer does intend to continue its management role of WorldMark, The Club indefinitely even if sales stop at some time in the future.

For a complete and detailed description of the duties and obligations of the Developer as the managing entity, please refer to "Section 5" of the "Management Agreement" with WorldMark, The Club. You will find a copy of that agreement in the booklet entitled "WorldMark, The Club Vacation Owner Program Governing Documents" which you will receive at the time you receive this Public Offering Statement.

Generally, as Manager of WorldMark, The Club, the Developer shall provide or cause to be provided all services and personnel required to administer the affairs of the Club and to manage and operate the Vacation Club Program contemplated by the Declaration, at all times not inconsistent with the Governing Documents, the resolutions of the Board and Owners, and the Management Agreement. The management services broadly cover Club administration, finance, property and resort usage.

The Board of Directors of WorldMark, The Club has the authority, through the Bylaws, to select management or terminate management for cause. The Owners of the Vacation Credits elect the Board of Directors, and by a majority vote can prevent an automatic renewal of the Management Agreement.

16. **Annual Budget**: The Annual Budget is attached under Exhibit A in this permit; it is also included with the Booklet entitled Governing Documents, which the Purchaser receives at time of Purchase.

> Method of Determining Dues and Dues Changes: The Annual Budget for WorldMark, The Club is provided with the Governing Documents. WorldMark, The Club Board of Directors shall determine and fix the Dues to be levied against each Owner for the coming year.

The projected WorldMark, The Club operating budget is based on known costs of similar operations and WorldMark, The Club's own operating history. WorldMark, The Club Bylaws require the preparation and distribution to Owners of the annual operating budget and certain financial reports. Owners may also inspect the financial records of the Club. Refer to "Section 7" of the WorldMark, The Club Bylaws for a detailed description of Owner rights in regard to these matters.

Since WorldMark, The Club dues are based on actual operating expenses, it is anticipated that dues will increase only in proportion to normal inflationary increases in operating costs. Club Bylaws limit dues increases by the WorldMark, The Club Board of Directors to no more than the higher of the following two amounts above the annual dues for the immediately preceding fiscal year: (I) five percent (5%), or (ii) the percentage increase in the U.S. Consumer Price Index for all Urban Consumers in the United States.

17. **Current Fees and Charges**: The WorldMark, The Club Board determines the annual operating budget to provide Club operating expenses and capital reserves each year. This budget is funded by Owner's Annual Dues payments and reimbursement payments to the Club from the Developer. Under this budget the annual dues, which became effective June 1, 2006, are indicated in the example below. **Annual dues are subject to change based on the Board-approve annual operating budget.**

| Vacation Credits | | Annual Dues |
|---|---|---|
| 5,000 | | $310.95 |
| 5,001 | to 7,500 | $405.47 |
| 7,501 | to 10,000 | $499.99 |
| 10,001 | to 12,500 | $594.51 |
| 12,501 | to 15,000 | $689.03 |
| 15,001 | to 17,500 | $783.55 |
| 17,501 | to 20,000 | $878.07 |

The annual dues shall be paid by Owners in advance, beginning at the time of purchase, and paid in a manner as determined by the Board. Dues shall be paid to WorldMark, The Club at 9805 Willows Road, Redmond, Washington 98052. The due date for the first dues payment shall be within forty-five days of the date of purchase.

Failure to pay annual dues, as well as other defaults, can result in the loss of ownership of Vacation Credits, the declaring of all unpaid balances due unless prohibited by law, and the

retaining of all monies paid as damages. The remedies available to the Club against Owners who are delinquent in the payment of assessments are set forth in the Declaration.

WorldMark, The Club is obligated to pay all homeowners dues for each project in which WorldMark, The Club operates its Program but is not in control of the project. This expense is one of the expenses included in the WorldMark, The Club annual budget, which forms the basis for WorldMark, The Club Owner dues. Indirectly, therefore, Owners are charged for the expense of Master Association assessments or dues through WorldMark, The Club assessments or dues.

Trendwest Resorts, Inc. pays dues on unsold Vacation Credits held in inventory. These dues are a prorated share of the Club's annual budget and are calculated based on the number of assessable Vacation Credit units which Trendwest Resorts, Inc. holds; an assessable Vacation Credit unit is defined as the average number of Vacation Credits purchased per Owner.

Under paragraph 6.2 of the Bylaws, Special Assessments may be levied at any time upon determination by the Board. Special Assessments may be levied for capital improvements or major expenses, repairs or acquisitions for which no reserves have been established, for deficiencies in such reserves, or for any purpose related to the mutual health, safety and welfare of the Owners pursuant to the Articles, Declaration, Bylaws and Rules.

No special assessments shall in the aggregate exceed five percent (5%) of the budgeted gross expenses of the Club for the current fiscal year without the approval of a majority of the voting power held by Owners other than the Declarant (Trendwest Resorts, Inc.).

Other Charges:  In addition to the dues listed above, there may be other charges due the purchaser as listed below, which are subject to change:

Facility Use:  At present, the only facility charges may be for the use of cribs and rollaway beds, which might be made available. WorldMark, The Club could require other specific use charges in the future, but only on equipment or facilities added after the purchase of Vacation Credits. Charges for rollaway beds and cribs may vary from resort to resort, but are minimal.

a.    Housekeeping Service:  WorldMark, The Club performs regular housekeeping service once every seven days and at checkout. Additional housekeeping service is available at your request. You are provided one free housekeeping service annually for use of Vacation Credits. Any additional housekeeping service connected with the use of Vacation Credits is charged to you at the following rates per service:

| | | | |
|---|---|---|---|
| Studio Hotel | $30.00 | 3 Bedroom Chalet | $60.00 |
| 1 Bedroom Hotel | $40.00 | 2 Bedroom Penthouse Hotel | $55.00 |
| 2 Bedroom Hotel | $45.00 | 2 Bedroom Penthouse | $65.00 |
| Studio | $35.00 | 3 Bedroom Penthouse | $75.00 |
| 1 Bedroom Hotel | $45.00 | 4 Bedroom Penthouse | $85.00 |
| 2 Bedroom | $50.00 | 2 Bedroom Presidential | $75.00 |
| 3 Bedroom | $55.00 | 3 Bedroom Presidential | $85.00 |
| 2 Bedroom Chalet | $55.00 | 4 Bedroom Presidential | $95.00 |

Regular housekeeping during Bonus Time usage is already paid for by the Bonus Time fees and is not subject to the above listed fees.

Owners who purchased prior to July 1, 1991 are not subject to any housekeeping service fees for their use of Vacation Credits. The cost for this benefit and the benefit of one free housekeeping service annually to purchasers who purchase after July 1, 1991 is paid for from the annual assessment revenue from all Owners. There is one additional free cleaning annually for each increment of 10,000 Vacation Credits owned above the first 10,000 Vacation Credits owned for those subject to housekeeping Service Fees.

b.   Reservations: WorldMark, The Club does not charge for making reservations.

c.   Damages: The Owner will be charged for any damages Owner or Owner's guests causes over and above normal wear and tear, and must pay this charge before any further use of the program.

d.   Sales and Occupancy: Any sales or occupancy taxes levied by a governmental entity upon unit usage will be paid by the Owner.

e.   Late Fees: Retail Installment Contract payments, dues, or assessment payments that are late will be subject to a late fee and if not remedied, interest charges at the maximum allowable by law.

f.   Security Deposit: Some resorts may require a nominal security deposit for key return.

g.   Telephone Service: All existing Program units are equipped with telephones. Owner must bill all charges for long distance calls to Owner's own billing number.

h.   Bonus Time: The fee for Bonus Time is currently $.042 per Vacation Credit required for occupancy, with a minimum fee of thirty dollars ($30.00) for each day reserved. The Board of Directors of the Club may raise the cost of Bonus Time as necessary in accordance with certain limitations and conditions prescribed in the Declaration and Bylaws. The revenues from Bonus Time belong to the Club.

i.   Offsite Parking: Any offsite parking charges will be paid by the Owner.

**18. Initial or Specific Fees Due at Closing in Addition to the Purchase Price:** Each purchaser is required to pay a processing fee, which is currently $199.00. This fee is used to cover the cost associated with processing the sales documents including things such as document preparation expenses, personal and related expenses, office and overhead expenses and other related expenses. There are no other initial or special fees due from the purchaser at closing other than those outlined in the retail installment contract vacation owner agreement.

**19. Financing Offered:** Transfer of Vacation Credits to you will be by a WorldMark, The Club Retail Installment Contract Vacation Owner Agreement (Agreement). Your rights and responsibilities are governed by its specified terms. You should read the entire Agreement. Trendwest Resorts, Inc. offers WorldMark, The Club Vacation Credits on an installment

sales basis to purchasers of Premier ownership that have credit standing acceptable to Trendwest Resorts, Inc. and WorldMark, The Club. The Agreement is not in recordable form and will not be recorded. It gives WorldMark, The Club and Trendwest Resorts, Inc. a security interest in the Vacation Credits to assure the fulfillment of Agreement terms. Trendwest Resorts, Inc. reserves the right to sell, assign or discount the Agreement. Purchasers may lose their timeshare interest and all money paid if they do not pay their installments on time.

20. **Bankruptcies, Pending Civil or Criminal Suites:** There are no pending suits material to the timeshare intervals of which the Developer has knowledge. There are no restraints on alienation of any number or portion of any timeshare interval.

21. **Transferability of Vacation Credits:** Vacation Credits may be transferred entirely or partially at any time during their term and without limitation to the number of transfers, through sale, gift, inheritance, dissolution of marriage, or by any operation of law, subject to the following terms: (a) a transfer fee of $150.00, which is subject to change, has been paid to Club, (b) all payments or charges due Club are current, (c) the Vacation Credits transferred and the Vacation Credits retained, if any, must each be enough Vacation Credits to hold a Basic Membership in the Club at the then current requirement, and (d) the transferee must satisfy all qualifications of an Owner and Club's credit requirements. The Developer and WorldMark, The Club will not repurchase the Vacation Credits or assist in locating a buyer.

22. **Purchase Money Handling:** In accordance with Section 11243(c) of the Business and Professions Code, the Developer has furnished a surety bond to the State of California to protect purchaser's funds until expiration of the rescission rights period.

You may cancel the purchase of the time-share interest(s) in the time-share plan identified below without any penalty or obligation and are legally entitled to the return of all money and other considerations that you have given toward the purchase. If you decide to cancel your purchase, you must notify the developer in writing of your intent to cancel within seven calendar days of receipt of the public report or the date you sign the purchase contract, whichever date is later. Your notice of cancellation shall be effective upon the date sent and shall be sent to the developer at the address Trendwest Resorts, Inc., 3655 131st Avenue S.E., Fourth floor, Bellevue, WA, 98006 or facsimile (425) 818-7060 the number is provided in your purchase contract as well. Any attempt to obtain a waiver of your cancellation right is void and of no effect.

23. **External Exchange Participation Program:** WorldMark, the club has an agreement with Resorts Condominium International, inc. LLC ("RCI") of 7 Sylvan Way, Parsippany, New Jersey 07054, wherein RCI has agreed to provide its exchange program to owners of Vacation Credits in the Club. The Developer is not an agent for RCI and any representations or promises made by Trendwest, or their agents, are not binding on RCI. RCI's responsibility for representations regarding RCI exchange programs, as well as RCI current or future services, is limited to those made in written material furnished by RCI. Trendwest and RCI are both subsidiaries of a common parent company; however, Trendwest makes no representations or warranties as to an Owner's ability to obtain any particular exchange or as

to any services, rates or charges or RCI. Participation in the RCI program is entirely voluntary and subject to applicable membership fees payable to RCI.

24. **Other:** The Developer must make available to you, copies of the Club governing instruments, a statement concerning any delinquent assessments and related charges as provided by the governing instruments and, if available, current financial and related statements (see business and professions code section 11018.6). These records shall be maintained and made available at the WorldMark, The Club administrative office in Redmond, Washington. Make requests for review to this office in writing.

WorldMark, The Club
c/o Trendwest Resorts, Inc.
9805 Willows Road
Redmond, WA 98052

Copies may be obtained by sending a letter requesting desired documents, including a check for the cost of photocopying.

Attachments to This Public Offering Statement: The following documents are considered by reference hereto, as incorporated herein and to be a part of this Public Offering Statement. If not attached hereto, you are to be given a copy or prototype of each of the following such attachments:

A. WorldMark, The Club Retail Installment Contract Vacation Owner Agreement: At the time you purchase Vacation Credits, you will be asked to sign, among other documents, a WorldMark, The Club Retail Installment Contract Vacation Owner Agreement (Agreement). This Agreement is a contract with Trendwest Resorts, Inc. for the purchase of Vacation Credits, and with WorldMark, The Club to accept a membership in the Club and abide by the Rules and Regulations of the Club.

B. WorldMark, The Club Vacation Owner Program Governing Documents: You will receive, in addition to this Public Offering Statement, a Resort Directory and a booklet which contains the following documents:

WorldMark, The Club Guidelines for (Rules)
WorldMark, The Club Restated Articles of Incorporation for
WorldMark, The Club Bylaws
Declaration of Vacation Owner Program
WorldMark, The Club Management Agreement (Fourth Amended)
WorldMark, The Club Budget
WorldMark, The Club Audited Financial Statements

These documents contain numerous material provisions that substantially affect and control your rights, privileges, use, obligations and costs of maintenance and operation. You should read and understand the documents before you obligate yourself to purchase a vacation ownership interest.

For further information in regard to the project, you may call (916) 227-0810 or examine the documents at the Department of Real Estate, 2201 Broadway, Sacramento, CA 95816.