**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARKE AND REBECCA WIXON, et al. | |
| Plaintiffs, | No. C 07-02361 JSW |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART THE DIRECTOR DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND FOR LACK OF PERSONAL JURISDICTION** |
| WYNDAM RESORT DEVELOPMENT CO. (f/k/a TRENDWEST RESORTS, INC.), et al. | |
| Defendants. | |

**INTRODUCTION**

Now before the Court is the motion to dismiss filed by Gene Hensley ("Hensley"), Dave Herrick ("Herrick"), John Henley ("Henley"), Peggy Fry ("Fry"), and John McConnell ("McConnell") (collectively "the Director Defendants"). Having considered the parties' papers, relevant legal authority, the record in this case, and having had the benefit of oral argument, the Court HEREBY GRANTS IN PART AND DENIES IN PART the Director Defendants' motion.

**BACKGROUND**

**A.     Procedural History.**

Plaintiffs, Clarke Wixon, Rebecca Wixon, Norman Wixon, and Barbra Wixon (collectively "Plaintiffs") initially filed this action in San Mateo Superior Court. On May 1, 2007, Defendant Wyndham Resort Development Corp. ("Wyndham") removed the action to this

Court.

On September 14, 2007, Plaintiffs filed a motion for leave to file an amended complaint, in which they sought to add the Director Defendants. That motion was granted on October 22, 2007. Plaintiffs filed their Amended Complaint on October 26, 2007. Plaintiffs assert two claims for relief against the Director Defendants: (1) Breach of Fiduciary Duty; and (2) Declaratory Relief pursuant to California Civil Code § 1060.

The Director Defendants filed their motion to dismiss on December 7, 2007. The parties agreed to a briefing schedule, which permitted them to conduct discovery on the jurisdictional issues raised by the Director Defendants, and the Court continued the hearing on the motions to April 11, 2008.

**B.   Factual Background.**

    **1.   The Parties.**

Clarke and Rebecca Wixon are California residents. (Am. Compl. ¶ 5.) Norman and Barbara Wixon are Colorado residents. (*Id.* ¶ 6.) Wyndham is an Oregon corporation. (*Id.* ¶ 7.) WorldMark, The Club ("WorldMark"), a non-party, is a California non-profit mutual benefit corporation, which is owned by its members. (*Id.* ¶ 16.)

The Director Defendants each are current, or former, members of the WorldMark Board of Directors. (Declaration of John McConnell ("McConnell Decl.") ¶ 5 (attesting he retired from the WorldMark Board in January 31, 2007); Declaration of Peggy Fry ("Fry Decl."), ¶ 5; Declaration of David Herrick ("Herrick Decl."), ¶ 5; Declaration of Gene Hensley ("Hensley Decl"), ¶ 5; Declaration of John Henley ("Henley Decl."), ¶ 5.) Each of the Director Defendants also have worked for Wyndham or Cendant Corporation in various capacities.[1] (McConnell Decl., ¶ 4; Fry Decl., ¶ 4; Herrick Decl., ¶ 4; Hensley Decl., ¶ 4; Supplemental Declaration of John Henley ("Supp. Henley Decl."), ¶ 2.) None of the Director Defendants are

---

[1] According to the allegations in the Amended Complaint, Wyndham formerly was known as Trendwest Resorts, Inc. ("Trendwest"). In April 2002, Cendant Corporation ("Cendant") acquired Trendwest, and Trendwest became a wholly-owned subsidiary of Cendant, included as a part of Cendant Timeshare Resort Group, Inc.

2

California residents. (McConnell Decl., ¶¶ 2-3; Fry Decl., ¶¶ 2-3; Herrick Decl., ¶¶ 2-3; Hensley Decl., ¶¶ 2-3; Henley Decl., ¶¶ 2-3.)

### 2. Plaintiffs' Claims.

Plaintiffs claims arise out of timeshare interests that Plaintiffs purchased in WorldMark. (Am. Compl. ¶¶ 3, 5-7.)[2] Unlike participants in a traditional timeshare, WorldMark members purchase "Vacation Credits." Any person who owns at least 5,000 WorldMark Vacation Credits is a WorldMark member. However, Wyndham requires a minimum purchase of 6,000 Vacation Credits, which currently cost about $1.77. (*Id.* ¶¶ 18, 25.)[3] There are two categories of Vacation Credits, Standard and Premier. Vacation Credits may be used use like currency at any WorldMark resort, depending only on availability and the amount of Vacation Credits necessary for a reservation. (*Id.* ¶ 24.)[4]

A WorldMark member can make two types of reservations, Vacation Credit Reservations or Bonus Time Reservations. (*Id.* ¶ 29.) Only members who purchase Premier Vacation Credits can make reservations under the Bonus Time program. (*Id.* ¶ 25.) "Vacation Credit Reservations can be booked up to 13 months in advance and must be reserved using annual Vacation Credits. All WorldMark locations and dates are available on a first-come, first-served basis for Vacation Credit Reservations. Bonus Time Reservations can be booked up to 14 days in advance and must be reserved and paid for in cash based upon a formula established by WorldMark." (*Id.* ¶ 29; *see also id.* ¶ 30 (describing Bonus Time in further

---

[2] Plaintiffs bring this action on behalf of a putative class consisting of "[a]ll persons who purchased WorldMark Premier Vacation Credits before November 5, 2006 and who reside in California or who purchased Vacation Credits in California." (*Id.* ¶ 65.)

[3] Plaintiffs also allege that Vacation Credits can be transferred freely and that a resale market for these Vacation Credits exists. (Am. Compl. ¶¶ 36-37.)

[4] Wyndham purchases and develops properties that become WorldMark resorts, and once the development is complete, Wyndham transfers ownership of the properties to WorldMark. (Am. Compl. ¶ 15.) Wyndham, however, retains the right to market the properties and sell the Vacation Credits associated with the properties. (*Id.* ¶¶ 15, 18.)

3

detail).)[5]  Bonus time revenues belong to the Club.  (Declaration of Elizabeth Pritzker ("Prizter Decl."), Ex. 3 (Declaration ¶ 1.7).)

Plaintiffs also allege that "[o]ne of the fundamental principles, and key selling points, of WorldMark membership is that all members are treated equally in terms of the ability to make reservations," *i.e.* "no member has priority over another member in making reservations," except to the extent a member may have more Vacation Credits to use.  (Am. Compl. ¶ 26.)  In addition, Plaintiffs assert that the number of Vacation Credits associated with a given WorldMark property "is determined by the size of the resort, the value of a night at the resort in comparison to other comparable WorldMark resorts (known as 'relative-use-value'), and the number of nights in the year available for usage by WorldMark members."  (*Id.* ¶ 18.)[6]

According to Plaintiffs, "only WorldMark's members or its Board of Directors can change the reservation guidelines and rules and ... Wyndham is required to implement the reservation guidelines and rules established by WorldMark and its members."  (*Id.* ¶ 32.) Plaintiffs allege that since Wyndham acquired Trendwest, it assumed control of WorldMark's Board of Directors, and has "taken a number of actions that are contrary to the interests of WorldMark members and violate the Governing Documents," including but not limited to creating program called TravelShare, placing limitations on Bonus Time availability, and abandoning the relative-use-value principles.  (*Id.* ¶ 38; *see generally id.* ¶¶ 39-57.)

Plaintiffs assert that the Director Defendants have breached their fiduciary duty to WorldMark and its members by "actively assist[ing] Wyndham in its violation of the Governing Documents and actions contrary to the interests of WorldMark members, or [by failing] to take any action on behalf of WorldMark members to enforce their rights under the Governing

---

[5]  According to the allegations in the Amended Complaint, the current formula is $.044 for each Vacation Credit that would be required to reserve the same unit under a Vacation Credit Reservation.  (Am. Compl. ¶ 29.)

[6]  Plaintiffs offer the following example: "a new resort with 100 rooms, each valued at 1,200 credits per night, would generate 40,440,000 Vacation Credits to be sold by Wyndham (100 rooms x 1,200 credits per room x 337 nights of usage per year (historically, one week is set aside for maintenance and three weeks are set aside to ensure Bonus Time availability)."  (Am. Compl. ¶ 18.)

4

Documents and harming the interests of WorldMark members." (*Id.* ¶ 58; *see also id.* ¶¶ 59-62.)

The Court addresses additional facts as necessary in the remainder of this Order.

## ANALYSIS

**A.    Applicable Legal Standards.**

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). The court, however, is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The Director Defendants also move to dismiss for lack of personal jurisdiction pursuant to 12(b)(2). In ruling on a 12(b)(2) motion, a court may hold an evidentiary hearing on the motion or base its decision on the written materials and declarations submitted by the by the parties. In either instance, it is Plaintiffs' burden to establish personal jurisdiction. *See Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). The parties have not requested, and the Court has not deemed it necessary to conduct an evidentiary hearing on the Director Defendants' motion. Therefore, the Court bases its decision on the written materials and declarations submitted by the parties and considers whether those materials establish a prima facie showing of personal jurisdiction. *See AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) ("*AT&T*"). Where the facts are not directly controverted, Plaintiffs' version of the facts is taken as true. *Id.* Likewise, "'conflicts between the facts contained in the parties' affidavits must be resolved in [Plaintiffs'] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (quoting *AT&T*, 94 F.3d at 588).

//

//

**B.     Plaintiffs' Breach of Fiduciary Claim Against the Director Defendants Is Derivative In Nature.**

The Director Defendants move to dismiss Plaintiffs claim for breach of fiduciary duty on the ground that this claim for relief is derivative and, thus, must be brought by WorldMark.[7] An "'action is derivative, i.e., in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets.'" *Jones v. H.F. Ahmanson & Co.*, 1 Cal. 3d 93, 106 (1969) (quoting *Gagnon Co., Inc. v. Nevada Desert Inn, Inc.*, 45 Cal. 2d 448, 453 (1955)).[8] In contrast, "[a] cause of action is individual, not derivative, only where it appears that the injury resulted from the violation of some special duty owed the stockholder by the wrongdoer and having its origins in circumstances independent of the plaintiff's status as a shareholder." *Nelson v. Anderson*, 72 Cal. App. 4th 111, 126-27 (1999).

In their Amended Complaint, Plaintiffs assert that the Director Defendants have violated their fiduciary duties to WorldMark and its members, because they have failed to prevent Wyndham from taking actions that violate the key principles of membership in WorldMark, namely the "first-come, first-served" and the "relative-use value" principles. (*See generally* Am. Compl. ¶¶ 26-58, 94.) Plaintiffs also contend that the Director Defendants have taken actions to manipulate the election process to ensure that they, and Wyndham, are able to "control WorldMark for [their] own benefit." (*Id.* ¶¶ 59-62.) Notwithstanding Plaintiffs' creative arguments to the contrary, the Court concludes that these allegations demonstrate that the crux of the breach of fiduciary duty claim implicates duties owed to WorldMark and

---

[7] The Director Defendants moved to strike certain portions of Plaintiffs' opposition brief and evidence submitted in support thereof. Those objections are OVERRULED.

[8] Plaintiffs assert that the Court need not engage in this analysis because they have a contractual right to bring this action under paragraphs 7.1 and 7.2 of the Declaration. Plaintiffs argued at the hearing that to conclude otherwise would render these provisions of the Declaration superfluous. However, Plaintiffs assert that the Director Defendants breached their fiduciary duties and do not assert that they breached particular provisions of the Governing Documents.

6

pertains to actions that affect the whole body of its members. Moreover, Plaintiffs have not identified a special fiduciary duty that is owed to them that is separate and distinct from that owed to the other members of WorldMark. *See, e.g., Sax v. World Wide Press, Inc.*, 809 F.2d 610, 614 (9th Cir. 1987). Therefore, the Court finds that Plaintiffs' claim against the Director Defendants is derivative in nature in that the gravamen of the complaint is injury to WorldMark and the whole body of its members. *Jones*, 1 Cal. 3d at 106.

Because the claim against the Director Defendants is derivative in nature, Plaintiffs lack standing to pursue it, and this claim must be dismissed. The Director Defendants' motion is, therefore, GRANTED IN PART on this basis. Plaintiffs, however, shall be granted leave to amend.

**C.     The Declaratory Relief Claim is Dismissed With Leave to Amend.**

The Director Defendants also move to dismiss Plaintiffs' declaratory relief claim on the ground that Plaintiffs fail to allege facts demonstrating the existence of an actual controversy. In the introductory paragraph to this claim for relief, Plaintiffs refer to all Defendants. In the subsequent paragraphs, however, Plaintiffs only refer to the dispute between Wyndham and the Plaintiffs over their respective rights and obligations. It is evident from the remainder of the Amended Complaint that Plaintiffs also allege that a genuine dispute exists between them and the Director Defendants over their respective rights and obligations. However, having determined that the nature of Plaintiffs' claim against the Director Defendants is derivative in nature, it would appear that this claim also should be dismissed on that basis. Accordingly, the Director Defendants' motion to dismiss this claim is GRANTED, with leave to amend.

**C.     The Court Has Jurisdiction Over the Director Defendants.**

Plaintiffs sue the Director Defendants in their capacity as directors of WorldMark. Although Plaintiffs would be able to establish jurisdiction over WorldMark, if it were a defendant, they cannot rely on the Director Defendants' director status to obtain jurisdiction over them. Rather, Plaintiffs bear the burden of establishing a prima face showing of general or specific jurisdiction of each and every defendant it has sued. *Calder v. Jones*, 465 U.S. 783,

7

790 (1984).[9] "Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long arm-statute permits the assertion of jurisdiction without violating federal due process." *Schwarzenegger v. Fred Martin Motor Company*, 374 F.3d 797, 800-801 (9th Cir. 2004). Because California's long arm statute is co-extensive with federal due process requirements, the jurisdictional analyses under California law and federal due process are the same. *Id.* at 801.

Due process precludes a court from asserting jurisdiction over a defendant unless the defendant has certain minimum contacts with the forum state. The overriding constitutional principle is that maintenance of an action in the forum must not offend "traditional conception[s] of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945). The defendant's "conduct and connection with the forum State" must be such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder*, 465 U.S. at 788 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

Specific jurisdiction over a defendant exists where: (1) the defendant has purposefully directed his or her activities at residents of the forum state or the forum state itself; (2) the plaintiff's claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair. *Schwarzenegger,* 374 F.3d at 802; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).

"The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* at 802 (internal citation omitted). "On the other hand, if the plaintiff succeeds in satisfying both of the first two prongs, 'the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Menken*, 503 F.3d at

---

[9] Plaintiffs do not assert that the Court has general jurisdiction over the defendants and rely solely on the concept of specific jurisdiction.

8

1057 (quoting *Schwarzenegger*, 374 F.3d at 802, in turn quoting *Burger King*, 471 U.S. at 476-78) (internal quotations omitted).

Plaintiffs assert that the Director Defendants have purposefully availed themselves of privilege of doing business in California by "voluntarily enter[ing] into a long term relationship with [WorldMark] and [by electing] to assume corporate powers and to undertake corporate responsibilities." (Opp to Dir. Defs. Mot. at 15:24-26). Plaintiffs also argue that the Defendants have purposefully directed their activities at California by taking varied actions that affect WorldMark members in California and by conducting WorldMark business in California. (*Id.* at 18:10-15.)

The Ninth Circuit has noted that the "purposeful availment" prong, "[d]espite its label ... includes both purposeful availment *and* purposeful direction. It may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitsme*, 433 F.3d 1199, 1206 (9th Cir. 2006). In *Yahoo!*, the Ninth Circuit also noted that, generally, it has treated the purposeful availment prong differently in contract and tort cases." *Id.*

In tort cases, a court "typically inquire[s] whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Id.* (citing *Schwarzenegger*, 374 F.3d at 803). Under that "effects" test, a defendant purposefully directs his or her activity at a forum state where: (1) he or she commits an intentional act; (2) the act is expressly aimed at the forum state; and (3) the act causes harm that the defendant knows is likely to be suffered in the forum state. *Schwarzenegger*, 374 F.3d at 803 (citing *Calder*, 465 F.3d at 789-90); *cf. Bancroft & Masters, Inc. v. Augusta National, Inc.*,

1  233 F.3d 1082, 1087 (9th Cir. 2000) (framing last issue as the act causes harm "the brunt of
2  which is suffered and which the defendant knows is likely to be suffered in the forum state").[10]

3  Here Plaintiffs allege that the Director Defendants actively sought to be elected to the
4  WorldMark Board, and have taken actions during Board Meetings that Plaintiffs claim violate
5  their fiduciary duty to WorldMark and its members. These actions are intentional.
6  Furthermore, having concluded that Plaintiffs' claims are derivative in nature, the Court also
7  concludes that those actions were expressly aimed at California, in that they impact WorldMark,
8  a California corporation. Finally, because WorldMark is a California corporation, and there is
9  no dispute that the Director Defendants knew where WorldMark was incorporated, the Court
10 concludes that Plaintiffs have shown that the Director Defendants alleged breaches have caused
11 harm to WorldMark in California. *Cf. Infosonics Corporation Derivative Litigation*, 2007 WL
12 2572276 at *4-5 (C.D. Cal. Sept. 4, 2007) (finding personal jurisdiction over non-resident
13 directors where plaintiffs alleged they were directly involved in actions giving rise to derivative
14 action). Thus, Plaintiffs have met their burden to show purposeful availment.

15 The Court also concludes that the allegations in the Amended Complaint demonstrate
16 that Plaintiffs' claim for breach of fiduciary duty arises out of the actions the Director
17 Defendants are alleged to have taken. As such, the Court concludes Plaintiffs have met their
18 burden on the second prong of the jurisdictional analysis as well.

19 The Director Defendants do not address the third prong of the analysis. Having failed to
20 meet their burden to show that the exercise of jurisdiction would be unreasonable, the Court
21 DENIES IN PART the motion on this basis.

---

[10] At the hearing on these motions, Plaintiffs asserted that, in the *Yahoo!* case, the Ninth Circuit "disclaimed" the express aiming requirement of the effects test. Contrary to Plaintiffs' assertion, the Ninth Circuit did not disclaim this prong of the effects test, it simply noted that the actions that are expressly aimed at the forum state need not be wrongful, and then it found that the defendants had "expressly aimed" their actions at California. *Yahoo!*, 433 F.3d at 1208-09. The Ninth Circuit also clarified its law on the *third* prong of the effects test, and held that "the 'brunt' of the harm," the third prong of the effects test, "need not be suffered in the forum state. If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." *Id.*

10

**CONCLUSION**

For the foregoing reasons, the Director Defendants' motion to dismiss is GRANTED IN PART, with leave to amend, and DENIED IN PART. If Plaintiffs choose to amend their claims against the Director Defendants, they shall a second amended complaint within thirty (30) days of the date of this Order. If Plaintiffs do not file a second amended complaint, the claims against the Director Defendants shall be deemed dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: April 18, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE