1
2
3
4
5
6

**NOT FOR CITATION**

7

IN THE UNITED STATES DISTRICT COURT

8

FOR THE NORTHERN DISTRICT OF CALIFORNIA

9
10

CLARKE AND REBECCA WIXON, et al.

11

      Plaintiffs,                   No. C 07-02361 JSW

12

   v.

13

WYNDHAM RESORT DEVELOPMENT
CORP. (f/k/a TRENDWEST RESORTS,

14

INC.), et al.

15

      Defendants.

                         **ORDER GRANTING IN PART
AND DENYING IN PART
WYNDHAM RESORT
DEVELOPMENT CORP.'S
MOTION TO DISMISS**

16
17

_____/

18

**INTRODUCTION**

19

     Now before the Court is the motion to dismiss filed by Wyndham Resort Development

20

Corporation. ("Wyndham").  Having considered the parties' papers, relevant legal authority, the

21

record in this case, and having had the benefit of oral argument, the Court HEREBY GRANTS

22

IN PART AND DENIES IN PART Wyndham's motion.[1]

23

**BACKGROUND**

24

**A.**    **Procedural History.**

25

     Plaintiffs, Clarke Wixon, Rebecca Wixon, Norman Wixon, and Barbra Wixon

26

(collectively "Plaintiffs") initially filed this action in San Mateo Superior Court.  On May 1,

27

2007, Wyndham removed the action to this Court.  On September 14, 2007, Plaintiffs filed a

28

---

[1]    In a separate order issued this date, the Court has granted in part and denied in part a motion to dismiss brought by Gene Hensley, David Herrick, John Henley, Peggy Fry and John McConnell (the "Director Defendants").

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   motion for leave to file an amended complaint, in which they sought to add the Director

2   Defendants.  That motion was granted on October 22, 2007.

3       Plaintiffs filed their Amended Complaint on October 26, 2007, in which they assert the

4   following claims for relief against Wyndham: (1) Breach of Contract; (2) Breach of the Implied

5   Covenant of Good Faith and Fair Dealing; (3) Violations of California Civil Code §§ 1750, *et*

6   *seq.* (the "CLRA claim"); (4) Violations of California Business and Professions Code §§ 17200,

7   *et seq.*; and (5) Declaratory Relief pursuant to California Civil Code § 1060.

8   **B.    Factual Background.**

9       **1.    The Parties.**

10      Clarke and Rebecca Wixon are California residents.  (Am. Compl. ¶ 5.)  Norman and

11  Barbara Wixon are Colorado residents.  (*Id.* ¶ 6.)  Wyndham is an Oregon corporation.[2]  (*Id.* ¶

12  7.)  Although it is not a party, WorldMark, The Club ("WorldMark") is a California non-profit

13  mutual benefit corporation owned by its members.  (*Id.* ¶ 16.)

14      **2.    Plaintiffs' Claims.**

15      Plaintiffs claims arise out of timeshare interests that Plaintiffs purchased in WorldMark.

16  (Am. Compl. ¶¶ 3, 5-7.)[3]  Unlike participants in a traditional timeshare, WorldMark members

17  purchase "Vacation Credits."  Any person who owns at least 5,000 WorldMark Vacation

18  Credits is a WorldMark member.  However, Wyndham requires a minimum purchase of 6,000

19

20

21      [2]   A brief history outlining Wyndham's corporate history is necessary to
22  understand the relationship between Wyndham and Plaintiffs.  According to the allegations
    in the Amended Complaint, Trendwest Resorts, Inc. ("Trendwest"), was created in 1989 by
    Jeld-Wen, Inc.  (Am. Compl. ¶ 7.)  Trendwest began to sell Vacation Credits at that time.  In
23  April 2002, Cendant Corporation ("Cendant") acquired Trendwest, and it became a wholly-
    owned subsidiary of Cendant, included as a part of Cendant Timeshare Resort Group, Inc.
24  (*Id.*)  In May 2006, Cendant Timeshare Resort Group, Inc. was renamed Wyndham Vacation
    Ownership, Inc.  In August 2006, Cendant spun off Wyndham Worldwide Corp., which
25  included Wyndham Vacation Ownership, Inc., and thus also included Trendwest.  (*Id.*)  In
    January 2007, Trendwest was renamed Wyndham Resort Development Corp.  (*Id.*)  Thus,
26  when Plaintiffs, or this Court, refer to Wynhdam, the reference includes all predecessors
    including Trendwest.
27
        [3]   Plaintiffs bring this action on behalf of a putative class consisting of "[a]ll
28  persons who purchased WorldMark Premier Vacation Credits before November 5, 2006 and
    who reside in California or who purchased Vacation Credits in California."  (*Id.* ¶ 65.)

2

Vacation Credits, which currently cost about $1.77. (*Id.* ¶¶ 18, 25.)[4] There are two categories of Vacation Credits, Standard and Premier. Vacation Credits may be used use like currency at any WorldMark resort, depending only on availability and the amount of Vacation Credits necessary for a reservation. (*Id.* ¶ 24.)[5]

When a person purchases Vacation Credits from Wyndham, they are provided with a set of documents, including (1) a permit filed with the California Department of Real Estate, (2) the official WorldMark Guidelines (the "Rules"), (3) the WorldMark Bylaws, (4) the Declaration of Vacation Owner Program (the "Declaration"), (5) the Management Agreement between Wyndham and WorldMark, (6) a Security Agreement (Retail Installment Contract), (7) the Owner Understanding, and (8) the WorldMark Owner Education Guide (collectively "the Governing Documents"). (*Id.* ¶ 27.) Plaintiffs allege that the Governing Documents form a contract between Wyndham and all WorldMark members. (*Id.* ¶ 28.)

Pursuant to the Governing Documents, a WorldMark member can make two types of reservations, Vacation Credit Reservations or Bonus Time Reservations. (*Id.* ¶ 29.) Only members who purchase Premier Vacation Credits can make reservations under the Bonus Time program. (*Id.* ¶ 25.) "Vacation Credit Reservations can be booked up to 13 months in advance and must be reserved using annual Vacation Credits. All WorldMark locations and dates are available on a first-come, first-served basis for Vacation Credit Reservations. Bonus Time Reservations can be booked up to 14 days in advance and must be reserved and paid for in cash based upon a formula established by WorldMark." (*Id.* ¶ 29; *see also id.* ¶ 30 (describing Bonus Time in further detail).)[6] Bonus time revenues belong to the Club. (Declaration of

---

[4]    Plaintiffs also allege that Vacation Credits can be transferred freely and that a resale market for these Vacation Credits exists. (Am. Compl. ¶¶ 36-37.)

[5]    Wyndham purchases and develops properties that become WorldMark resorts, and once the development is complete, Wyndham transfers ownership of the properties to WorldMark. (Am. Compl. ¶ 15.) Wyndham, however, retains the right to market the properties and sell the Vacation Credits associated with the properties. (*Id.* ¶¶ 15, 18.)

[6]    According to the allegations in the Amended Complaint, the current formula is $.044 for each Vacation Credit that would be required to reserve the same unit under a Vacation Credit Reservation. (Am. Compl. ¶ 29.)

United States District Court
For the Northern District of California

1    Jonathan K. Levine in Support of Plaintiffs' Opposition to Defendant Wyndham Resort

2    Development Corporation's Motion to Dismiss ("Levine Decl."), Ex. 1 (Declaration ¶ 1.7).)

3         Plaintiffs also allege that "[o]ne of the fundamental principles, and key selling points, of

4    WorldMark membership is that all members are treated equally in terms of the ability to make

5    reservations," *i.e.* "no member has priority over another member in making reservations,"

6    except to the extent a member may have more Vacation Credits to use.  (Am. Compl. ¶ 26.) In

7    addition, Plaintiffs assert that the number of Vacation Credits associated with a given

8    WorldMark property "is determined by the size of the resort, the value of a night at the resort in

9    comparison to other comparable WorldMark resorts (known as 'relative-use-value'), and the

10   number of nights in the year available for usage by WorldMark members." (*Id.* ¶ 18.)[7]

11        Pursuant to the Governing Documents, "only WorldMark's members or its Board of

12   Directors can change the reservation guidelines and rules and ... Wyndham is required to

13   implement the reservation guidelines and rules established by WorldMark and its members."

14   (*Id.* ¶ 32.)  Plaintiffs allege that since Wyndham acquired Trendwest, it assumed control of

15   WorldMark's Board of Directors, and has "taken a number of actions that are contrary to the

16   interests of WorldMark members and violate the Governing Documents," including but not

17   limited to creating program called TravelShare, placing limitations on Bonus Time availability,

18   and abandoning the relative-use-value principles.   (*Id.* ¶ 38; *see generally id.* ¶¶ 39-57.)

19

20        The Court addresses additional facts as necessary in the remainder of this Order.

21                                    **ANALYSIS**

22        Wyndham moves to dismiss each of Plaintiffs' claims against it on the ground that they

23   are derivative in nature.  Wyndham also moves to dismiss Plaintiffs' CLRA claim on the ground

24   that Plaintiffs did not purchase "goods" or "services" and that the alleged injuries do not arise

25   from "transactions," as those terms are defined under the CLRA.

26   _____

27        [7]     Plaintiffs offer the following example: "a new resort with 100 rooms, each
     valued at 1,200 credits per night, would generate 40,440,000 Vacation Credits to be sold by
28   Wyndham (100 rooms x 1,200 credits per room x 337 nights of usage per year (historically,
     one week is set aside for maintenance and three weeks are set aside to ensure Bonus Time
     availability)."  (Am. Compl. ¶ 18.)

United States District Court
For the Northern District of California

1

2    **A.      Applicable Legal Standards.**

3          A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a

4    claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In ruling on a Rule 12(b)(6)

5    motion, the complaint is construed in the light most favorable to the non-moving party and all

6    material allegations in the complaint are taken to be true.  *Sanders v. Kennedy*, 794 F.2d 478,

7    481 (9th Cir. 1986).  The court, however, is not required to accept legal conclusions cast in the

8    form of factual allegations if those conclusions cannot reasonably be drawn from the facts

9    alleged.  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan*

10   *v. Allain*, 478 U.S. 265, 286 (1986)).

11   **B.      Plaintiffs' Claims Against Wyndham Are Direct in Nature.**

12         Wyndham moves to dismiss each of Plaintiffs' claims for relief on the ground that they

13   are derivative and, thus, must be brought by WorldMark.  An "'action is derivative, i.e., in the

14   corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole

15   body of its stock and property without any severance or distribution among individual holders,

16   or it seeks to recover assets for the corporation or to prevent the dissipation of its assets.'"

17   *Jones v. H.F. Ahmanson & Co.*, 1 Cal. 3d 93, 106 (1969) (quoting *Gagnon Co., Inc. v. Nevada*

18   *Desert Inn, Inc.*, 45 Cal. 2d 448, 453 (1955)).  In contrast, "[a] cause of action is individual, not

19   derivative, only where it appears that the injury resulted from the violation of some special duty

20   owed the stockholder by the wrongdoer and having its origins in circumstances independent of

21   the plaintiff's status as a shareholder."  *Nelson v. Anderson*, 72 Cal. App. 4th 111, 126-27

22   (1999).

23         Plaintiffs purchased their Vacation Credits from Wyndham.  Plaintiffs assert that

24   contrary to representations made at the time they purchased those credits, Wyndham has taken

25   actions that contravene the key principles on which Plaintiffs chose to purchase WorldMark

26   Vacation Credits, namely the "first-come, first-served" and the "relative-use value" principles.

27   (*See generally* Am. Compl. ¶¶ 26-57.)  Although it is true that Plaintiffs allege that Wyndham

28   has engaged in self-dealing, when the Court looks to the allegations as a whole, the gravamen of

**United States District Court**

For the Northern District of California

the complaint against Wyndham is injury to the Plaintiffs, rather than to WorldMark. As such, Plaintiffs have alleged a direct action against Wyndham. Wyndham's motion is DENIED IN PART, on this basis.

**C.      Plaintiffs Cannot Proceed on Their CLRA Claim.**

The CLRA provides, in part, that specified "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful." Cal. Civ. Code § 1770(a).[8] The CLRA also provides that it "shall be liberally construed and applied to promote its underlying purposes, which are due to protect consumers against unfair and deceptive practices and to provide efficient and economical procedures to secure such protection." *Id.* § 1760.

Wyndham contends that Plaintiffs cannot proceed under the CLRA because Plaintiffs cannot establish that Vacation Credits are goods or services. As used in the CLRA,

> (a) "Goods" means tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not they are severable from the real property.
>
> (b) "Services" means work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods.

*Id.* § 1671(a), (b).

The California Supreme Court has not addressed whether time share interests would fall within the CLRA's definition of a good or service, and this Court applies "California law as we believe the California Supreme Court would apply it." *In re KF Dairies, Inc. & Affiliates*, 224 F.3d 922, 924 (9th Cir. 2000). The Declaration describes a WorldMark membership as "a vacation license which constitutes only (a) a right to use and occupy a Unit during the

---

[8]     The parties agree that there are no published cases that have addressed this issue. However, in *Boling v. Trendwest Resorts, Inc.*, 2005 Cal. App. LEXIS 4418 (Cal. Ct. App. May 19, 2005), the Court of Appeal concluded that the Vacation Credits and memberships offered did not constitute "goods" under the CLRA. *Id.* at *12-13. However, because the plaintiff did not assert that the memberships qualified as "services," the Court of Appeal did not address whether the CLRA claim would fail on that basis.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   Member's Vacation Credit Use or Bonus Time, (b) a nonexclusive license to use, enjoy and

2   occupy the Property and Vacation Credit Use or Bonus Time, (d) voting rights in the Club as

3   described in the Bylaws, and (d) participation in the corporate ownership of the real estate and

4   other assets of the Club." (Levine Decl., Ex. 1 (Declaration ¶ 3.3).)  In general, "'tangible

5   property' refers to things that can be touched, seen, and smelled." *Kazi v. State Farm Fire &*

6   *Cas. Co.*, 24 Cal. 4th 871, 880 (2001).  Based on this definition of the term "tangible," the Court

7   concludes that as a matter of law, Plaintiffs cannot show that the Vacation Credits qualify as

8   "goods" under the CLRA.

9       Similarly, Vacation Credits and a WorldMark membership are not "work," "labor," or

10  "services furnished in connection with the sale or repair of goods."  Thus, the matter turns on

11  whether they would qualify as "services for other than a commercial or business use."  The

12  Court concludes they do not.  As set forth in Plaintiffs' Amended Complaint, Vacation Credits

13  are like currency.  (Am. Compl., ¶ 24.)  Moreover, by purchasing Vacation Credits, as set forth

14  above, Plaintiffs gain membership in WorldMark, which provides them with, among other

15  things, a vacation license, the right to use, occupy and enjoy WorldMark properties, and

16  participation in corporate ownership of WorldMark.  Although the CLRA is to be construed

17  liberally, the Court concludes that the Vacation Credits and resultant membership do not qualify

18  as "services" under the CLRA.  *Cf. Williams v. Trendwest Resorts, Inc.,* 2007 U.S. Dist. LEXIS

19  62396 at *22-23 (D. Nev. Aug. 20, 2007) (holding that Trendwest was "not selling ... services

20  under the" Fair Labor Standards Act).[9]

21      Accordingly, Wyndham's motion is GRANTED IN PART on this basis, and the CLRA

22  claim is DISMISSED WITH PREJUDICE.

23

24      [9]      Plaintiffs argue, based on pleadings submitted in connection with *Williams*
    and a consolidated matter, that the Court should conclude that Wyndham has conceded that it
25  sells goods and services.  (*See* Plaintiffs' Request for Judicial Notice.)  However, that case
    involved claims under the Fair Labor Standards Act, and the FLSA's definition of "goods" is
26  broader than the term is used under the CLRA.  *See* 29 U.S.C. § 203(i) (goods means "goods
    (including ships and marine equipment), wares, products, commodities, merchandise, or
27  articles or subjects of commerce of any character, or any part or ingredient thereof, but does
    not include goods after their delivery into the actual physical possession of the ultimate
28  consumer thereof other than a producer, manufacturer, or processor thereof").  Moreover, as
    noted, the court in *Williams* concluded Trendwest did not sell a service.

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**CONCLUSION**

2      For the foregoing reasons, Wyndham's motion is GRANTED IN PART AND DENIED

3   IN PART.

4      **IT IS SO ORDERED.**

5

6   Dated: April 18, 2008

7   JEFFREY S. WHITE
    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

9