1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CLARKE AND REBECCA WIXON, et al.

        Plaintiffs,

  v.

WYNDAM RESORT DEVELOPMENT CO.
(f/k/a TRENDWEST RESORTS, INC.), et al.

        Defendants.

_____/

No. C 07-02361 JSW

**CORRECTED ORDER
GRANTING IN PART AND
DENYING IN PART DIRECTOR
DEFENDANTS' MOTION TO
DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT AND
GRANTING PLAINTIFFS LEAVE
TO AMEND**

**INTRODUCTION**

    Now before the Court is the Motion to Dismiss Plaintiffs' Second Amended Complaint
filed by Gene Hensley ("Hensley"), Dave Herrick ("Herrick"), John Henley ("Henley"), Peggy
Fry ("Fry"), and John McConnell ("McConnell") (collectively "the Director Defendants").
Having considered the parties' papers, relevant legal authority, the record in this case, and
having had the benefit of oral argument, the Court HEREBY GRANTS IN PART AND
DENIES IN PART the Director Defendants' motion, and GRANTS Plaintiffs leave to amend.

**BACKGROUND**

    Plaintiffs, Clarke Wixon, Rebecca Wixon, Norman Wixon, and Barbra Wixon
(collectively "Plaintiffs") initially filed this action in San Mateo Superior Court.  On May 1,
2007, Defendant Wyndham Resort Development Corp. ("Wyndham") removed the action to
this Court and asserted that the Court had subject matter jurisdiction pursuant to 28 U.S.C. §

1332(d), the Class Action Fairness Act ("CAFA").  (*See* Docket No. 1 (Notice of Removal ¶¶ 4-5).)

After Wynhdam removed this action, the Court granted Plaintiffs leave to file an amended complaint to include claims against the Director Defendants for Breach of Fiduciary Duty and Declaratory Relief.  The Court previously has recounted the facts underlying Plaintiffs claims against the Director Defendants and shall not repeat them here.

On April 18, 2008, the Court granted in part the Director Defendants' first motion to dismiss and concluded that the claims asserted against them were derivative in nature.  On May 16, 2008, Plaintiffs filed their Second Amended Complaint ("SAC"), in which they alleged derivative claims for Breach of Fiduciary Duty and Declaratory Relief against the Director Defendants on behalf of  WorldMark, The Club ("WorldMark"), a California non-profit mutual benefit corporation.  (*See* SAC ¶¶ 9, 100-111.)

Clarke and Rebecca Wixon are California residents.  (SAC ¶ 6.)  Norman and Barbara Wixon are Colorado residents.  (*Id.* ¶ 7.)  Wyndham is an Oregon corporation, with a principal place of business in Washington.  (*Id.* ¶ 8.)  None of the Director Defendants are California residents, but Herrick, Hensley and Fry are Washington residents.  (*Id.* ¶ 1.)  As noted, WorldMark, who is named as a "nominal" defendant, is a California resident.  Defendants assert that WorldMark's principal place of business is in Washington, so that it also can be considered a Washington resident.

The Director Defendants now move to dismiss the claims asserted against them for lack of subject matter jurisdiction.  The Director Defendants also move to dismiss the claims against them on the basis that Plaintiffs' allegations of demand futility are insufficient.

//
//
//
//
//
//

United States District Court

For the Northern District of California

**ANALYSIS**

A.    **The Director Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction is Denied.**

1.    **Legal Standards.**

When a defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, the plaintiff bears the burden of proving that the court has jurisdiction to decide the claim. *Thornhill Publ'n Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). "The district courts of the United States ... are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs. Inc.,* 545 U.S. 546, 552 (2005) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Thus, district courts are authorized to adjudicate those cases which involve diversity of citizenship, those cases which involve a federal question, or those cases which involve the United States as a party. *Id.*; *see also Kokkonen*, 511 U.S. at 377.

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where an attack on jurisdiction is a "facial" attack on the allegations of the complaint, the factual allegations of the complaint are taken as true and the non-moving party is entitled to have those facts construed in the light most favorable to him or her. *Federation of African American Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). If the jurisdictional attack is "factual," a defendant may rely on affidavits or other evidence properly before the Court, and the non-moving party is not entitled to any presumptions of truthfulness with respect to the allegations in the complaint. Rather, he or she must come forward with evidence establishing jurisdiction. *Thornhill*, 594 F.2d at 733.

2.    **Discussion.**

In the SAC, Plaintiffs assert that "[t]he Court has subject matter jurisdiction over this case under" 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA"). (*See* SAC ¶ 1.) The Director Defendants do not dispute that the Court has jurisdiction over the CAFA claims

that are asserted against Wyndham.  Plaintiffs concede that the only basis for jurisdiction

asserted in the complaint is their reference to section 1332(d).  However, Plaintiffs argue that

the Court can exercise supplemental jurisdiction over the derivative claims.[1]

Pursuant to 28 U.S.C. § 1367:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

> (b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

Defendants argue that because WorldMark is an indispensable party and is non-diverse, the

Court cannot exercise supplemental jurisdiction under section 1367(b).  Plaintiffs counter that

because jurisdiction is premised upon CAFA, which only requires minimal diversity, the Court can

exercise supplemental jurisdiction over the derivative claims.  The Court concurs with Plaintiffs.

The plain language of section 1367(b) refers generally to section 1332 and precludes the

exercise of supplemental jurisdiction over "claims by plaintiffs against persons made parties under

Rule 14, 19, 20, or 24," when the exercise of jurisdiction would be inconsistent with the

jurisdictional requirements of section 1332.

"The complete diversity requirement is not mandated by the Constitution, ... or by the plain

text of section 1332(a)."  *Id.* at 553.  Nonetheless, courts have adhered to the rule in light of its

purpose, "which is to provide a federal forum for important disputes where state courts might favor,

or be perceived as favoring, home-state litigants."  *Id.* at 553-54.  In *Exxon*, the Supreme Court

---

[1]      At the hearing, Plaintiffs asserted that the failure to include a reference to 28 U.S.C. § 1367 as a basis for exercising jurisdiction was an oversight.

4

United States District Court

For the Northern District of California

1    noted, in the context of section 1332(a), that "[a] failure of complete diversity, ... , contaminates

2    every claim in the action." *Id.* at 564; *see also id.* at 554 ("Incomplete diversity destroys original

3    jurisdiction with respect to all claims, so there is nothing to which supplemental jurisdiction can

4    adhere.").

5       Thus, pursuant to *Exxon*, it would be inconsistent with the complete diversity rule to

6    exercise supplemental jurisdiction over claims against non-diverse defendants who are later joined

7    as parties.  However, when Congress enacted CAFA, it abandoned the complete diversity

8    requirement, apparently in favor of expanding federal jurisdiction over interstate class actions.  *See,*

9    *e.g.,* 151 Cong. Rec. H723, 727, 730 (daily ed. Feb. 17, 2005); S. Rep. No. 109-14, at 28, 43

10    (2005).  Because CAFA does not require complete diversity, the addition of claims against a non-

11    diverse defendant would not be inconsistent with the jurisdictional requirements of section 1332(d),

12    so long as that defendant did not destroy minimal diversity.  In this case, the addition of WorldMark

13    as a defendant does not destroy minimal diversity because WorldMark is not a primary defendant.

14    Accordingly, the Court concludes it may exercise supplemental jurisdiction over the derivative

15    claims.  Plaintiffs shall, however, include a reference to 28 U.S.C. § 1367 in the amended complaint

16    permitted by this Order.

17    **B.**     **Plaintiffs Have Not Stated Facts Sufficient to Show Demand Futility.**

18       The Director Defendants also move to dismiss the derivative claims on the basis that

19    Plaintiffs have failed to allege facts showing that demand upon WorldMark's Board would have

20    been futile.

21       **1.**     **Applicable Legal Standards.**

22       A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim

23    upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In ruling on a Rule 12(b)(6) motion, the

24    complaint is construed in the light most favorable to the non-moving party and all material

25    allegations in the complaint are taken to be true.  *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir.

26    1986).  The court, however, is not required to accept legal conclusions cast in the form of factual

27    allegations if those conclusions cannot reasonably be drawn from the facts alleged.  *Clegg v. Cult*

28

*Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

**2. Discussion.**

"A shareholder seeking to vindicate the interests of a corporation through a derivative suit must first demand action from the corporation's directors or plead with particularity the reasons why such demand would have been futile." *In re Silicon Graphics Sec. Lit.*, 183 F.3d 970, 989-90 (9th Cir. 1999). The demand requirement serves the purpose of affording "the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991) (internal quotation marks omitted). Because Rule 23.1 does not establish standards to evaluate demand futility, the Court looks to the substantive law of California, where WorldMark is incorporated. *See id.* at 99; *In re Silicon Graphics*, 183 F.3d at 990. California courts often look to and apply Delaware law on this issue. *See Shields v. Singelton*, 15 Cal. App. 4th 1611, 1621 (1993).

It is undisputed that Plaintiffs did not make a demand on WorldMark before filing the SAC. (*See* SAC ¶ 81.) Thus, to survive the Director Defendants' motion, Plaintiffs must set forth particularized facts that demonstrate a demand on WorldMark's Board would have been futile. "The test for proving demand futility is whether the facts show a reasonable doubt that (1) the directors are disinterested and independent, and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Oakland Raiders v. Nat'l Football League*, 93 Cal. App. 4th 572, 587 (citing *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984)). Conclusory facts are insufficient to meet this burden. *Id.* (citing *Shields*, 15 Cal. App. 4th at 1622). Similarly, "facts relating to the structural bias common to corporate boards throughout America are also insufficient." *Id.* "The proof must be of 'facts specific to each director from which [the trier of fact] can [find a reasonable doubt] that that particular director could or could not be expected to fairly evaluate the claims of the shareholder plaintiff.'" *Id.* (quoting *Shields*, 15 Cal. App. 4th at 1622).

United States District Court

For the Northern District of California

In the section of the SAC entitled "Demand is Excused," Plaintiffs proffer nothing more than conclusory allegations that the Director Defendants lack independence or are subject to Wyndham's dominion and control.  (*See, e.g.,* SAC ¶ 82 ("Defendant Wyndham controls the WorldMark Board, has engaged in conduct adverse to the interests of WorldMark and its members, and has obtained the benefit of the wrongful conduct alleged herein.").)   However, the Court has examined whether there are particularized facts alleged in the remainder of the SAC to support the conclusions set forth in paragraphs 81-85.  The Court concludes there are not.

Plaintiffs' primary argument is that demand on the WorldMark Board would have been futile because Wyndham dominates and controls the WorldMark Board.  According to Plaintiffs this fact, among others, demonstrates that the Defendant Directors cannot be considered independent.

> "Independence" exists when a director's decision is based on "the corporate merits of the subject before the board" rather than on "extraneous considerations or influences." ... When lack of independence is charged, the plaintiff must allege particularized facts "show [ing] that the Board is either dominated by an officer or director who is the proponent of the challenged transaction or that the Board is so under his influence that its discretion is 'sterilize[d].'" ... If a director is considered "controlled" by another, he or she is lacking in the independence necessary to consider the challenged transaction objectively.
>
> A controlled director is one who is dominated by another party, whether through close personal or familial relationship or through force of will.  A director may also be considered "controlled" if he or she is beholden to the allegedly controlling entity, as when the entity has the direct or indirect unilateral power to decide whether the director continues to receive a benefit upon which the director is so dependent or is of such subjective material importance that its threatened loss might create a reason to question whether the director is able to consider the corporate merits of the challenged transaction objectively.

*In re Sagent Technology Deriv. Lit.*, 273 F. Supp. 2d 1079, 1088 (N.D. Cal. 2003) (citations omitted); *see also Aronson*, 473 A.2d at 816 ("[I]n the demand-futile context a plaintiff charging domination and control of one or more directors must allege particularized facts manifesting 'a direction of corporate conduct in such a way as to comport with the wishes or interests of the corporation (or persons) doing the controlling.'").

To support this argument, Plaintiffs allege that the Director Defendants were or are employees of Wyndham.  (*See* SAC ¶¶ 10-14, 19, 82.)  However, it is undisputed that at the time

United States District Court

For the Northern District of California

1    Plaintiffs filed the initial complaint, Defendant McConnell was no longer a member of the Board,

2    and the SAC contains no allegations about the fifth Board member, who is not a named defendant.

3    Thus, on the facts alleged, the Court cannot conclude that Plaintiffs have alleged particularized

4    facts that would call into question these directors' independence or interest.

5            Plaintiffs also allege that Defendants Hensley and Henley "recently" retired from

6    Wyndham, but the record reflects that they retired from Wyndham before Plaintiffs filed their

7    original complaint in April 2007.  Further, other than their status as former officers or employees of

8    Wyndham, Plaintiffs have not set forth any facts to show that Wyndham has "direct or indirect

9    unilateral power to decide whether" these Director Defendants continue "to receive a benefit upon

10   which the director is so dependent or is of such subjective material importance that its threatened

11   loss might create a reason to question whether the director is able to consider the corporate merits

12   of the challenged transaction." *See In re Sagent*, 273 F. Supp. 2d at 1088.  Without such

13   particularized facts, the Court cannot conclude that these defendants currently are so beholden to

14   Wynhdam that their independence or interest could be questioned.

15           Thus, assuming *arguendo* that Herrick and Fry's status as Wyndham employees and the fact

16   that they created the Travel Share program would be sufficient to call their independence into

17   question, the Court concludes that Plaintiffs have not set forth particularized facts to show that the

18   remaining three directors were so beholden to Wyndham that their discretion was sterilized.[2]

19           Plaintiffs also attempt to argue that the WorldMark Board is dominated and controlled by

20   Wyndham on the basis that Wyndham created WorldMark and drafted the Governing Documents,

21   including WorldMark's By-Laws and the Management Agreement, by which the Plaintiffs assert

22   that the WorldMark Board delegated all of its powers and authority back to Wyndham.  (*See* Opp.

23   Br. at 11:18-12:3.)  However, in the SAC, Plaintiffs allege that an entity named Trendwest created

24   WorldMark and that Wyndham acquired Trendwest, and thereby acquired WorldMark.  (SAC ¶¶ 8,

25   40.)  Notwithstanding Plaintiffs' arguments at the hearing, the Court cannot infer from this record

---

26

27           [2]      Although Wyndham may have benefitted from the creation and
     implementation of the Travel Share program, Plaintiffs allege no particularized facts that
     Herrick or Fry personally benefitted from that program.  *See, e.g., In re Sagent*, 278 F. Supp.
28   2d at 1088 (noting that interest exists when a director will receive a benefit from a
     transaction that is not shared equally by the stockholders).

8

**United States District Court**
For the Northern District of California

1   that Wyndham, or Wyndham representatives, actually drafted the Management Agreement at issue,

2   because it was executed by Wyndham's predecessor Trendwest and by a representative of

3   WorldMark who has not been shown to have any affiliation with Wyndham.  Thus, these facts do

4   not alter the Court's conclusion that Plaintiffs have not alleged particularized facts demonstrating

5   that demand on the WorldMark Board would be futile.  The same is true for Plaintiffs' allegations

6   regarding the Director Defendants' alleged manipulation of the election process, because Plaintiffs

7   do not set forth particularized facts as to how the Director Defendants allegedly re-allocated proxy

8   votes to "ensure the re-election of incumbent directors beholden to Wyndham, rather than

9   independent directors."  (*See* SAC ¶ 67.)  Nor are there particularized facts to support the

10  conclusion that the Director Defendants have avoided the election process by allowing incumbent

11  directors to run for re-election and resign shortly thereafter, allowing the Board to fill the vacant

12  seat with a director who allegedly is loyal only to Wyndham's interests.

13          Finally, although Plaintiffs contend that the allegations in the SAC demonstrate that there is

14  a substantial likelihood that the Director Defendants will be found liable, because their failure to

15  take action violated specific provisions of the Governing Documents, these allegations refer to the

16  Director Defendants generally.  "[I]n order to evaluate the demand futility claim, the court must be

17  apprised of facts from which it can conclude that that particular director could or could not be

18  expected to fairly evaluate" Plaintiffs' claims.  *Shields*, 15 Cal. App. 4th 1611.

19          Accordingly, the Court concludes that the Plaintiffs have not set forth particularized facts

20  that show a demand upon the WorldMark Board would be excused.  However, because it does not

21  appear that granting Plaintiffs leave to amend would be futile, the Court shall grant Plaintiffs one

22  final opportunity to amend the claims against the Director Defendants.

23                                          **CONCLUSION**

24          For the foregoing reasons, the Director Defendants' motion to dismiss is granted in part and

25  denied in part, and Plaintiffs shall be granted leave to amend.  If Plaintiffs choose to file a Third

26  Amended Complaint, they shall do so within thirty (30) days of the date of this Order, and the

27  Defendants shall file their responsive pleadings within twenty (20) days after the TAC is served.  If

28

1    Plaintiffs choose not to amend, the Court shall dismiss the claims against the Director Defendants

2    with prejudice.

3         Finally, the case management conference currently set for August 8, 2008 is HEREBY

4    CONTINUED to **Friday**, **October 31, 2008 at 1:30 p.m.**

5         **IT IS SO ORDERED.**

6    Dated: July 23, 2008                                _____

7                                                        JEFFREY S. WHITE
                                                         UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California