**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARKE AND REBECCA WIXON, et al., | No. C 07-02361 JSW |
| Plaintiffs, | **ORDER ADOPTING IN PART AND REJECTING IN PART SPECIAL MASTER'S REPORT AND RECOMMENDATION; DENYING WYNDHAM'S MOTION TO MODIFY REPORT; AND SUSTAINING, IN PART, PLAINTIFFS' OBJECTIONS THERETO** |
| v. | |
| WYNDHAM RESORT DEVELOPMENT CORP., et al., | |
| Defendants. | |

## INTRODUCTION

Now before the Court for consideration are: (1) the Special Master's Report and Recommendation on Plaintiffs' Motion to Enforce Class Certification Discovery Stipulation and Motion to Strike ("Report"); (2) Plaintiffs' Objections to the Report; and (3) the Motion to Adopt and Modify the Report filed by Wyndham Resort Development Corporation ("Wyndham"). The Court has considered carefully the parties' papers, relevant legal authority, the record in this case, and it determined that no hearing was necessary with respect to the parties' responses to the Report. *See* N.D. Civ. L.R. 7-1(b). The Court HEREBY ADOPTS IN PART AND REJECTS IN PART the Special Master's Report, DENIES Wyndham's Motion to Modify the Report, and SUSTAINS IN PART Plaintiffs' Objections to the Report.

## BACKGROUND

On January 15, 2009, Plaintiffs submitted a letter to Magistrate Judge Zimmerman, setting forth an agreement regarding a dispute over Wyndham's production of hard copy and electronic documents (the "January 15 Agreement"). (*See* Docket No. 292 (Declaration of

Jonathan K. Levine in Support of Motion to Enforce Class Certification Discovery and Motion to Strike ("Levine Enforce Decl."), Ex. B).)  The January 15 Agreement provides, in pertinent part, as follows:

    A.    Timing of Production.

        Wyndham will complete production of hard copy documents responsive to Plaintiffs' document requests by February 2, 2009.  The production of electronically stored information ("ESI") will be limited at this time to specific search terms and custodians.  Wyndham will make its initial production of ESI on February 2, 2009, limited only by the ability of Wyndham's ESI vendor to process the ESI.  To the extent Wyndham is unable to produce all ESI on February 2, 2009, it will supplement and complete the production by no later than February 16, 2009. ...

    B.    Scope of the ESI Search.

        The ESI search will be conducted using the list of search terms previously provided by Plaintiffs' counsel and will be limited to the list of 26 custodians at Wyndham designated by Plaintiffs in their letters of January 9 and 13, 2009.

...

    E.    Use of Responsive Documents in Class Certification Briefing.

        Documents and/or ESI responsive to an outstanding discovery request that have not been produced to the requesting party may not be used for the purposes of moving for or opposing class certification.

(*Id.*)

Pursuant to the January 15 Agreement, Wyndham produced documents to Plaintiffs on February 2 and February 17, 2009.[1]  Wyndham also produced an additional 30,000 ESI documents on April 23 and April 24, 2009.  On April 24, 2009, Plaintiffs filed their motion for class certification.  On April 28, 2009, Plaintiffs raised the issue of the April 23 and April 24 productions with Judge Zimmerman and asked that he issue an order precluding Wyndham from relying on any documents produced after February 17, 2009 in connection with the motion for class certification.  (*See* Docket No. 260 (Letter from Elizabeth Pritzker to Judge Zimmerman at 2).)  Wyndham contended that these two document productions did not violate

---

[1]    February 16, 2009 was a holiday.  Plaintiffs do not contend that Wyndham violated the January 15 Agreement by producing documents on February 17.

2

the January 15 Agreement, and it claimed that the documents had been caught in a production screen.  (*See* Docket No. 262 (Letter from William Droze to Magistrate Judge Zimmerman).)

On April 30, 2009, Judge Zimmerman issued an Order in which he stated that he understood "the January 15, 2009 stipulated discovery schedule as requiring Wyndham to have completed its ESI production by February 17, 2009, which would have included the production of any documents that were subject to a privilege screen."  (Docket No. 263 (Fourth Discovery Order at 1:24-28).)  However, because "the parties have agreed that Wyndham shall inform plaintiffs of which of [*sic*] the newly produced documents it intends to use in opposition to plaintiffs' motion for class certification, by no later than May 6, 2009," Judge Zimmerman denied Plaintiffs' request, without prejudice to Plaintiffs renewing the request before the undersigned "by way of objection to specific documents."  (*Id.* at 2:5-13.)

On May 5, 2009, Wyndham produced Dr. Michael C. Keeley's Expert Report (the "Keeley Report") to Plaintiffs as well as approximately 905 documents that Wyndham stated it was producing either in connection with the Keeley Report or on which intended to rely in connection with class certification.  (Levine Enf. Decl., Ex. L.)  On May 6, 2009, Wyndham notified Plaintiffs that it would not rely on any of the ESI produced on April 23 and April 24 in connection with class certification, except to the extent the production included previously-disclosed documents.  (Docket No. 323 (Declaration of William Loeffler in Opposition to Motion to Strike ("Loeffler Opp. Enf. Decl."), Ex. 7.)

On May 8, 2009, Wyndham filed its opposition to the motion for class certification.  In support of its opposition, Wyndham submitted the Keeley Report.  On May 12, 2009, Plaintiffs filed a Motion to Enforce Class Certification Discovery Stipulation and Motion to Strike ("Motion to Strike"), in which they asked the Court to strike the Keeley Report on the basis that Dr. Keeley relied on documents Wyndham had not produced to Plaintiffs, allegedly in violation the January 15 Agreement.

After hearing oral argument on the motion, and with the consent of the parties, on June 29, 2009, the Court appointed Edward M. Swanson, Esq. as a Special Master for the purposes of

1 preparing a report and recommendation on the Motion to Strike. On July 17, 2009, the Special
2 Master issued his Report.

### ANALYSIS

As set forth at the hearing before the Special Master, the issue presented is whether Wyndham failed to produce documents in accordance with the January 15 Agreement and, if so, what the appropriate remedy should be. (Docket No. 373-1 (Transcript of Proceedings ("Tr.") at 5:23-6:9).) Based on his interpretation of the January 15 Agreement, the Special Master concluded that Wyndham violated the January 15 Agreement with respect to 47 of the 120 documents at issue. However, he also determined that the late production was harmless and, therefore, recommended that the Court deny the Motion to Strike.[2] He also recommended that Wyndham be required to pay 75% of the fees incurred in connection with the proceedings before the Special Master. (*See* Report at 15:26-16:7, 21:9-18.)

**A. Applicable Legal Standards.**

The Court reviews Special Master's Report and Recommendation and all objections to findings of fact and conclusions of law under a *de novo* standard of review. Fed. R. Civ. P. 53(f)(3), (4); *see also Alvarado v. FedEx Corp.*, 2009 U.S. Dist. LEXIS 22434 at *12 (N.D. Cal. March 19, 2009).

**B. The Court Adopts in Part and Rejects In Part the Report.**

Plaintiffs do not object to the Special Master's conclusion that Wyndham failed to produce 47 of the 120 documents in accordance with the January 15 Agreement. However, Plaintiffs do object to his conclusion regarding the interpretation of the January 15 Agreement, his conclusion that Wyndham did not violate the January 15 Agreement with respect to the remaining documents, his recommendation that the Motion to Strike be denied, and his allocation of fees and expenses. Plaintiffs also ask that the Court consider whether other sanctions may be appropriate.

---

[2] Plaintiffs provided a list of 124 documents that they contend were not produced in accordance with the January 15 Agreement. (*See* Docket No. 351.) The parties agree that four of these documents are not at issue, because three are duplicates (34 is a duplicate of 36, 52 is a duplicate of 121, and 112 is a duplicate of 122) and one did not exist as of February 17, 2009 (123). (*See* Report at 7 n.4.)

4

Wyndham, in turn, moves the Court to modify the Special Master's conclusions with respect to 8 of the 47 documents that the Special Master determined should have been produced by February 17, 2009. In its opposition to Plaintiffs' objections, Wyndham asks the Court to revisit the allocation of fees and expenses.

### 1. Interpretation of the January 15 Agreement.

Plaintiffs object to the Special Master's conclusion that "the terms of the [January 15 Agreement] did not prohibit Wyndham from relying upon *any* documents that had not been produced by the February 17 deadline; Wyndham simply could not rely on later-produced documents that were 'responsive,' as defined by" that agreement. The Special Master construed the term "responsive" to mean "ESI material generated by a search of the electronic databases of specific custodians for documents containing specific search terms." (*See* Report at 6:8-19.)

Plaintiffs argue that the Special Master's interpretation is erroneous, because it excludes ESI documents that were responsive to outstanding discovery requests that Wyndham located *before* the parties entered into the January 15 Agreement, but that did not fall within the scope of specific custodians or search terms. Plaintiffs contend that Documents 90, 109-111, and 116-119 fall within this category. Wyndham's position is that the parties had not yet resolved their disputes about Wyndham's objections to Plaintiffs' discovery requests to the extent the requests called for ESI material. Therefore, Wyndham argues that the January 15 Agreement "superseded and became the operative stipulation for ESI production," *i.e.* that it superseded any previous document requests served by Plaintiffs. (Tr. at 42:23-43:1, 44:1-2.)

Clearly the parties intended Section E of the January 15 Agreement to limit the relevant universe of documents and materials to be presented in connection with class certification and to prevent unfair surprise to either party. However, it also is evident from the record that the parties had not come to an agreement on the scope of the ESI production. Section A of that Agreement states that "production of [ESI] will be limited at this time to specific search terms and custodians." That language, which apparently resolved Wyndham's objections regarding the production of ESI material, thus gives meaning to what the parties considered to be "responsive" to an outstanding discovery request and, thus, what could or could not be used in

5

connection with the class certification briefing.  (*See* Docket Nos. 198 (Letter dated Dec. 31, 2008 from Elizabeth Pritzker to Magistrate Judge Zimmerman), 199 (Letter filed January 5, 2009 from William Droze to Magistrate Judge Zimmerman).)

The Court concludes that the Special Master did not err in his interpretation of the January 15 Agreement and adopts his Report in this respect.

### 2. Timeliness of Production.

The Special Master concluded that Wyndham failed to produce 47 documents in accordance with the January 15 Agreement.  Wyndham urges the Court to modify the Report with respect to Documents 6, 21, 22, 34, 39, 59, 61 and 101, on the basis the documents do not contain any of the keywords selected by Plaintiffs to limit the scope of the ESI search. (*See* Docket Nos. 354 (Wyndham's Response to Plaintiffs' List of Documents, Ex. A), 371 (Notice of Filing of Modified Exhibit "A").)  Although Plaintiffs do not contest this point, the Special Master had been advised that there was additional information regarding the basis for withholding these documents included on Modified Exhibit A, and he had that information before him when he issued his Report.  The Court finds the Special Master's Report to be well-reasoned and correct, and it adopts the Report as to all 47 documents.[3]

Plaintiffs object to the Special Master's conclusion that 53 documents were "non-responsive" ESI and, therefore, were timely produced.[4]  Plaintiffs argue that, contrary to the Special Master's conclusion, documents stored on a "shared" directory and located in a former employee's directory should have been produced by the February 17 deadline, because Scott Grey, one of the designated custodians had access to these files.  Plaintiffs contend that they did not learn about the shared directory until April 2009, when they deposed Mr. Grey.

Wyndham's counsel argues that they were not aware of the shared directory.  The record, however, demonstrates that Mr. Grey, and therefore Wyndham, knew about this directory.  (Docket Nos. 388, 402 (Declaration of Elizabeth Pritzker in Support of Plaintiffs'

---

[3]   Documents 6, 20-22, 24, 34, 39, 40, 52-54, 57, 59-61, 70-89, 91-99, 101, 104, 108, 115.

[4]   Documents 1-5, 7-19, 23, 25-33, 35, 37, 38, 41-51, 55-56, 58, 90, 102-103, and 116-119.

6

1  Objection to Special Master's Report, Ex. D (Deposition of Scott Grey at 43:6-10)).)  When it
2  became apparent that the custodial based search that *Wyndham* had proposed had a major flaw,
3  namely a directory full of potentially relevant documents with no custodian, the Court cannot
4  conclude it was reasonable for Wyndham to ignore the problem and rely on an overly narrow
5  and hyper-technical reading of the January 15 Agreement.  Accordingly, the Court rejects the
6  Special Master's conclusion that Wyndham was not required to produce the documents located
7  on the shared directory and rejects his conclusion that Wyndham should not be sanctioned for
8  this conduct.[5]

### 3.     The Work Product Documents.

10  "The work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3),
11  protects from 'discovery documents and tangible things prepared by a party or his
12  representative in anticipation of litigation.'"  *In re Grand Jury Subpoena (Mark Torf/Torf Env.*
13  *Mgmt.)*, 357 F.3d 900, 906 (9th Cir. 2004) (citation omitted) (hereinafter "*Torf*").  When a
14  document is created for dual purposes, a document is entitled to work-product protection if "in
15  light of the nature of the document and the factual situation in the particular case, the document
16  can be fairly said to have been prepared or obtained because of the prospect of litigation."  *Id.* at
17  907.

18  Wyndham asserted work-product protection for 14 of the documents at issue.  The
19  Special Master concluded that 11 of these 14 documents (100, 105-107, 109-114, 120) qualified
20  as work-product and, thus, were produced in a timely fashion when Wyndham produced them in
21  connection with the Keeley Report.  The Special Master, however, concluded that the remaining
22  three documents (104, 108, 115) were not work-product and should have been produced on
23  February 17, 2009.  As to those documents to which no party has raised an objection, the Court

---

[5]  It is not clear from the record which of the documents were located on the shared directory.  In light of the Court's conclusion that striking the Keeley Report is not an appropriate sanction, *see infra*, the Court does not list the documents at issue in this Order.

7

United States District Court
For the Northern District of California

1  finds the Special Master's Report to be well-reasoned and correct.  Therefore, it adopts the
2  Report as to those documents.[6]

3  Plaintiffs do object to the Special Master's conclusion that Documents 100, 105-107,
4  109-111, 120 qualified for work-product protection.  Plaintiffs have not, however, raised any
5  substantive arguments in connection with their objections to Documents 100, 105-107, and 120.
6  The Court finds the Special Master's conclusion as to those documents well reasoned and
7  correct and, therefore, adopts the Report as to those documents.

8  With respect to Documents 109-111, the Special Master noted that the inclusion of Fun
9  Time in the reports indicated that the documents "were created specifically to address
10  allegations in this litigation," *i.e.* they were created because of the litigation.  *Torf*, 357 F.3d at
11  907.  Although these documents may not reflect counsel's mental impressions or legal theories
12  on their face, the Court concludes that the Special Master's conclusion that they qualified for
13  work product protection under is well reasoned and correct.  Therefore, it adopts the Report as
14  to those documents.  *See Sporck v. Peil*, 795 F.2d 312, 315 (3rd Cir. 1985).

15  **4.  Determination on Motion to Strike, Sanctions and Allocation of Fees.**

16  "If a party fails to provide information ... as required by Rule 26(a) or (3), the party is
17  not allowed to use that information ... to supply evidence on a motion, [or] at a hearing, ...
18  unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Rule 37
19  also provides that "in addition to or instead of" the exclusion sanction, a court may impose
20  payment or reasonable expenses or other appropriate sanctions, including those available under
21  Rule 37(b)(2)(A)(I)-(iv).  Fed. R. Civ. P. 37(c)(1)(A), (C).  Rule 37 sanctions are self-executing
22  and automatic.  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir.
23  2001).  Wyndham bears the burden of demonstrating that the violation was substantially
24  justified or harmless.  *Id.* at 1107.

25  The Special Master concluded that Wyndham's failure to produce 47 of the 124
26  documents in accordance with the January 15 Agreement was harmless and that Wyndham's
27  position was substantially justified.  Therefore, he recommended that the Motion to Strike be

---

[6] Documents 104-108, 112-115.

8

denied. Plaintiffs object to this conclusion on the basis that it is not in conformance with the plain language of the January 15 Agreement, which provides for no remedy other than exclusion. Plaintiffs also argue that although the Special Master recited the correct legal standards for Rule 37 sanctions, he did not properly apply them. The Court recognizes that the January 15 Agreement suggests that any documents not produced are not to be used in moving for or opposing class certification. As Wyndham notes, Plaintiffs have relied on certain of these documents in support of its reply brief. Therefore, the Court declines to strike the Keeley Report based on the language of the January 15 Agreement.

The Court concurs that exclusion of the Keeley Report is not an appropriate sanction under Rule 37. Plaintiffs have had the opportunity to counter the Keeley Report with a further report from Dr. Lamb, who stated that "[t]here is nothing in Dr. Keeley's report, the materials he relied on in preparing that report, or in his deposition testimony that leads me to alter the opinions expressed in my Expert Report." (*See* Docket No. 337 (Declaration of Jonathan K. Levine in Support of Plaintiffs' Motion for Class Certification, Ex. A (Lamb Rebuttal Report ¶ 4)).) As such, the Court adopts the Special Master's Report and DENIES the Motion to Strike.

However, the Court does find that alternative sanctions are warranted under Rule 37. The Court does not find Wyndham's decision to withhold documents from the shared directory to be substantially justified. Further, Wyndham's conduct did delay the class certification proceedings and caused Plaintiffs to incur additional expenses. Accordingly, the Court shall not consider Dr. Keeley's sur-rebuttal report. Wyndham's administrative motion for leave to file that report is DENIED. The Court also concludes that Wyndham should be required to bear the reasonable expenses Plaintiffs incurred in connection with preparing their Motion to Strike. Plaintiffs shall submit a statement supporting those expenses by no later than October 9, 2009. Wyndham may file any objections it may have to the reasonableness of those expenses by no later than October 16, 2009.

Finally, the Court also concludes that Wyndham also shall be required to bear the full cost of the Special Master's fees.

**CONCLUSION**

9

For the foregoing reasons, the Special Master's Report is adopted in part and rejected in part, Plaintiffs' objections are sustained in part and overruled in part, Wyndham's motion to modify is denied, Plaintiffs' motion to strike is denied, and Wyndham's administrative motion to file sur-rebuttal expert report is denied.

**IT IS SO ORDERED.**

Dated: September 21, 2009

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE