**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARKE AND REBECCA WIXON, et al., | No. C 07-02361 JSW |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION, GRANTING MOTION TO AMEND COMPLAINT, AND GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |
| v. | |
| WYNDHAM RESORT DEVELOPMENT CORP., et al., | |
| Defendants. | |

/

**INTRODUCTION**

Now before the Court for consideration are the following: (1) Plaintiffs' Motion for Class Certification; (2) Plaintiffs' Motion for Leave to File Fourth Amended Complaint; and (3) the Director Defendants' Motion to Dismiss Plaintiffs as Representatives and the Derivative Action. The Court has considered the parties' papers, relevant legal authority, the record in this case and has had the benefit of oral argument, and HEREBY GRANTS IN PART AND DENIES IN PART the motion for class certification, GRANTS the motion to amend, and GRANTS IN PART AND DENIES IN PART the motion dismiss.

**BACKGROUND**

The Court has addressed the facts underlying this action in previous orders and shall not repeat them herein. In brief, Plaintiffs purchased timeshare interests in nominal defendant WorldMark, The Club ("WorldMark"). (Docket No. 175-1 (Third Amended Complaint ("TAC") ¶¶ 6-7).) Unlike participants in a traditional timeshare, WorldMark members purchase

"Vacation Credits" from Wyndham. Vacation Credits then may be used like currency at any

WorldMark resort, depending only on availability and the amount of Vacation Credits necessary

for a reservation. (*Id.* ¶¶ 25-26.) When a person purchases Vacation Credits from Wyndham,

they are provided with a set of documents, which Plaintiffs identify as the "Governing

Documents," and which Plaintiffs allege form a contract between Wyndham and all WorldMark

members. (*Id.* ¶¶ 29-30.)

Plaintiffs also allege that Wyndham has assumed control of WorldMark's Board of

Directors and that Wyndham and the Board have "taken a number of actions that are contrary to

the interests of WorldMark members and violate the Governing Documents," including but not

limited to creating a program called TravelShare, placing limitations on Bonus Time

availability, and abandoning relative-use-value principles.[1] (*Id.* ¶ 40.)

Plaintiffs move to certify the following class: "All Current WorldMark, The Club

members who purchased WorldMark Premier Vacation Credits before November 5, 2006 and

who (A) reside in the State of California or who purchased Vacation Credits in California; and

(B) did not enroll in the TravelShare program at any time." (*See* Docket No. 257 (Motion for

Class Certification at 1:10-13); Docket No. 247 (Declaration of Elizabeth Pritzker in Support of

Motion to Amend, Ex. A (Proposed Fourth Amended Complaint ¶ 70)).)

The Court shall address additional facts as necessary in its analysis.

## ANALYSIS

### Motion for Class Certification.

"Class certifications are governed by Federal Rule of Civil Procedure 23," and a

plaintiff seeking class certification bears the burden of "demonstrating that he has met each of

the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Lozano*

---

[1] According to Plaintiffs only two types of reservations are permitted under the Governing Documents: (1) reservations made with Vacation Credits; and (2) Bonus Time reservations, which are short term reservations paid for in cash. (TAC ¶ 31). The Travel Share programs purports to create a third type of short term reservation, "Fun Time." Relative-use value pertains to the manner in which resorts are "priced." Plaintiffs contend that, historically, WorldMark priced all resorts at the same or essentially the same credit values but that Wyndham abandoned that principle and increased the credit values of new resorts. (*See* TAC ¶¶ 54-56.)

*v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007); *see also Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *amended* 273 F.3d 1266 (9th Cir. 2001) (trial court must conduct a "rigorous analysis" to determine whether the requirements of Rule 23 have been met). Any doubts regarding the propriety of class certification generally should be resolved in favor of certification. *See, e.g., Gonzales v. Arrow Fin. Servs., LLC*, 489 F. Supp. 2d 1140, 1154 (S.D. Cal. 2007). Further, "[c]lass certification is not immutable, and class representative status could be withdrawn or modified if at any time the representatives could no longer protect the interests of the class." *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) (citing *Soc. Servs. Union, Local 535 v. County of Santa Clara*, 609 F.2d 944, 948-49 (9th Cir. 1979).

Wyndham argues that Plaintiffs cannot: (1) satisfy the adequacy requirement of Rule 23(a)(4); (2) satisfy the requirements of Rule 23(b)(2); and (3) satisfy the predominance requirement of Rule 23(b)(3).

**A.     Rule 23(a) Requirements.**

Class treatment is appropriate when

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "'Although some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the class certification stage.'" *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003) (quoting *Moore v. Hughes Helicopters, Inc.,* 708 F.2d 475, 480 (9th Cir. 1983)).

**1.     Numerosity.**

In order to meet their burden on Rule 23(a)'s "numerosity" requirement, Plaintiffs must demonstrate that the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). In this case, the record demonstrates that the proposed class consists of at

United States District Court

For the Northern District of California

1    least 80,000 persons. (*See* Docket No. 258 (Declaration of Elizabeth Pritzker in Support of

2    Motion for Class Certification ("Pritzker Cert. Decl."), Ex. 17); Docket No. 274 (Declaration of

3    David Herrick in Opposition to Motion for Class Certification ("Herrick Opp. Decl."), ¶ 21).)

4    Plaintiffs have met their burden to show that the class is sufficiently numerous. *See Immigrant*

5    *Assistance Project of L.A. County Fed'n of Labor (AFL-CIO) v. INS*, 306 F.3d 842, 869 (9th

6    Cir. 2002) (affirming certification of 11,000 member class); *see also White v. E-Loan*, 2006 WL

7    2411420, * 2 (N.D. Cal. Aug. 18, 2006) (finding proposed class of 100,000 "easily satisfies the

8    numerosity requirement").

9         **2.      Commonality.**

10   Commonality requires that there be "questions of fact and law which are common to the

11   class." Fed. R. Civ. P. 23(a)(2). The commonality requirement has been construed

12   permissively and is "less rigorous than the companion requirements of Rule 23(b)(3)." *Hanlon*,

13   150 F.3d at 1019. "All questions of fact and law need not be common to satisfy the rule. The

14   existence of shared legal issues with divergent factual predicates is sufficient, as is a common

15   core of salient facts coupled with disparate legal remedies within the class." *Id*. Wyndham

16   does not seriously contest this requirement. Rather, its argument focuses on the issue of

17   predominance. (*See* Docket No. 271 (Wyndham Opposition to Motion for Class Certification

18   ("Opp. Br.") at 13:6-21:24).)

19        In *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223 (C.D. Cal. 2003), the

20   court found that the plaintiffs satisfied the commonality requirement where they alleged that the

21   defendants engaged in a "continuing course of conduct." *Id.* at 234. Here, the claims of the

22   proposed class stem from the same course of conduct, namely whether Wyndham's actions

23   violated the Governing Documents. In light of the fact that Rule 23(a)'s commonality

24   requirement is "less rigorous" than Rule 23(b)(3)'s predominance requirement, the Court finds

25   that the proposed class shares sufficient commonality to satisfy the requirements of Rule

26   23(a)(2). *Cf. Hanlon*, 150 F.3d at 1019-20 (commonality requirement was satisfied because the

27   claims of the proposed class stemmed from the same source, the defendant's product).

28   //

4

### 3. Typicality.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As with the commonality requirement, the typicality requirement is applied permissively. *Hanlon*, 150 F.3d at 1020. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id*.; *see also Lozano*, 504 F.3d at 734 ("Under Rule 23(a)(3) it is not necessary that all class members suffer the same injury as the class representative."); *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) ("In determining whether typicality is met, the focus should be 'on the defendants' conduct and plaintiff's legal theory,' not the injury caused to the plaintiff.") (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). Thus, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani,* 126 F.3d 372, 376 (2nd Cir. 1997)).

Wyndham does not address this requirement in its opposition to Plaintiffs' motion. Plaintiffs' claims and the putative class members' claims arise from the same course of conduct: whether Wyndham has engaged in conduct that violates the Governing Documents and has thereby injured the members of the class. *See Westways*, 218 F.R.D. at 235. The Court finds Plaintiffs have satisfied the typicality requirement of Rule 23(a)(3).[2]

### 4. Adequacy of Representation.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020. In order to determine whether the adequacy prong is satisfied, courts consider the following two questions: "(1) [d]o the

---

[2] At the hearing, Plaintiffs made clear that their claims regarding the election process are not part of the class action. (Docket No. 365 (6/26/09 Transcript at 62:6-18).) As such, the Court's findings on typicality do not relate to those claims. The Court addresses Plaintiffs' ability to act as representatives on these claims in its analysis of the Director Defendants' motion to dismiss.

1  representative plaintiffs and their counsel have any conflicts of interest with other class

2  members, and (2) will the representative plaintiffs and their counsel prosecute the action

3  vigorously on behalf of the class?"[3] *Staton*, 327 F.3d at 957; *see also Fendler v. Westgate*

4  *California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975) (noting that representative plaintiffs and

5  counsel also must have sufficient "zeal and competence" to protect the interests of the class).

6  "'[T]he adequacy-of-representation requirement is satisfied as long as one of the class

7  representatives is an adequate class representative.'" *Rodriguez v. West Publishing Co.*, 563

8  F.3d 948, 961 (9th Cir. 2009) (quoting *Local Joint Executive Bd. of Culinary/Bartender Trust*

9  *Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 n.2 (9th Cir. 2001) (brackets added in

10  *West*)).

11  Wyndham argues that Plaintiffs are not adequate class representatives because

12  fundamental conflicts exist between Plaintiffs and the putative class and because Plaintiffs have

13  abdicated their responsibilities as class representatives.

14          **a.**    **There are no fundamental conflicts between Plaintiffs and the putative class members.**

15

16  "A conflict is 'fundamental' when it goes to the specific issues in controversy ... or

17  where ... some plaintiffs claim to have been harmed by the same conduct that benefitted other

18  members of the class, preventing the named representatives from 'vigorously prosecut[ing] the

19  interests of the class through qualified counsel." *Allied Orthopedic Appliances, Inc. v. Tyco*

20  *Healthcare Group L.P.*, 247 F.R.D. 156, 177 (C.D. Cal. 2007) (quoting *Valley Drug v. Geneva*

21  *Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)). By way of example, Wyndham

22  argues that "there are class members who may become TravelShare members and who would

23  oppose any efforts enjoin or curtail that program and its benefits, such as Fun Time

24  reservations." (Opp. Br. at 7:2-5.) According to Wyndham, an average of 2,680 WorldMark

25  members join TravelShare per month. (*See* Docket No. 275 (Declaration of Peggy Fry in

26

27       [3]    Wyndham does not challenge the adequacy of class counsel, and the Court concludes, based on the record presented, that Plaintiffs' counsel will vigorously prosecute

28  this action on behalf of the putative class. (*See* Pritzker Cert. Decl., Ex. 24).)

1  Opposition to Motion for Class Certification ("Fry Opp. Decl."), ¶ 36).) However, Plaintiffs

2  have excluded Travel Share members from the putative class. Thus, if a WorldMark member

3  chooses to join Travel Share, that member will exclude themself from the class, resolving any

4  possible conflict.

5  Wyndham also argues that Plaintiffs' interests are antagonistic to those class members

6  who desire out-of-network benefits. Wyndham argues that it must pay for the out-of-network

7  and that it funds them with "FAX credits." (*See* Fry Opp. Decl., ¶ 20 ("FAX credits are

8  vacation credits WorldMark members have given to [Wyndham] in order to purchase out-of-

9  network benefits, which [Wyndham] pays for.").) Wyndham argues that because Fun Time

10  reservations are made possible by FAX credits, "if Fun Time is enjoined and [Wyndham] is

11  impeded in monetizing FAX credits, out-of-network benefits ... could be curtailed." (Opp. Br.

12  at 7:13-15.) However, as Plaintiffs note, Wyndham offered out-of-network benefits before it

13  instituted the TravelShare program, and the Court is not persuaded that Wyndham has

14  demonstrated these out-of-network benefits *would* be curtailed if Wyndham no longer offered

15  Fun Time.

16  Wyndham heavily relies on *Grimes v. Fairfield Resorts, Inc.*, 2007 WL 245128 (11th

17  Cir. Jan. 30, 2007). In that case, the proposed class was defined broadly to include all members

18  of the time share program at issue. Thus, the court concluded that "a significant number of

19  class members enjoy the very programs about which Plaintiffs complain," and that "the same

20  practices Plaintiffs allege devalue putative class members' ownership interests seem to be

21  viewed as beneficial by a large segment of the class." *Grimes*, 2007 WL 245128 at \*2-\*3. In

22  contrast to the plaintiffs in *Grimes*, Plaintiffs here exclude WorldMark members who joined the

23  Travel Share program. Accordingly, the Court finds *Grimes* distinguishable on its facts.

24  Wyndham also contends that Plaintiffs' efforts to require it to strictly conform with

25  relative-use-value principles would hamper its ability to develop new resorts, thereby creating a

26  conflict with those class members who prefer the continued addition of new resorts. However,

27  the evidence submitted by Wyndham suggests that a large number of WorldMark members

28  would prefer to see most new resorts "priced" at standard values. As such, the Court finds that

7

1   no fundamental conflict exists relating to the relative-use-value issue and, again finds the

2   *Grimes* case does not compel a different conclusion.

3           Wyndham also argues that Plaintiffs' claims regarding the diminution in value of their

4   Vacation Credits create a conflict between those members who want to purchase credits and

5   those who want to sell their credits. According to Wyndham very few putative class members

6   actually seek to sell Vacation Credits. Thus, if the value of Vacation Credits actually is

7   diminished, that dimunition in value benefits those members who wish to purchase Vacation

8   Credits. (*See* Herrick Opp. Decl., ¶ 73; Docket No. 273 (Declaration of William Loeffler in

9   Opposition to Motion for Class Certification, Ex. 1 (Expert Report of Dr. Michael C. Keeley

10  ("Keeley Rep."), ¶¶ 64, 144-149)).) This purported conflict relates to Plaintiffs' theory of

11  damages, which Plaintiffs propose to measure by the resale value of Vacation Credits.

12  "[C]ourts have generally declined to consider conflicts, particularly as they regard damages,

13  sufficient to defeat class action status at the outset unless the conflict is apparent, imminent, and

14  on an issue at the very heart of the suit." *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975).

15  At this stage, the Court cannot say there is an apparent and imminent conflict between Plaintiffs

16  and the putative class regarding resale value of Vacation Credits.

17                **b.      Plaintiffs have not abdicated their duties as class representatives.**

18          Wyndham also contends that Plaintiffs are not sufficiently knowledgeable about this

19  litigation and have abdicated their duties as class representatives. In order to satisfy the

20  adequacy requirement, "the class representative must possess at least a minimal degree of

21  knowledge regarding the class action." *Stuart v. Radioshack Corp.*, 2009 U.S. Dist. LEXIS

22  12337 at \*26 (N.D. Cal. Feb. 5, 2009) (citations and internal quotations omitted). In the *Stuart*

23  case, the court noted that the plaintiff's "lack of familiarity with the specific policies at issue is

24  of concern." *Id.* at \*30. However, it still found him to be an adequate representative because

25  "[u]nder the case law, the key seems to be whether the proposed class representative

26  demonstrates such a lack of knowledge or understanding about the case," *i.e.* an "'alarming

27  unfamiliarty,' ... that there appears to be simply blind reliance on class counsel." *Id.* at \*31-

28  \*32.     As in the *Stuart* case, it is evident from the record that the named Plaintiffs understand

8

**United States District Court**

For the Northern District of California

1  the "gist of this suit," namely their claim that Wyndham has taken actions they believe violate

2  the Governing Documents. Even if Plaintiffs do not understand the details of the manner in

3  which Travel Share, Fun Time, and FAX Credits operate, the Court cannot conclude that, as to

4  the class claims, the Plaintiffs have exhibited a "blinding reliance" on counsel. *See Stuart*, 2009

5  U.S. Dist. LEXIS at \*31-\*35. The Court finds that Plaintiffs have met their burden to show

6  they are adequate class representatives.

7  **B.      Rule 23(b) Requirements.**

8        **1.      Rule 23(b)(2).**

9        Rule 23(b)(2) provides for class treatment where "the party opposing the class has acted

10  or refused to act on grounds that apply generally to the class, so that final injunctive relief or

11  corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P.

12  23(b)(2). When a plaintiff seeks both monetary damages and injunctive relief, in order to

13  certify a class under Rule 23(b)(2), "the claim for monetary damages must be secondary to the

14  primary claim for injunctive or declaratory relief." *Molski v. Gleich*, 318 F.3d 937, 947 (9th

15  Cir. 2003).

16        In order to make that determination, a court should consider the individual

17  circumstances of the case and the plaintiff's intent in bringing suit. *Molski*, 318 F.3d at 950; *cf.

18  Robinson v. Metro-North Commuter Railroad Co.*, 267 F.3d 147, 164 (2d Cir. 2001) ("Although

19  the assessment of whether injunctive or declaratory relief predominates will require an ad hoc

20  balancing that will vary from case to case, ... a district court should, at a minimum, satisfy itself

21  of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs

22  would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive

23  or declaratory relief sought would be both reasonably necessary and appropriate were the

24  plaintiffs to succeed on the merits.") (cited with approval in *Molski*, 318 F.3d at 950 n.15).

25        The record demonstrates Plaintiffs' sincere belief that Wyndham's decision to

26  implement the TravelShare program and the other actions about which they complain violate

27  the Governing Documents. However, for three of the five class claims, Plaintiffs seek

28  compensatory damages and restitution on the theory that these actions have diminished the

9

value of their Vacation Credits.  (TAC ¶¶ 141, 145, 149.)  Further, in order to prevail on either

the breach of contract claim or the breach of the implied covenant claim, Plaintiffs must

establish that Wyndham's actions were contrary to the express terms of the Governing

Documents or that they deprived Plaintiffs of the benefit of their bargain with Wyndham.

Therefore, although Plaintiffs do bring a stand-alone claim for declaratory relief, that claim

focuses on the actions Plaintiffs allege are in breach of the Governing Documents, and the

declaratory judgment claim is largely, if not entirely, duplicative of Plaintiffs' first two claims

for relief.  (*See* TAC ¶¶ 158, 160.)

Accordingly, in light of the facts and circumstances of this case, the Court concludes

that certification under Rule 23(b)(2) is not appropriate.

### 2.    Rule 23(b)(3)

In order to certify a class under Rule 23(b)(3), a plaintiff must establish that "common

questions ... 'predominate over any questions affecting only individual members,'" and also

must establish that class resolution is "'superior to other available methods for the fair and

efficient adjudication of the controversy.'"  *Hanlon*, 150 F.3d at 1022 (quoting Fed. R. Civ. P.

23(b)(3)).  Wyndham contends that Plaintiffs cannot satisfy the predominance requirement

because issues of causation and damages raise individual issues.

#### a.    Predominance.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes
are sufficiently cohesive to warrant adjudication by representation."  This
inquiry is more searching than the Rule 23(a)(2) "commonality inquiry."
... However, the determination rests not on whether individualized
damages determinations will be necessary but on "legal or factual
questions that qualify each class member's case as a genuine controversy."

*Thomas v. Baca*, 231 F.R.D. 397, 402 (C.D. Cal. 2005) (quoting *Amchem Products, Inc. v.*

*Windsor*, 521 U.S. 591, 623 (1997)).  In order to determine whether common issues

predominate, the Court neither decides the merits of the parties' claims or defenses nor does it

decide "whether the plaintiffs are likely to prevail on their claims.  Rather, the Court must

determine whether plaintiffs have shown that there are plausible classwide methods of proof

10

1  available to prove their claims." *Negrete v. Allianz Life Ins. Co.*, 238 F.R.D. 482, 489 (C.D.

2  Cal. 2006).

3         Plaintiffs' theorize that Wyndham has taken a number of actions in violation of the

4  Governing Documents that, whether considered individually or collectively, proximately caused

5  each putative class member harm by diminishing the overall value of their Vacation Credits.

6  That is, under Plaintiffs' theory, the putative class members' Vacation Credits are worth less

7  than they were before Wyndham engaged in the alleged misconduct.  According to Plaintiffs'

8  expert this diminution in value can be calculated on a class-wide basis by looking to the resale

9  market for WorldMark vacation credits and by measuring "the difference in value of

10  WorldMark credits before the effect of defendants' alleged misconduct ... and the value once

11  the misconduct ends." (*See* Pritzker Cert. Decl., Ex. 6 (Expert Report of Dr. Russell L. Lamb

12  ("Lamb Report"), ¶ 47); *see also* Lamb Report ¶¶ 48-56.)

13         Wyndham argues that it is not possible to determine whether each of the actions about

14  which Plaintiffs complain actually caused harm to a given class member.  By way of example,

15  Wyndham contends that class members have varying preferences for resorts and may not have

16  been denied a reservation using Bonus Time because of Fun Time.  However, Wyndham's

17  arguments do not address Plaintiffs' theory of the case; whether Plaintiffs will be able to prove

18  that theory is not relevant at this juncture. *Negrete*, 238 F.R.D. at 489.

19         The Court also has considered Wyndham's criticisms of Dr. Lamb's proposed methods

20  for determining damages on a class-wide basis.  If, as this litigation progresses, evidence

21  develops that undermines Plaintiffs' theory of the case, Wyndham may move for decertification.

22  The Court, however, concludes that Dr. Lamb has presented a plausible class-wide method of

23  proof.  Thus, Plaintiffs have met their burden to show common questions predominate.

24             **b.**      **Superiority.**

25         A plaintiff can satisfy the superiority requirement when he or she can show that "class-

26  wide litigation of common issues will reduce litigation costs and promote greater efficiency."

27  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  In order to make this

28  determination, the Court should consider the following factors: "the interest of members of the

1   class in individually controlling the prosecution or defense of separate actions; the extent and

2   nature of any litigation concerning the controversy already commenced by or against members

3   of the class; the desirability or undesirability of concentrating the litigation of the claims in the

4   particular forum; the difficulties likely to be encountered in the management of a class action."

5   Fed. R. Civ. P. 23(b)(3)(A)-(D).  Wyndham has not addressed any of these factors.

6           There is no other pending litigation that relates to the issues raised herein.  Thus, the

7   first two factors weigh in favor of certification.  In addition, there is nothing in the record to

8   suggest that concentrating the litigation in this forum would be undesirable or that a class action

9   would be unmanageable.  The Court concludes that Plaintiffs have met their burden to show

10  that a class action would be a superior method for resolving the litigation.

11          Plaintiffs have met their burden to show that the requirements of Rule 23(a) and Rule

12  23(b)(3) are satisfied but have not met their burden to show the requirements of Rule 23(b)(2)

13  are satisfied.  Accordingly, Plaintiffs' motion for class certification is GRANTED IN PART

14  AND DENIED IN PART.

15                                  **Motion to Amend.**

16          Plaintiffs seek leave to amend the complaint solely for purposes of conforming the class

17  definition to the definition set forth in their motion for class certification.  Federal Rule of Civil

18  Procedure 15(a) allows a plaintiff to amend his or her complaint, after a responsive pleading has

19  been served, by leave of court or by consent of the adverse party.  Rule 15(a) provides that

20  leave to amend "shall be freely given."  *See* Fed. R. Civ. Proc. 15(a).  The Ninth Circuit has

21  stated that "[r]ule 15's policy of favoring amendments to pleadings should be applied with

22  'extreme liberality.'"  *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).  Wyndham

23  opposes Plaintiffs' motion to amend solely on the bases raised in its opposition to the motion

24  for class certification.  Because the Court has granted, in part, Plaintiffs' motion for class

25  certification, it also GRANTS Plaintiffs' motion to amend.

26               **Director Defendants' Motion to Dismiss Derivative Claims**

27          Plaintiffs' breach of fiduciary duty and declaratory relief claims are brought derivatively

28  on behalf of WorldMark.  Pursuant to Federal Rule of Civil Procedure 23.1(a), a "derivative

1  action may not be maintained if it appears that the plaintiff does not fairly and adequately

2  represent the interests of shareholders or members who are similarly situated in enforcing the

3  right of the corporation or association." In the Ninth Circuit, a plaintiff is an adequate

4  representative if he or she has "the capacity to vigorously and conscientiously prosecute a

5  derivative suit and be free from economic interests that are antagonistic to the interests of the

6  class." *Larson v. Dumke*, 900 F.2d 1363, 1367 (9th Cir. 1990).

7      In order to make this determination, the Court considers the following "intertwined and

8  interrelated" factors:

9          (1) indications that the plaintiff is not the true party in interest; (2) the
           plaintiff's unfamiliarity with the litigation and unwillingness to learn about
10         the suit; (3) the degree of control exercised by the attorneys over the
           litigation; (4) the degree of support received by the plaintiff from other
11         shareholders; ... (5) the lack of any personal commitment to the action on
           the part of the representative plaintiff; (6) the remedy sought by the
12         plaintiff in the derivative action; (7) the relative magnitude of plaintiff's
           personal interests as compared to his interest in the derivative action itself;
13         and (8) plaintiff's vindictiveness toward the defendants.

14  *Id.* (citations and internal quotations omitted). The Director Defendants bear the burden of

15  proof to show that Plaintiffs are not adequate representatives under Rule 23.1. *See, e.g.,*

16  *Quantum Tech. Partners II, L.P. v. Altman Browning & Co.*, 2009 WL 1795574 at \*7-\*8 (D.

17  Or. June 23, 2009).

18      As part of their breach of fiduciary duty claim, Plaintiffs contend that the Director

19  Defendants have taken actions to manipulate elections of the Board of Directors. (*See* TAC ¶¶

20  60-67.) Plaintiffs express generally that they believe it is a conflict of interest for Wyndham

21  employees to sit on WorldMark's Board. However, their deposition testimony demonstrates

22  that, prior to filing suit, Plaintiffs had no personal knowledge of the facts supporting the

23  election-related allegations. Their deposition testimony also shows that they had not

24  participated in the election process either by voting or by seeking to become a member of the

25  Board. (*See, e.g.,* Docket No. 255 (Declaration of Matthew Ball in Support of Director

26  Defendants' Motion to Dismiss, Ex. A (Deposition of Clark Wixon at 46:19-51:14, 56:9-57:14,

27  217:21-25, 226:16-21), Ex. B (Deposition of Rebecca Wixon at 134:13-135:6, 140:9-141:3,

28  142:1-6, 232:8-233:18), Ex. C (Deposition of Norman Wixon at 55:19-58:25, 244:16-245:7,

13

247:17-20); Ex. D (Deposition of Barbara Wixon at 23:17-24:20, 63:11-64:3).) Considering this testimony and the *Larson* factors, to the extent Plaintiffs have premised their breach of fiduciary duty and declaratory relief claims on facts relating to the election process, the Court finds that the Director Defendants have met their burden to show that Plaintiffs are not adequate representatives to pursue those claims. The Director Defendants' motion is granted in part on this basis.

However, with respect to the remainder of the claims, for the reasons set forth above with regard to the class claims and considering the *Larson* factors, the Court finds the purported conflicts raised by the Director Defendants do not undermine Plaintiffs' ability to serve as adequate representatives for the derivative action. Although the Director Defendants are concerned that Plaintiffs seek a remedy that is antagonistic to WorldMark's interests, because they purportedly seek to eliminate Travel Share and to prevent future resort development, Plaintiffs expressly state that they do not seek those remedies. The Court also concurs with Plaintiffs that it would be speculative to assume that the logical effect of a finding of liability on the breach of fiduciary duty or declaration relief claims would be a requirement that the Travel Share program be eliminated or that WorldMark be required to take action that would preclude future resort development. If Plaintiffs establish that the Director Defendants are liable, and if an actual conflict arises at a later time, the Court can revisit this issue. *See, e.g., In re RasterOps Sec. Litig.*, 1993 WL 476651 at \*8 (N.D. Cal. Sept. 10, 1993) (citing *Bertozzi v. King Louie Intern., Inc.*, 420 F. Supp. 1166, 1180 (D.R.I. 1976)). The Director Defendants' motion to dismiss is denied in part on this basis.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for class certification is GRANTED IN PART AND DENIED IN PART, Plaintiffs' motion to amend is GRANTED, and the Director Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART.

It is FURTHER ORDERED that Plaintiffs shall file their Fourth Amended Complaint by no later than October 26, 2009.

14

1    It is FURTHER ORDERED the Court HEREBY CERTIFIES the following class

2 pursuant to Federal Rule of Civil Procedure 23(b)(3): All Current WorldMark, The Club

3 members who purchased WorldMark Premier Vacation Credits before November 5, 2006 and

4 who (A) reside in the State of California or who purchased Vacation Credits in California; and

5 (B) did not enroll in the TravelShare program at any time. Excluded from the Class are

6 Defendants, any entity in which any Defendant has or had a controlling interest, any officers or

7 directors of Wyndham, the legal representatives, heirs, successors, and assigns of Defendants,

8 and any judge assigned to this action and his or her immediate family.

9    It is FURTHER ORDERED that the parties shall meet and confer and submit a report to

10 the Court by no later than November 6, 2009, regarding the method by which they intend to

11 provide notice to the Class and the proposed form of notice.

12    **IT IS SO ORDERED.**

13

14 Dated: October 19, 2009

15    JEFFREY S. WHITE
     UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28