United States District Court
For the Northern District of California

**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARKE AND REBECCA WIXON, et al., | No. C 07-02361 JSW |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION FOR COURT APPROVAL OF SETTLEMENT OF DERIVATIVE CLAIMS** |
| v. | |
| WYNDHAM RESORT DEVELOPMENT CORP. (f/k/a TRENDWEST RESORTS, INC.), et al., | |
| Defendants. | |

Now before the Court for consideration is the Motion for Approval of Settlement of Derivative Claims filed by Plaintiffs Clarke Wixon, Rebecca Wixon, Norman Wixon, Barbara Wixon, and Kandace Scattolon ("Plaintiffs"). The Court has considered the parties' papers, relevant legal authority, written responses to the proposed settlement that the Court received from members of nominal defendant WorldMark, The Club ("WorldMark"), the parties' oral argument, as well as the statement made by Mareile-Angy Ogle who appeared in person at the final approval hearing to express her support for the Plaintiffs. For the reasons set forth in the remainder of this Order, the Court HEREBY GRANTS Plaintiffs' motion and APPROVES the Settlement Agreement and Release.

**BACKGROUND**

This case arises out of Plaintiffs' purchase of timeshare interests in WorldMark, a non-profit mutual benefit corporation that owns and operates resorts for its members. Unlike

participants in a traditional timeshare, WorldMark members purchase "Vacation Credits."[1] Defendant Wyndham Resort Development Corporation ("Wyndham") builds and manages WorldMark's resorts and it sells the Vacation Credits that enable persons to become members of WorldMark. Defendants Gene Hensley, David Herrick, John Henley, Peggy Fry and John McConnell are members or former members of WorldMark's Board of Directors ("WorldMark Board").

The Director Defendants are or were affiliated with Wyndham and the claims in this lawsuit arise, in part, based on Plaintiffs' allegations that Wyndham took control of WorldMark's Board. Plaintiffs asserted that the Director Defendants violated their fiduciary duties to WorldMark and its members, because they failed to prevent Wyndham from taking actions that violate the key principles of membership in WorldMark. Plaintiffs also contend that the Director Defendants have taken actions to manipulate the election process to ensure that they, and Wyndham, are able to control WorldMark for their own benefit and to stifle communication and dissent. (Docket No. 455 (Fifth Amended Complaint ¶¶ 61-68, 83-119.)[2]

After several rounds of motion practice relating to the pleadings, the parties engaged in discovery, which the parties also litigated vigorously. (Docket No. 504 (Declaration of Jonathan K. Levine ("Levine Decl."), ¶¶ 12-18, 21-23).) In addition, the Director Defendants challenged Plaintiffs' adequacy to pursue the derivative claims. The Court granted, in part, the Director Defendants' motion but allowed Plaintiffs to amend their complaint to include Ms. Scattalon as a plaintiff to cure the sole deficiency regarding Plaintiffs' adequacy that was identified by the Court. The Court denied the Director Defendants' motion in all other respects. (*See* Docket Nos. 420, 454.)

In November 2009, Plaintiffs, the Director Defendants, the Director Defendants' insurer and Wyndham participated in a mediation session before the Honorable William J. Cahill at

---

[1] Any person who owns at least 5,000 WorldMark Vacation Credits is a WorldMark member.

[2] Plaintiffs also brought a class action against Wyndham. It is the Court's understanding that the parties have resolved those claims and that the parties will file a separate motion for preliminary approval of that settlement. This Order is limited specifically to the derivative claims.

JAMS, in San Francisco. (Levine Decl., ¶ 33.) Although that mediation was not successful, counsel continued to negotiate, which Plaintiffs' counsel attests consisted of "arms-length and hard fought discussions, spanning more than seven months and including numerous meetings, conference calls, and exchanges of proposed settlement terms." (*Id.*) On June 9, 2010, the Plaintiffs and the Director Defendants advised the Court that they had reached a settlement of the derivative claims and requested that all pending deadlines be vacated. (Docket No. 492.)

The Settlement Agreement provides: (1) that a current Director will resign and a new Director who is not affiliated with Wyndham will be appointed to the WorldMark Board; (2) for changes to disclosure requirements for WorldMark Board candidates; (3) for changes in the manner in which member proxies are assigned and tabulated; (4) that WorldMark will post a statement regarding its retention and use of outside counsel on its website; (5) that the Management Agreement between WorldMark and Wyndham will be reviewed periodically by a new subcommittee and will be reconsidered and renegotiated if the subcommittee deems it necessary; (6) that the WorldMark Board will include in its minutes when Wyndham has discussed potential future resort development; (7) for the creation of a website during that will operate during election cycles; (8) for maintaining the confidentiality of voting records; (9) for the dismissal of Plaintiffs' claims in intervention in *WorldMark The Club v. Robin Miller, et al.*, Case No. 24-2008-00025130-CU-PT-GDS, pending in the Superior Court of California for Sacramento County (the "State Case"); and (10) for a $1.8 million payment to compensate Plaintiffs' counsel for litigation expenses and costs in this action and in the State Case. (Levine Decl., ¶¶ 35-53; Docket No. 498 (Joint Application for Entry of Order, Ex. A ("Settlement Agreement"); Docket No. 652 (Revised Settlement Agreement).)[3]

//
//
//
//

---

[3] On September 9, 2010, the Court granted a request to correct non-substantive errors in the Settlement Agreement.

3

# ANALYSIS

**A.  Applicable Legal Standard.**

Federal Rule of Civil Procedure 23.1(e) requires court approval prior to the settlement, voluntary dismissal, or compromise of a derivative action and also requires that notice be provided to members or shareholders in a manner directed by the Court.  Within the Ninth Circuit, a court must determine whether the proposed settlement is "fair, reasonable and adequate."  *See In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995).  The decision to approve or reject the proposed settlement is a matter committed to the Court's discretion.  *See Officers v. Justice v. Civil Serv. Comm'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1992).  This Court's "intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Id.*

**B.  The Court Approves the Settlement Agreement.**

In order to determine whether the proposed settlement should be approved, the Court may weigh a number of factors, including: "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the ... members to the proposed settlement."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also In re Apple Computer, Inc. Deriv. Litig.*, 2008 U.S. Dist. LEXIS 108195 at *7-*8 (N.D. Cal. Nov. 5, 2008) (applying *Hanlon* factors to settlement of derivative claims).[4]

//

---

[4]  The Court rejected the Director Defendants' challenges to Plaintiffs' adequacy as representatives after the parties had engaged in discovery on that issue.  As such, that factors weighs in favor of approving the proposed settlement.  The governmental participant factor is not an issue in this case.

4

**1.     Notice.**

On July 2, 2010, the Court approved the parties' proposed form of notice and directed that notice be provided to WorldMark members by U.S. mail, bulk rate postage. The Court also ordered that the Notice of Settlement be posted on WorldMark's website and on Plaintiffs' counsels' website. The parties attest that notice was disseminated as directed by the Court. (Docket No. 638 (Declaration of Judith H. Ramseyer, ¶¶ 2-5); Docket No. 642 (Reply Declaration of Jonathan K. Levine ("Levine Reply Decl."), ¶¶ 1-4).) The Court finds that the form and manner of the notice is the best notice practicable under the circumstances and has been given in full compliance with Rule 23.1 and due process.

**2.     The amount of settlement, results achieved, the strength of Plaintiffs' case and the risk of further litigation.**

As set forth above, the proposed settlement does not include a monetary component, except for purposes of compensating Plaintiffs' counsel for fees and expenses.[5] It does, however, provide for changes to the composition of the WorldMark Board, which are designed to improve and strengthen its independence. In addition, the proposed settlement calls for changes that will facilitate communication among members during election cycles and that will create greater transparency regarding Board candidates affiliations with Wyndham. "'Courts have recognized that corporate governance reforms ... provide valuable benefits'" to corporations and their shareholders. *In re Nvidia Corp. Deriv. Litig.*, 2009 U.S. Dist. LEXIS 24973 at *11 (N.D. Cal. Mar. 18, 2009) (quoting *Cohn v. Nelson*, 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005)).

The Director Defendants have mounted a vigorous defense to Plaintiffs' claims at every step of this litigation, and the fact that they did not convince the Court to dismiss this case at the pleadings phase does not mean that they could not have prevailed on summary judgment or at trial. The proposed settlement provides for immediate changes and relief, and it "eliminates

---

[5] The Court addresses that portion of the Settlement Agreement in Section C of this Order.

5

1  these and other risks of continued litigation, including the very real risk of no recovery after
2  several years of litigation." *Id.* at *17 (citing *Officers for Justice*, 688 F.2d at 625).

### 3. The extent of discovery completed, the stage of the proceedings, and the experience and views of counsel.

This settlement does not come early in this litigation. Rather, the parties completed fact discovery and exchanged expert reports on the issues of liability, damages, and the Director Defendants' "business judgment rule" defense. As such, the parties reached the proposed settlement at time when they had a full and fair understanding of their cases and their opponents' case. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (factor weighed in favor of approving settlement where parties had conducted extensive discovery and had gone through a round of summary judgment motions); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (factor weighed in favor of approving settlement where plaintiffs had conducted significant discovery and consulted with damages and accounting experts). Furthermore, Plaintiffs' counsel have extensive experience in prosecuting complex consumer and securities litigation, and the Court may consider their view that the settlement is "an excellent result for WorldMark its ... member owners." (Levine Decl., ¶ 2.) *See In re Mego Fin. Corp.*, 213 F.3d at 459; *In re Nvidia Deriv. Litigation*, 2009 U.S. Dist. LEXIS at *17-18.

These factors weigh in favor of approving the Settlement Agreement.

### 4. The reaction of WorldMark members to the proposed settlement.

According to the record, in addition to the website postings, notice was mailed to 244,101 active WorldMark members. Pursuant to that Notice, the Court set August 27, 2010 as the deadline to receive comments on the proposed settlement.[6] The Court has received 11 comments that it construes to support the proposed settlement[7]; 14 comments that it construes to

---

[6] The Court received several comments after this deadline. The parties do not object on the basis that these comments are untimely, and the Court shall consider them.

[7] *See* Docket Nos. 506, 517, 519, 521, 523, 562, 581, 608, 627, 629 and 630. In addition to these responses, on September 3, 2010, Matthew Shiner submitted a declaration expressing his support of the proposed settlement, individually and as President of the Board of Directors of WM Owners, Inc., a separate and independent organization founded by WorldMark owners. (Declaration of Matthew Shiner ("Shiner Decl"), ¶¶ 1-9.)

6

1  be neutral[8]; and 108 comments that it construes as objections.[9] Of the objections, the majority
2  are in the form of a form letter that had been posted on WM Owners, Inc.'s website. (Shiner
3  Decl., ¶¶ 3, 6.) The Court has considered all of the objections submitted and although it has not
4  addressed each individual objection in this Order, the Court shall address the general nature of
5  the objections that WorldMark members raised.[10]

### a. Appointment of non-affiliated director.

Many WorldMark members argue that this term of the Settlement Agreement does not go far enough and urge that there should be a greater number of unaffiliated directors appointed to the Board. (*See* Levine Reply Decl., ¶ 19.) However, such changes would require amendments to the Governing Documents, which cannot be accomplished without an owner vote under WorldMark's By-Laws. There is nothing in the Settlement Agreement that would preclude such a vote. As such, all objections to this effect are overruled.

Many of the WorldMark members who objected also took issue with the manner in which the new director would be appointed. (*Id.*) These objections also are overruled on the basis that the procedures proposed would require amendment to the By-Laws. Again, nothing in the Settlement Agreement precludes WorldMark members from attempting to make these changes in the future.

The Court has also considered the remaining objections as detailed more specifically in the Levine Reply Declaration at paragraph 19. These objections do not alter the Court's view that the proposed Settlement Agreement is fair, reasonable and adequate. Accordingly, they are overruled.

//

---

[8] *See* Docket Nos. 512, 514, 518, 522, 524, 555, 598, 600, 605, 607, 611, 628, 648, 649.

[9] *See* Docket Nos. 507-511, 513, 515-516, 520, 525-534, 536-554, 556-561, 563-580, 582, 584-597, 599, 601-604, 606, 609-610, 612, 614-622, 624, 626, 631-634, 635-637, 644-646, and 650. Documents 583 and 623 are not included as they are duplicates of 582 and 615, respectively. The Court also has excluded Documents 535 and 613, which have been withdrawn. (*See* Shiner Decl., ¶ 1.)

[10] The Court shall address objections to the settlement payment in Section C.

7

### b. Disclosures concerning Board candidates.

Many WorldMark members object to this term of the Settlement Agreement on the basis that it does not adequately clarify whether a candidate is or is not affiliated with Wyndham, and they argue that an settlement should provide that all candidates be identified as affiliated or non-affiliated on the ballot. (Levine Decl., ¶ 20.) The Settlement Agreement contains terms that will provide WorldMark members with information about which candidates may be affiliated with Wyndham or have other potential conflicts of interest, such that WorldMark members will be able to make educated votes. These objections are overruled.

### c. Proxy-related practices.

The Settlement Agreement will eliminate the current procedures by which the WorldMark Board automatically assigns a proxy to the Board if no other owner is designated as a proxy on the ballot. In addition, the Settlement Agreement provides that proxies that do not exercise a vote or do not identify an owner's valid proxy will not be counted. The WorldMark members who object to these provisions of the Settlement Agreement argue that: WorldMark Board members should be required to vote their proxies in proportion to the percentage of the non-developer vote; Wyndham should be excluded from voting in WorldMark Board elections; and that the WorldMark Board has too many ballots so that the owners will always be outnumbered. (Levine Reply Decl. ¶ 21.)

The Court overrules the first two objections on the basis that such changes would require amendments to the Governing Documents. As previously noted, there is nothing in the Settlement Agreement that would preclude WorldMark owners from seeking to make these changes in the future. The third objection does not alter the Court's conclusion that the Settlement Agreement is fair, reasonable, and adequate, and the Court also overrules that objection.

### d. Review of the Management Agreement.

The WorldMark members who object to this term of the Settlement Agreement generally argue that the Management Agreement should be subject to competitive bidding. (Levine Decl. ¶ 22.) These objections are overruled on the basis that they would require

changes to the By-Laws that could only be achieved by a membership vote or that would require changes to the Management Agreement that would require Wyndham's approval.

### e. Election website.

The WorldMark members who object to this portion of the Settlement Agreement generally argue that WorldMark should make its membership register available to all owners who have a legitimate request for the register solely for a copying fee, and that the Election Website should be maintained on a year round basis. (Levine Decl. ¶ 23.) With respect to the former objection, the provision for the Election Website has been implemented to provide for additional modes of communication during the election cycle. Further, it appears that this objection would require a change to the By-Laws, which would require a membership vote. As such, Court finds that these objections are without merit and do not alter its conclusion that the settlement is fair reasonable and adequate. They are therefore overruled.

### f. Dismissal of Plaintiffs' state law claims.

The Settlement Agreement calls for the Plaintiffs to dismiss their claims in intervention in the State Case, which relates to Mr. Miller's demand for access to the membership register. On August 23, 2010, the Court of Appeal for the State of California affirmed the state trial court's decision denying WorldMark's application for a protective order and ordering WorldMark to make the membership register – including email addresses – available to Miller. (*See* Levine Reply Decl., Ex. B.) WorldMark members have objected to any dismissal of the State Case unless the Membership Register is made available to all members in accordance with the Governing Documents and solely for a copying fee. For the reasons set forth above, these objections are overruled.

### g. Release.

The WorldMark members who object to this provision of the Settlement Agreement generally argue that the release is too broad. (*See* Levine Decl. ¶ 25.) The Court finds these objections to be without merit and they are overruled. The Director Defendants, Plaintiffs and WorldMark members shall be deemed to have, and by operation of this Order and the separate

1  judgment that shall be issued shall have, released claims and causes of action as set forth in the
2  Settlement Agreement.

3  **C.     The Court Approves the Settlement Payment.**

4  The Settlement Agreement also provides that the Director Defendants' insurer will pay
5  Plaintiffs' counsel $1.8 million as compensation for fees and costs incurred prosecuting the
6  Derivative Claims and the State Case.[11]  Plaintiffs attest that they have actually incurred
7  $1,317,133 in legal fees and $220,685 in expenses prosecuting those two proceedings.  (Levine
8  Decl., ¶¶ 54-58.)  The WorldMark members who have objected to this provision of the
9  Settlement Agreement argue that the relief to WorldMark is grossly inadequate and WorldMark
10 will not be receiving any funds to offset the cost of implementing the Settlement Agreement,
11 that the lawyers are the only persons to directly benefit, and that Wyndham – rather than
12 WorldMark or WorldMark members – should bear the costs of the Settlement Agreement.
13 (Levine Reply Decl. ¶ 26.)

14 The Court finds the objections to be without merit and they are overruled.  The Court
15 already has concluded that the Settlement Agreement is fair, reasonable, and adequate and
16 affords immediate relief to WorldMark and its members in the form of changes that are
17 designed to increase and enhance the independence of WorldMark's Board and to facilitate
18 communication among WorldMark members during elections.  This Court is also aware of the
19 amount of time and energy the parties spent litigating this case, which was pending for over two
20 years before the parties settled this aspect to the case.  The parties did not reach an agreement
21 on fees until after the substantive terms had been negotiated and did so only with the assistance
22 of a neutral third party.  (Levine Decl., ¶¶ 55-56.)  Finally, the Court finds the fee award to be
23 reasonable in light of the time expended by counsel and the benefits to be conferred upon
24 WorldMark and its members.  Accordingly, the Court also approves that aspect of the
25 Settlement Agreement.

---

[11]     The Settlement Agreement notes that this payment was subject to a reservation of rights.  At the hearing, the parties advised the Court that the reservation of rights had been withdrawn and, thus, there were no contingencies attached to the settlement payment.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS the motion for final approval of the Settlement Agreement. The claims against the Director Defendants are HEREBY DISMISSED WITH PREJUDICE and without costs, except as provided for in the Settlement Agreement. Because the Court finds that there is no just reason for delay, the Court shall enter a separate judgment pursuant to Federal Rule of Civil Procedure 54(b).

**IT IS SO ORDERED.**

Dated: September 14, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE