1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jonathan K. Levine (State Bar No. 220289)
  jkl@girardgibbs.com
Elizabeth C. Pritzker (State Bar No. 146267)
  ecp@girardgibbs.com
Todd Espinosa (State Bar No. 209591)
  tie@girardgibbs.com
**GIRARD GIBBS LLP**
601 California Street
San Francisco, California  94108
Telephone:  (415) 981-4800
Facsimile:  (415) 981-4846

Class Counsel and
Attorneys for Plaintiffs Clarke and Rebecca Wixon,
Norman and Barbara Wixon, and Kandice Scattolon

[*Additional counsel appear on signature page*]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Clarke and Rebecca Wixon, Norman and Barbara Wixon, and Kandice Scattolon, on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>    v.<br><br>Wyndham Resort Development Corp. (f/k/a Trendwest Resorts, Inc.),<br><br>              Defendant. | Case No. C 07-02361 JSW (BZ)<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANT WYNDHAM RESORT DEVELOPMENT CORPORATION AND MEMORANDUM IN SUPPORT THEREOF**<br><br>CLASS ACTION<br><br>Date:      August 5, 2011<br>Time:      9:00 a.m.<br>Before:    Hon. Jeffrey S. White |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................................1

I. SUMMARY OF ARGUMENT ................................................................................................1

II. BACKGROUND .....................................................................................................................2

    A. The Litigation ..............................................................................................................2

    B. Settlement Negotiations ...............................................................................................3

    C. Preliminary Approval and Wyndham's Consultation with Regulators ......................4

    D. Terms of the Proposed Settlement ...............................................................................4

        1. Credit Cancellation and Reduction of Credit Values at Certain Resorts ...........5

        2. Extraction of Underutilized Units and Cancellation of Related Credits ............5

        3. Exchange of Certain Units in Anaheim to Provide More Availability at Lower Credit Values ......................................................................................................6

        4. Aggregate Changes in Credits and Units and Reserves .....................................6

        5. Cessation of Sales of TravelShare with Fun Time ............................................6

        6. Election Website ................................................................................................7

        7. Limitations of Party Weekends .........................................................................7

        8. Release of Claims ..............................................................................................7

        9. Dismissal of Pending Litigation; Required Action if Settlement is Voided ......7

        10. Plaintiffs' Counsel's Fee and Expense Application ..........................................8

III. ARGUMENT ..........................................................................................................................8

    A. Overview of the Class Action Settlement Process ......................................................8

    B. The Court Should Grant Final Approval of the Proposed Settlement ........................9

        1. The Strength of Plaintiffs' Case, Risk and Expense of Further Litigation and Risk of Maintaining Class Action Status ......................................................10

i

2.   The Relief Offered in Settlement ........................................................................12

3.   The Extent of Discovery Completed and Stage of the Proceedings and the
     Experience and Views of Counsel...................................................................13

4.   The Presence of Governmental Participants .................................................14

5.   The Reaction of the Class Members to the Proposed Settlement......................14

IV.   CONCLUSION................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Branick v. Downey Savings & Loan Assn.*
   39 Cal. 4th 235 (2006) ......................................................................................... 11

*Browning v. Yahoo! Inc.*
   2007 U.S. Dist. LEXIS 86266 (N.D. Cal. Nov. 16, 2007) .................................... 14

*Cagan v. Anchor Sav. Bank FSB*
   1990 U.S. Dist. LEXIS 11450 (E.D.N.Y. May 17, 1990) ..................................... 11

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998) ....................................................................... passim

*Hartless v. Clorox Co.*
   2011 U.S. Dist. LEXIS 5427 (S.D. Cal. Jan. 20, 2011) ........................................ 12

*In re Omnivision Technologies, Inc.*
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................ 13

*In re TD Ameritrade Accountholder Litig.*
   266 F.R.D. 418 (N.D. Cal. 2009) .......................................................................... 10

*Lane v. Facebook, Inc.*
   2010 U.S. Dist. LEXIS 24762 (N.D. Cal. Mar. 17, 2010) .............................. 12, 14

*Officers for Justice v. Civil Serv. Comm'n*
    688 F.2d 615 (9th Cir. 1982) ................................................................................. 9

*Perez v. Tilton*
   2006 U.S. Dist. LEXIS 63318 (N.D. Cal. Aug. 21, 2006) .................................... 10

*Protective Committee for Independent Stockholders of TMT Trailer Ferry Inc. v. Anderson*
    390 U.S. 414 (1968) .............................................................................................. 10

*Rodriguez v. West Publ'g Corp.*
   563 F.3d 948 (9th Cir. 2009) ...................................................................... 9, 12, 13

*Stahly v. Salomon Smith Barney, Inc.*
   319 Fed. Appx. 654 (9th Cir. 2009) ...................................................................... 11

iii

*Wall Street Network, Ltd. v. New York Times Co.*
  164 Cal. App. 4th 1171 (Cal. App. 2d Dist. 2008) ................................................................ 11

**Statutes**

28 U.S.C. § 1715 .................................................................................................................... 2

**Other Authorities**

Manual For Complex Litigation (4th Ed.) (2004)…………………………….………………..…8, 10

**Rules**

Fed. R. Civ. P. 23 ...........................................................................................................3, 8, 9, 13

1   TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD

2           PLEASE TAKE NOTICE that on **August 5, 2011, at 9:00 a.m.**, or as soon thereafter as

3   counsel may be heard, Plaintiffs Clarke and Rebecca Wixon, Norman and Barbara Wixon, and

4   Kandice Scattolon (collectively, "Plaintiffs") will move before the above-entitled Court for an order

5   granting final approval of the Settlement Agreement and Release ("Settlement") (Dkt. No. 661,

6   attached hereto as Exhibit 1) between Plaintiffs and Defendant Wyndham Resort Development

7   Corporation ("Wyndham") (Plaintiffs and Wyndham are referred to collectively as the "Parties").

8           As described in the Parties' Joint Application for Preliminary Approval of Class Action

9   Settlement (Dkt. No. 661), the proposed Settlement, a compromise of contested claims without

10  admission of liability by Wyndham, includes changes to the WorldMark, The Club ("WorldMark")

11  time-share plan that benefit WorldMark members by, *inter alia*: (i) reducing credit values at specified

12  WorldMark resorts; (ii) making additional lower-credit value resort units available in the Anaheim,

13  California area;   (iii) removing certain underutilized units from the WorldMark system; (iv)

14  eliminating the Fun Time element of Wyndham's TravelShare program in new TravelShare

15  memberships; (v) limiting Wyndham's ability to use WorldMark resorts for its own marketing

16  purposes; and (vi) cancelling up to 274.7 million credits that are now held by Wyndham as unsold

17  developer credits, so that these credits will no longer be available for sale to the public or used by

18  Wyndham in exercising a membership vote.

19          Wyndham has consulted with the WorldMark Board of Directors and relevant state and local

20  regulators, and the Parties have provided notice to the Class in accordance with the Court's directives.

21  By this motion, the Parties now respectfully ask the Court to grant final approval of the Settlement.

22  This motion is based on the memorandum of points and authorities below, the Declarations of

23  Jonathan K. Levine, David Herrick, Lance Blair and Plaintiffs in support of the Settlement, and such

24  additional evidence or argument as may be required by the Court.

25                       **MEMORANDUM OF POINTS AND AUTHORITIES**

26  **I.      SUMMARY OF ARGUMENT**

27          By this motion, Plaintiffs seek final resolution of class claims asserted against Wyndham under

28  the terms of the Settlement that the Court preliminarily approved on December 3, 2010.  (*See* Dkt. No.

668.)  The Settlement addresses all of the principal issues complained of in the litigation and provides substantial benefits to all members of WorldMark.

In this litigation, Plaintiffs alleged that the credit values at certain new WorldMark resorts were set too high by Wyndham and resulted in Wyndham obtaining excess Vacation Credits that, when sold, would create undue strain on the WorldMark system.  Wyndham has denied and expressly continues to deny any legal responsibility or liability to Plaintiffs, any WorldMark member, or WorldMark for any of the matters asserted in this action.  The Parties agree, however, that the Settlement is desirable to avoid the time, expense, and inherent uncertainty of protracted class litigation, trial, and possible appeal, and to resolve, finally and completely, all pending and potential claims Plaintiffs asserted or could have asserted in this action against Wyndham.

On December 3, 2010, the Court granted the Parties' application for preliminary approval of the Settlement.  In the following months, in accordance with the Court's directives, the Parties have provided notice of the Settlement to the Class and have provided notice to government officials required under the Class Action Fairness ("CAFA") Act, 28 U.S.C. § 1715(b).  Wyndham has further consulted with the WorldMark Board of Directors and with state timeshare regulators whose approval is required for implementation of the Settlement and believes it has a good faith basis for forecasting that, using commercially reasonable efforts, it will be able to obtain such approvals.

Therefore, for the reasons set forth herein and in the Parties' prior submissions regarding the Settlement, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

II.     **BACKGROUND**

      A.     **The Litigation**

The Court is already well-acquainted with the procedural history of this case, which was summarized in the parties' Joint Application for Preliminary Settlement Approval and in the Levine Declaration.  An abbreviated summary is provided below.

In April 2007, Plaintiffs commenced an action against Wyndham in California state court on behalf of certain members of WorldMark (*Wixon v. Wyndham Resort Development Corp.*, San Mateo Superior Court Case No. CIV461931).  Wyndham removed the action to this Court under the Class Action Fairness Act ("CAFA") in May 2007.  *See* Dkt. No. 1.

Plaintiffs alleged in the action against Wyndham, among other things, that it was violating the "Governing Documents" with respect to the pricing of certain new resorts, the operation and control of WorldMark's "first-come, first-served" reservation system, and the number of weeks of usage sold at each new resort.  The Governing Documents are the set of documents provided to WorldMark members when they join WorldMark, and they form a contract between Wyndham and WorldMark and its members.  Plaintiffs asserted claims against Wyndham for breach of contract, breach of the implied covenant of good faith and fair dealing, violations of the California Unfair Competition Law and Vacation Ownership Time-Share Act, and declaratory relief.

In October 2007, Plaintiffs amended their complaint to assert derivative claims against the Director Defendants (Gene Hensley, David Herrick, John Henley, Peggy Fry and John McConnell) as additional defendants in the action.  *See* Dkt. No. 40.  Plaintiffs alleged that the Director Defendants breached their fiduciary duties to WorldMark and its members by actively assisting Wyndham in the conduct giving rise to the alleged breaches asserted against Wyndham.

Wyndham and the Director Defendants aggressively defended the case, filing four separate motions to dismiss.  *See* Dkt. Nos. 46, 71, 123, 163.  Plaintiffs ultimately survived these pleading challenges.  When the pleading issues were resolved, the Parties devoted over five months to discovery related to Plaintiffs' class certification motion and the Director Defendants' adequacy motion under Rule 23.1 of the Federal Rules of Civil Procedure.  *See* Dkt. Nos. 195, 202, 225, 240 and 241.

On October 19, 2009, after extensive briefing, accompanied by expert reports, and oral argument, the Court granted Plaintiffs' motion for class certification and denied the Director Defendants' adequacy motion under Rule 23.1.  *See* Dkt. No. 420.

### B.      Settlement Negotiations

On November 11, 2009, the Parties attended a mediation session before the Hon. William J. Cahill (Ret'd) at JAMS in San Francisco, California.   The Parties continued their settlement negotiations over the next seven months, while the litigation continued.  Ultimately, on July 2, 2010, as a result of these vigorous negotiations, and several months after the close of fact and expert discovery, the Parties reached agreement in principle on the non-monetary claims asserted by Plaintiffs against Wyndham.  On July 7, 2010, the Parties notified the Court that a proposed Settlement had been

3

1  reached and requested that all further litigation be suspended pending approval of the Settlement.  *See*
2  Dkt. No. 501.

3        After reaching agreement on non-monetary settlement terms, the Parties separately negotiated a
4  monetary settlement amount to satisfy Class Counsel's claim for attorneys' fees, expenses and costs,
5  subject to Court approval.  The Parties actively negotiated the written terms of the Settlement from
6  July 2, 2010 to October 18, 2010.

7        **C.**    **Preliminary Approval and Wyndham's Consultation with Regulators**

8        Plaintiffs and Wyndham filed their joint application for preliminary approval of the Settlement
9  on October 21, 2010.  *See* Dkt. No. 661.  The Court granted preliminary approval on December 3,
10  2010. In the preliminary approval order, the Court: granted Plaintiffs' leave to file a Sixth Amended
11  Complaint for purposes of the Settlement; certified a Settlement Class comprised of all current
12  WorldMark members; directed the Parties to post a Summary Notice of the Settlement available to
13  Class members on the internet; directed the parties to provide notice as required under CAFA, and
14  directed the Parties to make a further report to the Court, especially with regard to Wyndham's
15  progress in obtaining necessary approvals from state timeshare regulators.  *See* Dkt. No. 668.

16        The Parties posted the Summary Notice, provided the notice required under CAFA and filed
17  reports with the Court regarding the progress of state regulatory approvals on March 3 and April 18,
18  2011.  Wyndham represented that it believes it has a good faith basis for forecasting that, using
19  commercially reasonable efforts, it will be able to obtain the necessary regulatory approvals.  *See* Dkt.
20  Nos. 673, 678, 679.

21        On April 19, 2011, the Court issued its order directing the Parties to disseminate Notice of
22  Class Action Settlement to the Class in the form approved by the Court, scheduling a final approval
23  hearing for August 8, 2011 and setting deadlines for the Parties' briefs and Class members' objections
24  to the Settlement.  *See* Dkt. No. 683.  The Parties caused the Notice of Class Action Settlement to be
25  disseminated to the Class on May 12, 2011, in accordance with the Court's order.  *See* Declaration of
26  Lance Blair Regarding Mailing of Class Notice, ¶ 4.

27        **D.**    **Terms of the Proposed Settlement**

28        The terms of the Settlement were summarized in the Parties' joint submission on preliminary

1   approval.  *See* Dkt. No. 661.  As the Settlement has not been altered, the terms of the Settlement are

2   summarized in a more abbreviated fashion below.

3          **1.**      **Credit Cancellation and Reduction of Credit Values at Certain Resorts**

4         If the Settlement is approved, Wyndham will cancel 22 million WorldMark Vacation Credits

5   that it currently holds as unsold developer credits.  Cancelled Vacation Credits will no longer be

6   available for sale, will not be sold, and cannot be used in connection with voting in any WorldMark

7   election.  The 22 million cancelled Vacation Credits will be allocated to reduce peak "red season"

8   credit values in certain categories of units at certain of the resorts at issue in the lawsuit.

9         Additionally, as a result of this Settlement term, Wyndham's rights and obligations as to the 22

10   million Vacation Credits, including Wyndham's voting rights in WorldMark elections, will be

11   eliminated.  Within fifteen (15) days of the Settlement's Effective Date, or as soon as practicable

12   thereafter, the WorldMark reservation system will be modified, and the new lower credit red season

13   values at the affected resorts will be in place for stays at these resorts, so that members have the benefit

14   of the new, lower credit values when they book reservations or stay at these resorts.  *See* Ex. 1, at

15   ¶¶ III.A.1-A.2.

16          **2.**      **Extraction of Underutilized Units and Cancellation of Related Credits**

17         If the Settlement is approved, a minimum of 400 and up to a maximum of 481 units at certain

18   underutilized WorldMark resorts will be returned to Wyndham.  Underutilized units include only units

19   at resorts with overall Vacation Credit occupancy rates below WorldMark's 85% average rate.  *See* Ex.

20   1, at III.B.1.  Based on a thorough review of occupancy and credit usage data, Plaintiffs and Wyndham

21   agree that the extraction of these units will not materially impair availability at these resorts in which

22   units are being extracted.

23         The Settlement contemplates that within twelve (12) months of the Effective Date, WorldMark

24   will legally and effectively transfer to Wyndham or its assignee a minimum of 400 and up to a

25   maximum of the 481 units identified above or, with the consent of Class Counsel, the WorldMark

26   Board, and with Court approval, Wyndham will legally and effectively transfer certain substitute units

27   (subject to the overall 481 unit maximum) that meet the criteria used to identify the units described

28   above.  The cancelled Vacation Credits will no longer be available for sale, will not be sold, and cannot

be used in connection with voting in any WorldMark election.  *See* Ex. 1, at III.B.1-B.2(a), B.6.

**3.    Exchange of Certain Units in Anaheim to Provide More Availability at Lower Credit Values**

If the Settlement is approved, at the time the First Transfer Phase described above is completed, 21 units at WorldMark Anaheim will be returned to Wyndham.  These 21 units at WorldMark Anaheim will be replaced by additional weeks equivalent to 21 units at WorldMark's Dolphin's Cove Resort (also in Anaheim), which has lower credit values.  Wyndham will cancel 7 million Vacation Credits associated with this exchange (16.9 million from WorldMark Anaheim less 9.9 million for WorldMark Dolphin's Cove) from its pool of unsold developer credits.  The 7 million cancelled Vacation Credits will no longer be available for sale and will not be sold to any consumer as WorldMark Vacation Credits.  Wyndham's rights and obligations as to the 7 million Vacation Credits, including Wyndham's voting rights in WorldMark elections, will be eliminated.  *See* Ex. 1, at III.C-D.

**4.    Aggregate Changes in Credits and Units and Reserves**

If the Settlement is approved and implemented, the maximum net reduction in the number of Vacation Credits held by Wyndham for sale as WorldMark Vacation Credits will be 274.7 million, calculated as follows:   22 million cancelled + 262.5 million extracted – 9.86 million added at WorldMark Dolphin's Cove.  *See* Ex. 1, at II.D.1  As a result of the Settlement, Wyndham's rights and obligations as to the 274.7 million Vacation Credits, including Wyndham's voting rights in WorldMark elections, will be eliminated.  (*See id.*)   In addition, WorldMark owners would be relieved of maintenance and other costs associated with the extracted units, and the number of credits available to compete for reservations at WorldMark resorts will be reduced, at the same time ensuring that the number of units remaining after extraction will be sufficient to meet owner demand.

At the time units are transferred out of WorldMark, exterior reserves maintained for future refurbishment and repair at resorts where units are being returned to Wyndham will be transferred to, and held by, an independent association or governing body responsible for exterior maintenance at the resort.  Interior reserves maintained for future refurbishment and repair of the units returned to Wyndham will be deposited with an escrow agent.  *See* Ex. 1 at III.D.2.

**5.    Cessation of Sales of TravelShare with Fun Time**

If the Settlement is approved, Wyndham will stop selling new TravelShare memberships

6

with Fun Time included on the later of October 31, 2011 or 90 days after the Settlement's Effective Date.  Sales of new TravelShare memberships without Fun Time may continue after that date. WorldMark owners who join TravelShare prior to that date will not be affected by this aspect of the Settlement.  *See* Ex. 1, at III.E.

### 6.      Election Website

If the Settlement is approved, Wyndham will cooperate with WorldMark and establish a separate internet website for owners to access during election cycles for the purpose of, and with content pertaining to, WorldMark Board of Director election matters, subject to reasonable review and approval of any owner postings by the WorldMark Board or the Board's authorized designee. Wyndham will notify WorldMark owners of the website's existence each election cycle via Destinations Magazine and the Insider Magazine.  *See* Ex. 1, at III.G.

### 7.      Limitations of Party Weekends

If the Settlement is approved, Wyndham will not book Party Weekends at any specific WorldMark resort during any particular calendar month in which the occupancy at the resort has exceeded 90% based on occupancy data from the same month in the preceding calendar year.  *See* Ex. 1, at III.H.

### 8.      Release of Claims

If the Settlement is approved, all WorldMark owners as the date of the Court's Preliminary Approval Order who do not exclude themselves from the Settlement will release all claims that have been or could have been alleged in the litigation or that arise out of, are connected with, or are related to the claims asserted in the litigation, including any unknown claims against Wyndham.  Wyndham will similarly release all such claims against Plaintiffs and Plaintiffs' Counsel.  *See* Ex. 1 at VII.B.

### 9.      Dismissal of Pending Litigation; Required Action if Settlement is Voided

If the Settlement is approved, the Action will be dismissed, with prejudice, subject to the continuing jurisdiction of this Court.  Additionally, the Wixon plaintiffs have dismissed with prejudice their complaint in intervention filed in the California state litigation involving a dispute as to the distribution of the owner register and owner email addresses, *WorldMark v. Miller*, Sacramento County Superior Court Case No. 34-2008-00025130-CU-PT-GDS, and withdrawn from the state litigation,

7

1  including any proceedings in any California appellate court. *See* Ex. 1, at VII.D.

2  **10.   Plaintiffs' Counsel's Fee and Expense Application**

3  To date, Plaintiffs' Counsel have not been compensated for any of their work or reimbursed for

4  any of the significant expenses incurred in the litigation.  Subject to Court approval, Wyndham has

5  agreed to pay a fee and expense award in an amount not to exceed $5 million to compensate Plaintiffs'

6  Counsel for the work they have performed for the Class, the litigation expenses incurred (including

7  experts), and the costs associated with the notice and administration of the Settlement, together with

8  any amounts paid to Plaintiffs as incentive awards.  Also subject to Court approval, each of the named

9  Plaintiffs may receive a $5,000 incentive award to be paid out of the total amount of any fee award to

10  Plaintiffs' Counsel. *See* Ex. 1 at V.1

11  Neither Plaintiffs, WorldMark, nor the Class will be responsible for the payment of any of

12  Plaintiffs' Counsel's fees or expenses or the incentive awards.   In addition, the Settlement is not

13  contingent upon the Court's award of fees or expenses to Plaintiffs' Counsel or the incentive awards to

14  the named plaintiffs. *See* Ex. 1 at V.1

15  **III.   ARGUMENT**

16  **A.   Overview of the Class Action Settlement Process**

17  A class action settlement like the one proposed here must be approved by the Court to be

18  effective. *See* Fed. R. Civ. P. 23(e).  The court approval process has three principal steps:

19  1.   A preliminary approval hearing, at which the court considers whether the proposed
20      settlement is within the range of reasonableness possibly meriting final approval;

21  2.   Class members are notified of the proposed settlement and given an opportunity to
22      express any objections;

23  3.   A "formal fairness hearing," or final approval hearing, at which the Court decides
24      whether the proposed settlement should be approved as fair, adequate, and reasonable to
25      the class.

26  *See* Manual For Complex Litigation (4th Ed.) §§ 21.632-34 (2004).

27  The first two steps have been completed.  The Court granted the motion for preliminary

28  approval of the proposed settlement, and the Parties have notified Class members of the proposed

8

1   settlement and fairness hearing.  *See* Dkt. No. 668; Levine Decl., ¶ 41.  Plaintiffs now ask that the

2   Court grant final approval of the proposed Settlement.

3         **B.**    **The Court Should Grant Final Approval of the Proposed Settlement**

4           A proposed class action settlement may be approved if the Court, after allowing absent class

5   members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate."  Fed.

6   R. Civ. P. 23(e)(2).  In making this determination, "the court's intrusion upon what is otherwise a

7   private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent

8   necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching

9   by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

10  reasonable and adequate to all concerned."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th

11  Cir. 2009) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).  *See also Officers*

12  *for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and

13  settlement are the preferred means of dispute resolution.  This is especially true in complex class action

14  litigation . . . .").

15          The decision of whether to approve the parties' proposed settlement is committed to the sound

16  discretion of the trial judge, and will not be overturned except upon a strong showing of a clear abuse

17  of discretion.  *Hanlon*, 150 F.3d at 1026-27.  In considering the fairness, reasonableness and adequacy

18  of a settlement, a district court is to consider the settlement as whole, rather than its component parts.

19  The Ninth Circuit has set forth a list of non-exclusive factors that a district court should balance in

20  deciding whether to grant final approval, namely:

21          1.  The strength of plaintiffs' case;

22          2.  The risk, expense, complexity, and likely duration of further litigation;

23          3.  The risk of maintaining class action status throughout the trial;

24          4.  The relief offered in settlement;

25          5.  The extent of discovery completed, and the stage of the proceedings;

26          6.  The experience and views of counsel;

27          7.  The presence of a governmental participant; and

28          8.  The reaction of the class members to the proposed settlement.

*Id.* at 963 (referred to hereafter as the "*Hanlon* factors").  *See also Perez v. Tilton*, No. C 05-05241 JSW, 2006 U.S. Dist. LEXIS 63318, at *6-11 (N.D. Cal. Aug. 21, 2006) (White, J.) (applying *Hanlon* factors and approving settlement).

The first four *Hanlon* factors are designed to assist the Court in comparing the compromise with the likely rewards of litigation.  By evaluating the strength of the Plaintiffs' case; the risk, expense, complexity, and delay associated with further proceedings; and the risk of maintaining class certification through trial, the Court can get a good idea of the value of class members' claims.  The Court can then evaluate the amount offered by the parties' proposed settlement in context to determine whether it provides fair compensation for those claims — or, stated another way, "whether the interests of the class are better served by the settlement than by further litigation."  Manual For Complex Litigation (4th Ed.) § 21.61 (2004); *see also generally In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 422 (N.D. Cal. 2009) (Walker, J.) (quoting *Protective Committee for Independent Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968): "Basic to [the process of deciding whether a proposed settlement is fair, reasonable and adequate] . . . is the need to compare the terms of the compromise with the likely rewards of litigation.").

The remaining *Hanlon* factors offer additional perspective on whether the amount offered by the settlement is fair — ensuring that the parties and the Court have sufficient information to intelligently assess the value of class members' claims, taking into account class counsel's and individual class members' opinions about the settlement and accounting for the position or views of any governmental participant.

An evaluation of the *Hanlon* factors in this case shows that the proposed settlement provides substantial benefit to class members without the risk and delay associated with further litigation, and should be approved as a fair, adequate, and reasonable resolution of the claims against Wyndham.

### 1.    The Strength of Plaintiffs' Case, Risk and Expense of Further Litigation and Risk of Maintaining Class Action Status

While every step of the litigation has been hard-fought, Plaintiffs have achieved every litigation objective they set out to achieve.  The complaint has survived multiple motions to dismiss — one filed by Wyndham and three filed by the Director Defendants.   After extensive briefing and class certification expert discovery, the Court granted   Plaintiffs' motion for class certification.

10

Nonetheless, it was by no means certain that Plaintiffs would prevail on their claims.  For example, in order to prevail on their claims challenging Fun Time TravelShare reservations, Plaintiffs would have had to have proven damages or injury.  *See, e.g., Wall Street Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171, 1178 (Cal. App. 2d Dist. 2008) ("damage to plaintiff" is an element of a breach of contract claim); *Branick v. Downey Savings & Loan Assn.*, 39 Cal. 4th 235, 240 (2006) ("injury in fact" is required to maintain a claim under the California Unfair Competition Law).  In other words, in order to succeed on their claims, Plaintiffs likely would have had to have proven that Fun Time reservations caused actual harm to WorldMark members, not merely that such reservations potentially could cause harm.  The data available to prove damages or injury to WorldMark owners as a group — primarily, vacation timeshare usage and resale price data — are limited and open to different interpretations.  Therefore, a decision on the TravelShare and Fun Time claims likely would have come down to the jury's assessment of each side's expert's analysis of the data, making the outcome particularly uncertain and difficult to predict.  *See generally Cagan v. Anchor Sav. Bank FSB*, No. CV-88-3024, 1990 U.S. Dist. LEXIS 11450, at *24 (E.D.N.Y. May 17, 1990) ("Where . . . a battle of the experts takes place, it is difficult to predict how a jury would respond.").  The jury could well have found Wyndham's expert to be more persuasive.

Plaintiffs' claims challenging Wyndham's deviation from relative use values also involved significant hurdles and uncertainties.  Plaintiffs are aware of no decision by any court construing the term "relative use values" in the context of vacation timeshares.  Therefore, the meaning of the term as it is used in the Governing Documents is open to some argument.  Plaintiffs might not have been able to persuade the Court that their interpretation of the relative use value provision in the Governing Documents is the correct one.  The fact also remains that, even before Wyndham's involvement in WorldMark, different WorldMark resorts have had different credit values assigned to them.  The fact of these differences in credit value assignments could also affect the interpretation of "relative use values" as it is used in the Governing Documents and, thereby, the viability of Plaintiffs' claims. *See generally Stahly v. Salomon Smith Barney, Inc.*, 319 Fed. Appx. 654, 656 (9th Cir. 2009) (parties' course of conduct in implementing a contract may influence the interpretation of the contract).  In short, victory on Plaintiffs' claims was by no means assured.

1    If the Parties had been unable to resolve this case through settlement, further litigation would

2 have been expensive and lengthy.  Wyndham almost certainly would have moved for summary

3 judgment.  Opposing such a motion and litigating this case at trial and subsequent appeals would

4 involve unavoidable risks and expense, especially in light of the extensive use of experts in this case.

5 *See, e.g.*, *Hartless v. Clorox Co.*, No. 06cv2705-CAB, 2011 U.S. Dist. LEXIS 5427, at *21-22 (S.D.

6 Cal. Jan. 20, 2011) (granting final approval and noting inherent risk and expense of further motion

7 practice and expert involvement); *Rodriguez*, 563 F.3d at 966 (delay posed by anticipated summary

8 judgment motion and appeal weighed in favor of settlement).

9    Wyndham would likely have continued to oppose class certification if the case were to proceed

10 on the merits.  While Plaintiffs would have opposed any efforts to decertify the class, the risk

11 associated with maintaining class action status by itself favors final approval of the proposed

12 Settlement.  *See Lane v. Facebook, Inc*., No. C 08-3845 RS, 2010 U.S. Dist. LEXIS 24762, at *17

13 (N.D. Cal. Mar. 17, 2010) (Seeborg, J.) (citing *Rodriguez*, 563 F.3d at 966: "The risk that a class action

14 may be decertified at any time generally weighs in favor of approving a settlement.").  Thus, the first

15 three *Hanlon* factors favor final approval of the Settlement.

16            **2.        The Relief Offered in Settlement**

17    As detailed above and in the Parties' joint application for preliminary approval, the Settlement,

18 if approved, will provide substantial benefits to members of the proposed Class.  The Settlement will

19 reduce peak season credit values at specified resorts and make them more affordable for WorldMark

20 members.  It will also exchange certain high credit value units for an equal number of lower credit

21 value units in one popular resort area, Anaheim, California, thereby providing the same availability of

22 WorldMark units to members, but at lower credit values, again making stays in the Anaheim area more

23 affordable for WorldMark members.

24    Under the Settlement, a minimum of 400 and up to a maximum of 481 units at specified

25 underutilized WorldMark resorts will be returned to Wyndham and, in exchange, Wyndham will

26 surrender up to 274.7 million Vacation Credits that it now owns.  This provision "right-sizes" the

27 resorts by eliminating units that WorldMark members underutilize and relieving WorldMark of the

28 expense and ongoing burden of maintaining units that are being underutilized.  In this way, the

1   Settlement also accomplishes two goals of the litigation, namely:  (1) reducing Wyndham's ability to
2   influence WorldMark elections (by reducing Wyndham's voting power); and (2) eliminating most of
3   the excess Vacation Credits that Plaintiffs allege were created by Wyndham's conduct.  If the full 274.7
4   million Vacation Credits are surrendered by Wyndham, this will reduce Wyndham's voting power by
5   70%, based on the total number of Vacation Credits (390,465,786) that Wydham presently owns.  *See*
6   Declaration of David Herrick in Support of Proposed Settlement Between Plaintiffs and Wyndham
7   Resort Development Corp. at ¶ 6.

8        The Settlement also addresses the Fun Time element of Wyndham's TravelShare program and
9   Wyndham's ability to use WorldMark resorts for its own marketing purposes in what are known as
10  Party Weekends.  Under the Settlement, Wyndham will stop selling new TravelShare memberships
11  with Fun Time included, and will not book Party Weekends at any WorldMark resort during a
12  calendar month in which occupancy has exceeded 90% in the same month in the preceding year.
13  Accordingly, the fourth *Hanlon* factor weighs in favor of final approval of the Settlement.

14            **3.    The Extent of Discovery Completed and Stage of the Proceedings and the
                     Experience and Views of Counsel**
15
16       As described above, this litigation has been the subject of extensive discovery.  Class Counsel
17  have reviewed hundreds of thousands of pages of documents and conducted 15 substantive depositions
18  of Wyndham executives in Seattle, Washington, Orlando, Florida, New York, New York and Salem,
19  Oregon and thereby has had sufficient information to evaluate the strengths and weaknesses of the
20  claims intelligently.  *Rodriguez*, 563 F.3d at 967.  On the basis of this information, Class Counsel
21  believe that the Settlement is fair, reasonable and adequate and readily satisfies the requirements of
22  Rule 23(e).   Moreover, where, as here, Class Counsel have substantial relevant experience,[1] the
23  recommendation of experienced counsel weighs in favor of approving the Settlement.  *See In re*
24  *Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (Conti, J.) ("The
25  recommendations of plaintiffs' counsel should be given a presumption of reasonableness.").   These
26  fifth and sixth *Hanlon* factors also favor final approval.
27
28  [1] The qualifications and experience of Class Counsel in the area of complex consumer class litigation
    are detailed in the firm resume submitted in support of Plaintiffs' class certification motion.  *See* Dkt.
    No. 258, Ex. 24.
                                        13

#### 4.     The Presence of Governmental Participants

As stated above, Wyndham has consulted extensively with state timeshare regulators regarding approvals required for implementation of the Settlement and believes that all such approvals will be obtained.  Thus, the seventh *Hanlon* factor favors settlement as well.  *Cf. Lane*, 2010 U.S. Dist. LEXIS 24762, at *19-20 (considering lack of opposition by regulators in decision to grant final approval); *Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 U.S. Dist. LEXIS 86266, at * 36-37 (N.D. Cal. Nov. 16, 2007) (Lloyd, Mag. J.) (same).

#### 5.     The Reaction of the Class Members to the Proposed Settlement.

As described above, notice was sent to members of the Class on May 12, 2011.  Pursuant to the Court's April 19, 2011 order, the deadline for Class members to file comments and objections regarding the Settlement is July 8, 2011.  The Parties will address any issues raised by Class members in the Parties' reply in support of final approval, which is to be filed on July 22, 2011.  *See* Dkt. No. 683.

### IV.     <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs request that the Court grant final approval of the proposed Settlement.

Dated: June 6, 2011                                    Respectfully submitted,

                                                       **GIRARD GIBBS LLP**

                                                       By:   */s/ Jonathan K. Levine*
                                                             Jonathan K. Levine

                                                       Elizabeth C. Pritzker
                                                       Todd Espinosa
                                                       601 California Street, 14th Floor
                                                       San Francisco, California  94108
                                                       Telephone:  (415) 981-4800
                                                       Facsimile:  (415) 981-4846

                                                       James S. Helfrich (admitted *pro hac vice*)
                                                       Jordan Factor (admitted *pro hac vice*)
                                                       **ALLEN & VELLONE PC**
                                                       1600 Stout Street, Suite 1100
                                                       Denver, Colorado 80202
                                                       Telephone:  303-534-4499
                                                       Facsimile:   303-893-8332

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Attorneys for the Class and Plaintiffs Clarke and Rebecca Wixon, Norman and Barbara Wixon, and Kandice Scattolon*

15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I, Jonathan K. Levine, hereby certify that on June 6, 2011, I filed the following document(s):

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANT WYNDHAM RESORT DEVELOPMENT CORPORATION AND MEMORANDUM IN SUPPORT THEREOF**

By ECF (Electronic Case Filing): I e-filed the above-detailed document utilizing the United States District Court, Northern District of California's mandated ECF service on June 6, 2011. Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the document(s) upon confirmation of e-filing.

I declare under penalty of perjury that the foregoing is true and correct. Executed at San Francisco, CA on June 6, 2011.

*/s/ Jonathan K. Levine*
Jonathan K. Levine

16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

10

11

12   CLARKE and REBECCA WIXON,           Case No. C 07-02361 JSW
      NORMAN and BARBARA WIXON, and
13   KANDICE SCATTOLON, on behalf of
      themselves and all others similarly situated,
14                                                    **SETTLEMENT AGREEMENT**
                  Plaintiffs,                        **AND RELEASE**
15
      v.
16
      WYNDHAM RESORT DEVELOPMENT
17   CORP. (f/k/a Trendwest Resorts, Inc.),          CLASS ACTION
18                  Defendant.
19                                                    Before:        Hon. Jeffrey S. White

20

21

22

23

24

25

26

27

28

TROUTMAN SANDERS LLP
ATTORNEYS AT LAW
ATLANTA

Settlement Agreement and Release
C 07-02361-JSW

# TABLE OF CONTENTS

PAGE

INDEX OF EXHIBITS ..................................................................................ii

RECITALS ............................................................................................. 1

I.  DEFINITIONS ................................................................. 5

II.  REQUIRED EVENTS.......................................................... 9

III.  SETTLEMENT TERMS ................................................... 12

    A.  Credit cancellation at the Disputed Resorts ........................ 12

    B.  Extraction of units and Credits.................................... 13

    C.  Exchange of units in Anaheim, California resort area.................. 16

    D.  Aggregate Changes in Credits and Units and Reserves................. 16

    E.  Cessation of sales of TravelShare with Fun Time................... 17

    F.  WorldMark budget ............................................... 17

    G.  Election issues ................................................. 17

    H.  Party Weekends ............................................... 18

IV.  NOTICE AND RELATED PROVISIONS ............................... 18

V.  SETTLEMENT PAYMENT AND ADMINISTRATION COSTS ............ 19

VI.  APPROVAL HEARING AND ORDER ................................... 22

VII.  RELEASES, DISMISSAL OF ACTION AND STATE CASE, AND JURISDICTION OF COURT.................................... 24

    A.  Acknowledgement With Respect To Credit Values At Future WorldMark Resorts ............................... 24

    B.  Release Of Claims ............................................. 25

    C.  Covenant Not To Sue ........................................... 28

    D.  Dismissal…………… ......................................... 28

    E.  Required Actions If Settlement Is Voided After Effective Date .................. 29

TROUTMAN SANDERS LLP
ATTORNEYS AT LAW
ATLANTA

VIII.   REPRESENTATIONS, WARRANTIES, AND COVENANTS ..................................29

IX.   ADDITIONAL PROVISIONS ........................................................................30

# INDEX OF EXHIBITS

| EXHIBIT NO. | DESCRIPTION | SETTLEMENT AGREEMENT PROVISION |
|---|---|---|
| **A** | CAFA Notice | I.(d); II.1.b. |
| **B** | Preliminary Approval Order | I.(p);  II.1.a |
| **C** | Summary Notice | I.(x);  IV.1.a., b. |
| **D** | Credits to be cancelled at Disputed Resorts | III.A. |
| **E** | Units to be extracted and exchanged, and Credits cancelled at WorldMark resorts | III.B., C. |

Plaintiffs Clarke and Rebecca Wixon, Norman and Barbara Wixon, Kandice Scattolon, and the Settlement Class (collectively, "Plaintiffs") and Defendant Wyndham Resort Development Corporation ("Wyndham") (Plaintiffs and Wyndham are collectively referred to herein as "the Parties"), by and through their counsel, hereby enter into this Settlement Agreement and Release ("Settlement Agreement"), subject to Court approval, providing for the terms of the Parties' settlement (the "Settlement") and the releases set forth herein.

## RECITALS

WHEREAS, Plaintiffs Clarke and Rebecca Wixon and Norman and Barbara Wixon filed the above-captioned litigation (the "Action") against Wyndham in the Superior Court of California, San Mateo County, on April 2, 2007 (*Wixon v. Wyndham Resort Development Corp.*, San Mateo Superior Court, Case No. CIV461931), which Wyndham removed to the United States District Court for the Northern District of California (the "Court") on May 1, 2007, Case No. C-07-2361-JSW.

WHEREAS, on October 23, 2007, Plaintiffs Clarke and Rebecca Wixon and Norman and Barbara Wixon filed their First Amended Complaint, asserting claims against Wyndham on behalf of a class of persons who own WorldMark, The Club ("WorldMark") Vacation Credits and who reside in or purchased their Vacation Credits in California, for breach of contract, breach of the covenant of good faith and fair dealing, violation of California Civil Code § 1750 *et seq.* ("CLRA"), violation of California Business and Professions Code § 17200 *et seq.* ("UCL"), violation of California Business and Professions Code § 11210 *et seq.* ("VOTSA"), and declaratory relief; and adding as defendants Gene Hensley, David Herrick, John Henley, Peggy Fry, and John McConnell, in their capacities as current and former members of the Board of Directors of WorldMark, the Club ("Director Defendants"), and asserting against them claims for breach of fiduciary duty and declaratory relief.

TROUTMAN SANDERS LLP
ATTORNEYS AT LAW
ATLANTA

WHEREAS, on April 18, 2008, the Court denied in part and granted in part Wyndham's motion to dismiss, finding that Plaintiffs' claims asserted against Wyndham were direct rather than derivative in nature, but granting dismissal as to Plaintiffs' CLRA claim.

WHEREAS, on May 16, 2008, Plaintiffs Clarke and Rebecca Wixon and Norman and Barbara Wixon filed their Second Amended Complaint, reasserting their class claims against Wyndham, and asserting against Director Defendants on behalf of Plaintiffs and nominal Defendant WorldMark derivative claims for breach of fiduciary duty and declaratory relief. Plaintiffs sought monetary damages, as well as injunctive and declaratory relief.

WHEREAS, the Court, on July 23, 2008, granted Plaintiffs leave to file a Third Amended Complaint. Plaintiffs associated with the law firm of Gersh & Helfrich, LLP, and filed a Third Amended Complaint, which on November 3, 2009, in response to Director Defendants' motion to dismiss, the Court found alleged derivative claims with the requisite specificity.

WHEREAS, on April 24, 2009, Plaintiffs Clarke and Rebecca Wixon and Norman and Barbara Wixon filed a motion for class certification with respect to the claims asserted against Wyndham and a motion for leave to file a Fourth Amended Complaint to amend the class definition.

WHEREAS, on October 19, 2009, the Court granted Plaintiffs' motion for leave to file a Fourth Amended Complaint and granted in part their motion for class certification with respect to the class claims asserted against Wyndham. The Court certified the following class, pursuant to Fed. R. Civ. P. 23(b)(3):

> All Current WorldMark, The Club members who purchased WorldMark Premier Vacation Credits before November 5, 2006 and who (A) reside in the State of California or who purchased Vacation Credits in California; and (B) did not enroll in the TravelShare program at any time. Excluded from the Class are Defendants, any entity in which any Defendant has or had a controlling interest, any officers or directors of Wyndham, the legal representatives, heirs, successors, and assigns

of Defendants, and any judge assigned to this action and his or her immediate family.  (Dkt. No. 420.)

WHEREAS, on January 27, 2010, the Court granted Plaintiffs' motion to file a Fifth Amended Complaint to add Plaintiff Kandice Scattolon, which Plaintiffs filed on February 3, 2010 (Dkt. No. 455).

WHEREAS, Plaintiffs intend to seek leave of Court to file a Sixth Amended Complaint in connection with, and solely for purposes of, the Parties' Settlement to conform the class definition to the definition of Settlement Class herein.

WHEREAS, discovery between Plaintiffs and Wyndham commenced in July 2007 and concluded in June 2010.

WHEREAS, the Parties have explored and discussed at length the factual and legal issues in the Action. These discussions were informed by substantial fact discovery, expert discovery and analysis, and the Parties' investigation of the law and facts applicable to the claims asserted against Wyndham and relevant defenses and the ability of the Action to proceed as a class action.

WHEREAS, on November 11, 2009, the Parties initiated settlement discussions in a full-day mediation session before the Honorable William J. Cahill (Ret'd) at JAMS in San Francisco, California. Subsequently, the Parties commenced settlement discussions without the assistance of a neutral, and since January 2010 have actively negotiated settlement while litigating the Action.

WHEREAS, on July 2, 2010, as a result of the vigorous negotiations described above, the Parties reached agreement in principle on settlement of the individual and class claims asserted by Plaintiffs against Wyndham, subject to Court approval.

WHEREAS, Plaintiffs, by and through their undersigned counsel, have: (a) made a thorough investigation of the facts and circumstances surrounding the allegations asserted in

the Action; and (b) engaged in investigation and discovery of the claims asserted in the Action, including but not limited to: (i) researching, reviewing, and analyzing the applicable contracts and documents that govern the Parties' legal rights, duties, and obligations *vis a vis* one another; (ii) deposing witnesses and experts; (iii) reviewing and analyzing thousands of pages of paper and e-discovery documents produced in the Action; (iv) engaging in discovery motion practice before United States Magistrate Judge Bernard Zimmerman; and (v) investigating the law applicable to the claims and defenses asserted in the Action.

WHEREAS, Wyndham believes Plaintiffs' claims have no merit. Wyndham has denied and expressly continues to deny any legal responsibility or liability to Plaintiffs, any WorldMark Member, or WorldMark for any of the matters asserted in the Action, but believes settlement is desirable to avoid the time, expense, and inherent uncertainty of defending protracted class litigation and to resolve, finally and completely, all pending and potential claims Plaintiffs asserted or could have asserted in the Action against Wyndham.

WHEREAS, while Plaintiffs' counsel are experienced in this type of litigation and believe that Plaintiffs' claims have merit, they also recognize the costs and risks of continued prosecution of the Action, and believe it is in the interests of Plaintiffs and all WorldMark Members to resolve the Action, as well as Plaintiffs' claims against Wyndham arising from the conduct or actions alleged in or stemming from the Action, and they support this Settlement Agreement.

WHEREAS, extensive arms-length negotiations resulted in this Settlement Agreement, subject to Court approval.

WHEREAS, the undersigned Parties submit this Settlement Agreement to benefit Plaintiffs and WorldMark Members, and believe it is fair, reasonable, adequate, and in the best interest of Plaintiffs and WorldMark Members.

WHEREAS, this Settlement Agreement is intended to supersede any and all agreements previously executed by the Parties with respect to claims asserted in the Action.

NOW, THEREFORE, it is hereby stipulated and agreed, by and between the undersigned parties, as follows:

## I.     **DEFINITIONS.**

As used in this Settlement Agreement, the following terms have the corresponding meanings set forth below.  Where appropriate, terms used in the singular shall be deemed to include the plural and vice versa.

(a)     "Action" means and refers only to the individual and class claims asserted by Plaintiffs against Wyndham in *Wixon v. Wyndham Resort Development Corp.*, Case No. C-07-2361-JSW (N.D. Cal.).

(b)     "Approval Hearing" means a hearing to be held by the Court to determine whether the settlement should be approved and the Action dismissed.

(c)     "Approval Order" means a final order and judgment entered by the Court, which, among other things, grants final approval of the Settlement, dismisses with prejudice the Action as to Wyndham, and deems the Parties' claims released as set forth in this Agreement.

(d)     "CAFA Notice" means notice, in substantially the form attached hereto as **Exhibit A,** to the appropriate authorities under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b).

(e)     "Class Counsel" means Girard Gibbs LLP and its attorneys of record in the action.

(f)     "Class Representatives" means Clarke and Rebecca Wixon, Norman and Barbara Wixon, and Kandice Scattolon.

(g)     "Disputed Resorts" means the following twelve WorldMark resorts: Anaheim,

Canmore, Camlin, Las Vegas – Tropicana, Long Beach, Mission Valley, New Orleans, San Diego, San Francisco, Santa Fe, Taos, and West Yellowstone.

(h)   "Effective Date" means the last date by which the Approval Order has been entered and the time for seeking appellate review of any and all matters related to the Action and the Parties' Settlement has expired or, if appellate review is sought, the Settlement has been affirmed in its entirety by the court of last resort and such affirmance has become no longer subject to further appeal or review.

(i)   "Fee Award" means a fee award to be approved by the Court in an amount not to exceed five million dollars ($5,000,000), which shall include any representative awards and Plaintiffs' Counsels' attorneys' fees and expenses, including Plaintiffs' expert witness fees and other investigative or litigation expenses incurred by Plaintiffs, and settlement administration fees and expenses, including Settlement-Related Expenses as defined herein.

(j)   "Final Approval" means the date upon which the Court enters the Approval Order.

(k)   "Member" or "Membership" means a member of WorldMark, The Club, as defined by WorldMark's By-Laws, § 3, and documents incorporated therein.

(l)   "Notice Order" means a Court order approving the form of Settlement Notice to be given to the Settlement Class, directing that Settlement Notice be given to the Settlement Class in a manner consistent with the notice provisions set forth in this Settlement Agreement, and setting a schedule up to and including the Approval Hearing.

(m)   "Plaintiffs" means Class Representatives Clarke and Rebecca Wixon, Norman and Barbara Wixon, and Kandice Scattolon, and all Settlement Class members.

(n)   "Plaintiffs' Counsel" means Plaintiffs' attorneys of record in the Action, *i.e.*, the law firms of Girard Gibbs LLP, Gersh & Helfrich, LLP, or either of them.

(o)     "Preliminary Approval" means the date upon which the Court enters the Preliminary Approval Order.

(p)     "Preliminary Approval Order" means a Court order, in substantially the form attached hereto as **Exhibit B**, granting Plaintiffs leave to file a Sixth Amended Complaint, preliminarily certifying the Settlement Class for the sole purpose of this Settlement, preliminarily approving the Settlement, approving the form and internet posting of the Summary Notice, directing that CAFA Notice be given, and setting a date for the Parties to submit a joint report and a proposed form of Settlement Notice and a schedule leading up to and including the Approval Hearing.

(q)     "Regulatory Approval" means the final approval from the California Department of Real Estate and any other applicable regulatory authorities having authority with respect to Wyndham, WorldMark, The Club, or WorldMark, The Club's Vacation Ownership Program or its resorts, from which approval may be required to implement the terms of the Settlement.

(r)     "Released Persons" means Wyndham Resort Development Corporation, its predecessors and successors in interest (including but not limited to Cendant Corporation {now known as Avis Budget Group, Inc.}, Wyndham Worldwide Corporation, Wyndham Vacation Ownership, Inc., and their respective subsidiaries), and any of its present or former subsidiaries, divisions, parent companies, affiliates, officers, directors, employees, trustees, principals, attorneys, agents, representatives, shareholders, members, partners, and insurers.

(s)     "Settlement" means the Parties' settlement, as memorialized in this Settlement Agreement and Release.

(t)     "Settlement Agreement" means this Settlement Agreement and Release.

(u)     "Settlement Class" means a settlement class comprised of all WorldMark

Members as of Preliminary Approval.

(v)     "Settlement Notice" means a notice directed to Settlement Class members, subject to agreement by the Parties and Court approval, describing among other things the material terms of the Settlement set forth in this Settlement Agreement, the procedure and deadline for objecting to or opting out of the Settlement, and the date and time of the Approval Hearing.

(w)     "Settlement-Related Expenses" means fees or expenses incurred for settlement administration and for providing Settlement Notice to the Settlement Class and the CAFA Notice to appropriate authorities.  Settlement-Related Expenses incurred and billed by a third party administrator are referred to herein as "TPA Costs."

(x)     "Summary Notice" shall mean a preliminary notice, substantially in the form attached hereto as **Exhibit C**, subject to Court approval, describing the material terms of the Settlement set forth in this Settlement Agreement and advising Settlement Class members that a Settlement Notice will be provided at a later date.

(y)     The "Wixons" means Clarke and Rebecca Wixon and Norman and Barbara Wixon.

(z)     "WorldMark" means WorldMark, The Club.

(aa)    The "WorldMark Board" means the Board of Directors of WorldMark, The Club.

(ab)    "Wyndham" means Wyndham Resort Development Corporation (formerly known as Trendwest Resorts, Inc.).

(ac)    "Wyndham's Counsel" means Wyndham's attorneys of record in the Action, *i.e.*, the law firms of Troutman Sanders LLP and Schiff Hardin LLP.

## II.    REQUIRED EVENTS

Promptly after execution of this Settlement Agreement by all Parties:

1.    a.    The Parties will use their best efforts, consistent with the terms of this Settlement Agreement, to obtain the Preliminary Approval Order from the Court.  The Parties agree that solely for purposes of the Parties' Settlement, the Preliminary Approval Order shall preliminarily certify the Settlement Class set forth in the Sixth Amended Complaint.

b.    Within ten (10) days after the filing of this Settlement Agreement with the Court, Wyndham shall comply with the requirements of 28 U.S.C. § 1715(b) and serve the CAFA Notice upon the appropriate federal official and the appropriate state official(s) of each state in which a settlement class member resides and each state which has applicable regulatory authority over WorldMark's Vacation Ownership Program.

c.    Upon entry of the Preliminary Approval Order, Wyndham will use commercially reasonable efforts, consistent with the terms of this Settlement Agreement, to obtain Regulatory Approval of the Settlement.  Within 90 days after the entry of the Preliminary Approval Order, the Parties will submit to the Court a joint report advising on the status of efforts to obtain Regulatory Approval, together with a declaration from a Wyndham representative stating whether Wyndham has a good faith basis to forecast that, using commercially reasonable efforts, it will be able to legally extract at least 400 units pursuant to paragraph III.B. of this Settlement Agreement.  In the joint report, the Parties will either advise the Court that additional time may be needed before Settlement Notice can be issued to the Class and the Approval Hearing scheduled, or submit to the Court a proposed form of Settlement Notice and a proposed Notice Order that will provide for approval of the form of the Settlement Notice, direct that Settlement Notice be given to the Settlement Class in a manner consistent with the notice provisions set forth herein, and set a schedule leading up to the Approval Hearing.

d.      Certain transactions contemplated by the Settlement may require and be subject to consent by the WorldMark Board.  The Parties shall cooperate with each other in good faith in seeking to obtain such consent prior to seeking entry of the Notice Order.  The consent of the WorldMark Board may be a necessary and material condition precedent to this Settlement, and should such consent not be obtained prior to entry of the Notice Order, this Settlement is voidable by either party.  Any Party voiding the Settlement pursuant to this provision shall give written notice to counsel for the other Parties.

e.      The Settlement Notice shall provide that any Settlement Class member may elect to opt-out of the Settlement, in the manner and by the date specified in the Settlement Notice.  Such opt-out rights may only be exercised individually by a Settlement Class member and not in a representative capacity.  Any request for exclusion must be postmarked or delivered not later than the date specified in the Court's Notice Order and the Settlement Notice, and any such request shall include (i) the member's full name and current address and telephone number, (ii) the member's WorldMark account number, (iii) the member's signature, and (iv) a specific and clear statement of his or her desire to be excluded from the Settlement.  Failure to comply with these requirements and to timely submit a request for exclusion will result in the Settlement Class member being bound by the terms of the Settlement.  Within five (5) business days from the last day upon which members may opt out of the Settlement Class, Plaintiffs' Counsel shall notify Wyndham's Counsel, in writing, of the number of persons who elect to be excluded from the Settlement and provide Wyndham's Counsel with copies of the written elections.

f.      Wyndham shall have the unilateral right to withdraw from the Settlement prior to the Approval Hearing and cancel this Settlement Agreement, if the number of Settlement Class members who elect to be excluded exceeds five percent (5%) of the total

Settlement Class, by giving written notice of such withdrawal to Plaintiffs' Counsel. If Wyndham exercises its right of withdrawal pursuant to this provision, the Settlement shall be null and void for all purposes, except for the provisions of paragraphs V.2 and IX.1.

> g. Any Settlement Class member who timely opts out of the Settlement may not file an objection to the Settlement and shall be deemed to have waived any rights or benefits under this Settlement Agreement.

2. The Parties will use their best efforts, consistent with the terms of this Settlement Agreement, to obtain the Approval Order from the Court. Should the Court disapprove of or modify the Settlement or this Settlement Agreement or any term or provision of this Agreement, or fail to approve this Settlement Agreement in its entirety, this Settlement is voidable by either Party within a period of thirty (30) days after such disapproval or modification. Any Party voiding the Settlement pursuant to this provision shall give written notice to counsel for the other Parties.

3. The Parties shall cooperate with each other in good faith to carry out the purposes of and to effectuate this Settlement Agreement, shall promptly perform their respective obligations hereunder, and shall promptly take any and all actions and execute and deliver any and all documents and other materials and/or information reasonably necessary or appropriate to carry out the terms of this Settlement Agreement and the transactions, actions, or activities contemplated thereby.

4. Upon entry of the Approval Order, the Action shall be dismissed, with prejudice, subject to the continuing jurisdiction of this Court and pursuant to the provisions of paragraphs VII.D. and VII.E.

5. Certain transactions contemplated by the Settlement require and are subject to Regulatory Approval. The Parties shall cooperate with each other in good faith and use

commercially reasonable efforts to obtain Regulatory Approval as expeditiously as reasonably possible after entry of the Approval Order.  Should Wyndham not be able to implement the terms of this Settlement Agreement, then Wyndham shall have a right to void the Settlement in accordance with the provisions of paragraph III.B.6.  If the Settlement is voided after the Effective Date pursuant to this paragraph, the Parties shall promptly advise the Court and the provisions of paragraph VII.E. shall be implemented pursuant to the Court's continuing jurisdiction.

**III.    SETTLEMENT TERMS.**

As consideration for dismissal of the Action, dismissal of the Wixons' complaint in intervention in the State Case,[1] and the release of claims as provided for in this Settlement Agreement, the Parties have agreed to and shall adopt and fully implement the following provisions:

**A.    Credit cancellation at the Disputed Resorts.**

1.    On completion of the First Transfer Phase (as that term is defined in paragraph III.B.1.), Wyndham will legally and effectively cancel 22 million Vacation Credits that are currently held by Wyndham as unsold developer Credits.  Those cancelled Vacation Credits will no longer be available for sale, and will not be sold, to any consumer as WorldMark Vacation Credits, and Wyndham's rights and obligations as to those cancelled Vacation Credits will be eliminated.  The Parties agree that the specific number of Credits to be cancelled at the Disputed Resorts is set out in **Exhibit D** to this Settlement Agreement.

---

[1] "State Case" means and refers to a proceeding commenced by WorldMark filing a petition in the Superior Court of California for Sacramento County, entitled *WorldMark, The Club v. Robin Miller and Wyndham Resort Development Corp.*, Case No. 2008-00025130-CU-PT-GDS, and the Wixons' complaint in intervention filed in that case in which they assert claims against WorldMark, and any appeals pertaining to that action.  The term "State Case" as used in the Settlement Agreement excludes and is meant to preserve any and all claims and interests Respondent Miller has asserted in that proceeding.

2.     Within fifteen (15) days after the Effective Date, or as soon as practicable thereafter, the WorldMark reservation system shall be modified ("Modification Date") such that the new credit values at the affected resorts will be in place for reservations for travel dates occurring on or after the Modification Date.  The account of any WorldMark Member making a reservation at an affected resort prior to the Modification Date for travel dates occurring on or after the Modification Date will be adjusted such that the Member will have the benefit of the new credit values.  The reservation system modification to be effected on the Modification Date will not alter or affect the date for cancellation of Vacation Credits as set forth in paragraphs III.A.1. and paragraphs III.B.1. and 6., and Wyndham retains all rights and obligations as to the Vacation Credits until they are cancelled.

3.     Should the Settlement be voided by Wyndham after the Modification Date, pursuant to paragraph III.B.6., credit values at the resorts set forth on **Exhibit D** shall revert to the values in place prior to the Modification Date.

**B.     Extraction of units and Credits**.

1.     Within twelve (12) months after the Effective Date, or any additional periods as provided in paragraph III.B.6., WorldMark will legally and effectively transfer to Wyndham or its assignee units from certain WorldMark resorts from a minimum of 400 units and up to a maximum of all of the units identified on **Exhibit E.**  Wyndham will complete the transfer of at least 400 units as soon as practical upon obtaining Regulatory Approval ("First Transfer Phase").  After the First Transfer Phase is complete, the Vacation Credits associated with those transferred units will be cancelled and will no longer be available for sale, and will not be sold, to any consumer as WorldMark Vacation Credits.  Wyndham retains all rights and obligations as to those Vacation Credits prior to completion of the First Transfer Phase.  Except as described below with respect to units transferred from WorldMark's Anaheim resort, the

units to be transferred shall consist of units determined to be underutilized based on analysis of certain reserved credit occupancy and Vacation Credit utilization data. The maximum number of units to be transferred and Credits cancelled at the specific WorldMark resorts is set out in **Exhibit E** to this Settlement Agreement.

2.    (a)    Subject to consent by Class Counsel and the WorldMark Board, and approval by the Court, Wyndham shall have the right, during the First Transfer Phase to substitute WorldMark units for transfer, subject to the overall 481 unit maximum and 245.6 million cap on Vacation Credits associated with the transferred units. Substitute units shall be identified under criteria similar to those used to identify the original units to be transferred. Subject to Court approval, any hearing the Court may hold regarding the substitution of units need not be noticed to Settlement Class members.

(b)    After the First Transfer Phase is complete, Wyndham may continue to substitute units under criteria similar to those used to identify the original units to be transferred, subject to the overall 481 unit maximum and 245.6 million cap on Vacation Credits associated with the transferred units, and subject to consent by Class Counsel and the WorldMark Board and approval by the Court ("Additional Transfer Phase").

3.    Within ninety (90) days after the Effective Date, and every ninety (90) days thereafter, Wyndham shall submit to Class Counsel a report advising of the status of Regulatory Approval until the transfer of units has been finally and fully performed as provided in paragraphs III.B.5. and 6., or the Settlement Agreement has been voided, as provided in paragraph III.B.6.

4.    When the First Transfer Phase is complete, Wyndham shall promptly notify the Court and Class Counsel and Wyndham's right to void the Settlement pursuant to paragraph III.B.6. shall be extinguished.

5.      After the First Transfer Phase is complete, to the extent that Wyndham has not reached the 481 unit maximum or the 245.6 million cap on Vacation Credits, it shall have the right to either (i) continue to attempt to legally transfer the remaining WorldMark units, or substitute WorldMark units as provided in paragraph III.B.2., or (ii) declare that paragraph III.B.1. has been finally and fully performed.  When the Additional Transfer Phase is complete, Wyndham shall promptly notify the Court and Class Counsel that paragraph III.B.1. of this Settlement Agreement has been finally and fully performed.

6.      If Wyndham is unable, using commercially reasonable efforts, to obtain Regulatory Approval to transfer a minimum of 400 units as provided in paragraphs III.B.1. and 2., then Wyndham shall have the right to either void the Settlement or, provided that Wyndham has acted in good faith and with due diligence in its efforts to transfer the units, request approval from Class Counsel for up to an additional six (6) month time period within which to obtain Regulatory Approval to transfer additional units or substitute units, which approval shall not be unreasonably withheld by Class Counsel.  If, after the expiration of this additional time period, Wyndham still is unable, using commercially reasonable efforts, to obtain Regulatory Approval to transfer a minimum of 400 units, then Wyndham shall have the right to either void the Settlement or, provided that Wyndham has acted in good faith and with due diligence in its efforts to transfer the units, to request approval from the Court for an additional time period within which to obtain Regulatory Approval to transfer additional units.  If Wyndham exercises its right to void the Settlement pursuant to this provision, the Settlement will be null and void, except for the provisions of paragraphs V.4. and IX.1.  If Wyndham exercises its right to void the Settlement pursuant to this provision, the provisions of paragraph VII.E. shall be implemented pursuant to the Court's continuing jurisdiction.

7.      The WorldMark reservation system shall be modified as of nine (9)

months after the Effective Date, or as soon as practicable thereafter, such that the units being

transferred will no longer be available for occupancy by WorldMark Members; however, all

existing reservations as of that date will be honored.

**C.**     **Exchange of units in Anaheim, California resort area.**

When the First Transfer Phase is complete, Wyndham will legally and effectively

transfer twenty-one (21) units and corresponding Vacation Credits from WorldMark Anaheim

and will add weeks equivalent to twenty-one (21) units and corresponding Vacation Credits at

the WorldMark Dolphin's Cove Resort.  Also when the First Transfer Phase is complete,

Wyndham will legally and effectively cancel seven million Vacation Credits, which is the

difference between the number of Vacation Credits removed from Anaheim and the number of

Vacation Credits added at Dolphin's Cove, as set out in **Exhibit E** to this Settlement

Agreement.

**D.**     **Aggregate Changes in Credits and Units and Reserves.**

1.     The Parties agree that the maximum aggregate number of Credits to be

cancelled, removed by extraction, and added is computed approximately as follows:  22 million

cancelled + 262.5 million extracted (less 9.86 million added to WorldMark Dolphin's Cove) =

274.7 million net reduction in the number of Credits held by Wyndham for sale as WorldMark

Vacation Credits.  Wyndham's rights and obligations, including voting rights, with respect to

the Credits to be cancelled shall terminate upon cancellation of those Credits.  Wyndham shall

maintain sufficient unsold developer Credits to effectuate the purposes and terms of this

Settlement Agreement, upon entry of the Preliminary Approval Order and up to the time that the

terms of the Settlement Agreement have been performed or the Settlement is voided.

2.     Exterior reserves for future refurbishment and repair at resorts where

units are being extracted shall be transferred to, and held by, an independent association or

governing body responsible for exterior maintenance at the resort.  Interior reserves for future refurbishment and repair of the extracted units will be deposited with an escrow agent with instructions that (i) the interior reserve monies will be held in a federally-insured, interest-bearing account for the benefit of Wyndham; and (ii) the monies will be released as instructed by Wyndham, in such amounts and at such times as Wyndham determines, solely for the purpose of refurbishment and repair of the extracted units.

**E.** **Cessation of sales of TravelShare with Fun Time**.  Wyndham will cease selling new TravelShare memberships with Fun Time on the later of October 31, 2011 or 90 days after the Effective Date.  Sales of new TravelShare memberships without Fun Time may continue after such deadline.

**F.** **WorldMark budget**.  In formulating the WorldMark budgets, Wyndham, as manager of WorldMark, will use commercially reasonable efforts to drive efficiencies in order to minimize the impact, if any, of this Settlement on maintenance fees paid by the members of the Settlement Class.  Notwithstanding these efforts, Wyndham acknowledges that the WorldMark By-laws cap annual dues increases, and Wyndham, so long as it is operating under its current management agreement with WorldMark, agrees to bear any incremental costs that may result in a total annual increase above the annual cap.

**G.** **Election issues**.  Upon entry of the Preliminary Approval Order,  Wyndham will work in conjunction with the Board to establish and maintain a separate internet website for members to access during election cycles for the sole purpose of, and with content solely pertaining to, posting comments regarding Board candidates or WorldMark election matters, including proposals to be presented to members for a membership vote, subject to reasonable review and approval of any member postings by the Board or the Board's authorized designee.

Wyndham will notify WorldMark Members as to that website's existence via Destinations Magazine and the Insider Magazine.

**H.     Party Weekends**.  Wyndham may continue to book Party Weekends at WorldMark resorts, subject to the following condition: Wyndham will not book Party Weekends at any specific WorldMark resort during any particular calendar month in which the occupancy at the resort has exceeded 90% based on occupancy data from the same month in the preceding calendar year.

**IV.     NOTICE AND RELATED PROVISIONS.**

1.     Subject to Court approval, notice of the Settlement shall be provided to the Settlement Class as follows:

a.     Within ten (10) business days after entry of the Preliminary Approval Order, the Summary Notice shall be posted in a clear and prominent manner in a location accessible only to WorldMark Members on the WorldMark by Wyndham website (www.worldmarktheclub.com).  On WorldMark's home page, Members will be instructed how to access the Summary Notice and be linked to the sign-in page.  The Summary Notice shall remain on the WorldMark by Wyndham website through the date of the posting of the Settlement Notice.

b.     Within ten (10) business days after entry of the Preliminary Approval Order, Plaintiffs' Counsel shall post in a clear and prominent manner the Summary Notice on the Girard Gibbs LLP website (www.girardgibbs.com).  The Summary Notice shall remain on that website through the date of the posting of the Settlement Notice.

c.     Within fifteen (15) business days after entry of the Notice Order, the Settlement Notice shall be sent by U.S. mail, bulk rate postage, to all Settlement Class members.

d.      Within ten (10) business days after entry of the Notice Order, the Settlement Notice shall be posted in a clear and prominent manner in a location accessible only to WorldMark Members on the WorldMark by Wyndham website (www.worldmarktheclub.com).  On WorldMark's home page, Members will be instructed how to access the Settlement Notice and be linked to the sign-in page.  The Settlement Notice shall remain on the WorldMark by Wyndham website through the date of the Approval Hearing.

e.      Within ten (10) business days after entry of the Notice Order, Plaintiffs' Counsel shall post in a clear and prominent manner the Settlement Notice on the Girard Gibbs LLP website (www.girardgibbs.com).  The Settlement Notice shall remain on that website through the date of the Approval Hearing.

2.      Not later than five (5) days before the Approval Hearing, Plaintiffs' Counsel and Wyndham's Counsel each shall file a sworn declaration attesting that the Summary Notice and the Settlement Notice were disseminated to Settlement Class members in a manner consistent with the terms of this Settlement Agreement, the Preliminary Approval Order, and the Notice Order.

3.      All costs associated with the mailed Settlement Notice shall be paid as agreed in paragraphs V.1.-4. Each Party shall bear separately any costs associated with posting settlement notice on its respective website(s).

## V.      SETTLEMENT PAYMENT AND ADMINISTRATION COSTS.

1.      Wyndham agrees to pay, and will not object to Plaintiffs' application to the Court for, a fee award in an amount not to exceed five million dollars ($5,000,000) ("Fee Award"), which Fee Award shall include any representative awards and Plaintiffs' Counsels' attorneys' fees and expenses, including Plaintiffs' expert witness fees and other investigative or litigation expenses incurred by Plaintiffs, settlement administration fees and expenses, and fees

or expenses associated with disseminating Settlement Notice to the Settlement Class and the CAFA Notice to the appropriate authorities.  Wyndham shall pay the amount of any such Fee Award up to and including the sum of $5,000,000, provided that in no event shall Wyndham be required to pay any Fee Award or any monetary amount in settlement greater than $5,000,000, and Plaintiffs shall be responsible for paying all of the foregoing fees and expenses from such Fee Award, including all Settlement-Related Expenses, subject to the provisions and conditions below.

2.       In the event that Wyndham exercises its right to withdraw from the Settlement prior to the Approval Hearing and cancel this Settlement Agreement, pursuant to paragraph II.1.f., the Parties shall be responsible for TPA Costs as follows:  (a) Wyndham shall pay up to and including the first $400,000 of all such TPA Costs; (b) Plaintiffs shall pay only that portion of the TPA Costs that exceed $400,000.  Plaintiffs shall pay all other Settlement-Related Expenses, if any.

3.       In the event the Settlement is not granted Final Approval by the Court, TPA Costs shall be allocated and paid as follows:  (a) Plaintiffs shall pay up to and including the first $400,000 of all such TPA Costs; (b) Wyndham shall pay only that portion of the TPA Costs that exceed $400,000.  Any third-party administrator retained by Plaintiffs to provide settlement administration or to provide the Settlement Notice to the Settlement Class and notice to appropriate authorities under CAFA shall agree, in advance, to this arrangement for payment, and shall not seek to recover from the Parties, as joint and several obligors, for any administration costs in this action.

4.       Wyndham, at its sole expense, will use commercially reasonable efforts to obtain any Regulatory Approval that may be necessary for the Parties to effectuate the terms of the Settlement.  If Wyndham is unable to obtain Regulatory Approval as required by paragraph

III.B.6. of this Settlement Agreement, then Wyndham shall bear full responsibility for payment of all TPA Costs. If the Settlement is voided by Wyndham after the Effective Date, pursuant to the provisions of paragraph III.B.6, and the Court determines that further notice to the Settlement Class is required, then Wyndham shall pay all such notice costs.

5.      a.      Subject to the provisions of paragraphs II.1.f. and V.6. of this Settlement Agreement, within thirty (30) days after the Court enters a final Fee Award, Wyndham shall deposit the Fee Award amount (in no event to exceed $5,000,000) into an interest bearing escrow account held at a bank or financial institution to be designated by Plaintiffs' Counsel. Plaintiffs (and not Wyndham) shall be solely responsible and obligated for payment of any costs or fees associated with the escrow account, the escrow agent, the escrow agreement, and any transfer of funds into or out of the escrow account.

b.      In the event the Approval Order is appealed and reversed and such reversal becomes final (*i.e.*, all appeals and avenues of review are exhausted) ("Final Adverse Judgment"), or the Settlement is voided pursuant to the provisions of paragraph III.B.6., or the Settlement and this Settlement Agreement shall become void or cancelled for any other reason after the deposit is made, the full amount of the Fee Award together with any interest amounts that have accrued thereon shall be paid to Wyndham within five (5) business days of such Final Adverse Judgment or the voiding of the Settlement.

c.      The Fee Award amount and any interest amounts that have accrued thereon shall be transferred to Plaintiffs' Counsel for deposit into the Girard Gibbs LLP Attorney-Client Trust Account as follows:

(i)  When the First Transfer Phase has been completed pursuant to the provisions of paragraph III.B. of this Settlement Agreement, if Wyndham elects to continue to attempt to legally transfer the remaining WorldMark units or substitute WorldMark units, as

provided in paragraphs III.B.2. and III.B.5. of this Settlement Agreement, ninety percent (90%) of the Fee Award amount shall be transferred within ten (10) business days into the Girard Gibbs LLP Attorney-Client Trust Account.  The remainder of the Fee Award and any interest amounts that have accrued thereon shall be transferred into the Girard Gibbs LLP Attorney-Client Trust Account upon the earlier of the date the Additional Transfer Phase is complete or Wyndham elects to declare paragraph III.B. to be finally and fully performed.

(ii)  When the First Transfer Phase has been completed pursuant to the provisions of paragraph III.B. of this Settlement Agreement, if Wyndham elects to declare paragraph III.B. to be finally and fully performed, the total Fee Award amount and any interest amounts that have accrued thereon shall be transferred to the Girard Gibbs LLP Attorney-Client Trust Account.

6.  This Settlement Agreement and the Parties' Settlement is not contingent upon the Court's award of attorneys' fees, whatever that amount may be, provided the Fee Award is not in an amount in excess of $5,000,000.  Plaintiffs and their counsel waive any right to seek or to enforce or to execute on any Fee Award in excess of $5,000,000; and Wyndham's obligation to deposit amounts in an escrow account as provided in paragraph V.5. is conditioned upon the final Fee Award being an amount not to exceed $5,000,000.  In the event the Court renders a Fee Award or other monetary award in the aggregate amount greater than $5,000,000, Plaintiffs shall execute and enter a satisfaction of judgment upon receipt of $5,000,000, pursuant to paragraph V.5., and seek modification of any such Fee Award or monetary award to an aggregate amount of $5,000,000 or less.

## VI.    APPROVAL HEARING AND ORDER.

1.  Subject to the provisions of paragraph II.1.c., the Parties shall, within 90 days after the entry of the Preliminary Approval Order, jointly apply to the Court for entry of the

Notice Order and a scheduled date and time for the Approval Hearing or advise the Court that additional time may be needed before Settlement Notice can be issued to the Class and an Approval Hearing scheduled.  At the Approval Hearing, the Parties will move for final approval of the Settlement set forth in this Settlement Agreement and entry of the Approval Order, and Class Counsel will move for approval of the Fee Award.

2.    a.    As part of the application described in paragraph VI.1., the Parties will ask the Court to enter an order requiring any Settlement Class member who wishes to be heard at the Approval Hearing or to have his or her objection considered by the Court, to file with the Court a written notice of objection and, if applicable, notice of the member's intent to appear at the Approval Hearing, and to provide copies of same to Plaintiffs' Counsel and Wyndham's Counsel, at least ten (10) days before the Approval Hearing.  To state a valid objection to the Settlement or the requested Fee Award, an objecting Settlement Class member must provide the following information in his or her written objection: (i) the member's full name and current address and telephone number, (ii) the member's WorldMark account number, (iii) the member's signature, and (iv) a specific and clear statement of the position(s) the objector wishes to assert, including the factual and legal grounds for the position.  The notice of intent to appear must include copies of any papers, exhibits, or other evidence that the objecting Settlement Class member (or his or her counsel) will present to the Court in connection with the Approval Hearing.

b.    Subject to Court approval, the Parties agree that any Settlement Class member who does not provide a notice of intent to appear or of written objection in compliance with the deadlines set forth herein and in the Notice Order will be deemed to have waived any objections and opposition to the fairness, adequacy, and reasonableness of the Settlement and

shall not be permitted to object, present argument, or comment at the Approval Hearing, either

individual or through counsel or other representative.

       c.    These agreed-upon procedures and requirements for written objection

and written notice of intent to appear in connection with the Approval Hearing are intended to

ensure the efficient administration of justice and orderly presentation of any Settlement Class

member's objection to the Settlement Agreement, in accordance with the due process rights of

all members.

       3.    If the Settlement is approved as agreed to by the Parties, the Parties will move

jointly for entry of the Approval Order.  Should the Court disapprove of or modify the

Settlement or this Settlement Agreement or any term or provision of this Settlement

Agreement, or fail to approve this Settlement Agreement in its entirety, the Settlement is

voidable by either party.  Any Party voiding the Settlement pursuant to this provision shall give

written notice to counsel for the other Parties.

## VII.    RELEASES, DISMISSAL OF ACTION AND STATE CASE, AND JURISDICTION OF COURT.

### A.    Acknowledgement With Respect To Credit Values At Future WorldMark Resorts.

       1.    In consideration of the terms and undertakings herein, it is acknowledged

and understood by the Parties as follows:  The existing WorldMark resorts have a range of

credit values.  Wyndham, in its role as developer, may consider, among other factors (such as

owner demand, cost and other factors), the range of credit values at existing WorldMark resorts

in exercising its reasonable discretion pursuant to Section 3.4(a) of the Declaration of Vacation

Ownership to allocate credit values to each unit of any new WorldMark resort.  Neither past

practices nor credit values at existing resorts shall restrict or limit Wyndham's reasonable

discretion to set credit values at any new resort or require the new resort to be at the same level

as credit values at any existing resorts.  Wyndham's consideration of the credit values at

existing WorldMark resorts in allocating credit values to units at any new WorldMark resort

shall be a valid, reasonable, and sufficient exercise of its discretion under Section 3.4(a) of the

Declaration of Vacation Ownership.  Nothing herein shall be construed to amend the

WorldMark Governing Documents.

        2.     By the Effective Date, Wyndham shall include in its sales documentation

(for upgrade sales and new sales of Vacation Credits) notice that the credit values at future

WorldMark resorts, if any, may be higher or lower than the credit values at existing

WorldMark resorts.

### B.     Release Of Claims.

        1.     Upon the Effective Date, for and in consideration of the terms and

undertakings herein, Plaintiffs and all members of the Settlement Class who do not timely elect

to opt out of the Settlement, for themselves and for their assigns, agents, representatives,

attorneys, heirs, executors, administrators, beneficiaries, and privies, release Wyndham, its

predecessors and successors in interest (including but not limited to Cendant Corporation {now

known as Avis Budget Group, Inc.}, Wyndham Worldwide Corporation, Wyndham Vacation

Ownership, Inc., and their respective subsidiaries), and any of its present or former subsidiaries,

divisions, parent companies, affiliates, officers, directors, employees, trustees, principals,

attorneys, agents, representatives, shareholders, members, partners, and insurers (collectively,

"Released Persons"), as well as any person acting or purporting to act on behalf of those in

privity with such Released Persons, from all manner of actions, causes of action, lawsuits,

claims, counterclaims, damages, debts, obligations, liabilities, promises, defenses, agreements,

costs, expenses (including attorneys' fees), and demands of whatever kind or nature, whether

based on statute (including without limitation the California statutes referred to as the Unfair

Competition Law, the Consumers' Legal Remedies Act, and the Vacation-Ownership

Timeshare Act), tort, contract, or other theory of recovery, whether known or unknown,

suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent,

liquidated or unliquidated, that, as of the date that the Approval Order is entered: (i) arise out of

or are related in any way to any or all of the acts, omissions, facts, matters, transactions, or

occurrences that were directly or indirectly alleged, asserted, described, set forth, or referred to

in the Action; (ii) arise from or are based on the allegations, transactions, facts, matters,

occurrences, representations or omissions alleged, involved, set forth or referred to in the

complaints filed in the Action with respect to the right, authority or discretion of Wyndham, or

its predecessors or successors in interest, to formulate, allocate, establish, or set (a) Credit

Values and (b) the number of weeks worth of Vacation Credits to be sold or set aside, at

Vacation Properties owned and operated by WorldMark; or (iii) any claim that was or could

have been asserted against Wyndham or any Released Person by the Class Representatives or

any member of the Settlement Class in the Action or in the State Case  (collectively, "Released

Claims").  The Class Representatives and all members of the Settlement Class who do not

timely elect to opt out of the Settlement expressly waive and/or are deemed to waive all rights

under California Civil Code Section 1542, which provides

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH
> THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN
> HIS OR HER FAVOR AT THE TIME OF EXECUTING THE
> RELEASES, WHICH IF KNOWN BY HIM OR HER MUST HAVE
> MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE
> DEBTOR.

The Parties acknowledge that the foregoing waiver and release was bargained for and is a

material element of the Settlement Agreement.

2.      Except as specifically set forth in this Settlement Agreement, neither the

Settlement nor this Settlement Agreement in any way alters, merges, terminates, bars, waives,

voids, satisfies, novates, abrogates, diminishes, releases, or discharges the indebtedness or other

contractual obligation of any Class Representative or member of the Settlement Class regarding

the full, complete, and timely performance of any and all terms of any loan, note, mortgage,

security deed, agreement, or contract, oral or written, entered into as between any Class

Representative or member of the Settlement Class and any Released Person, or any person

acting or purporting to act on behalf of those in privity with such Released Persons, in

conjunction with the purchase, financing, or ownership of WorldMark Vacation Credits

(including without limitation any dues or fee obligation) or any matter, incident, or benefit

related thereto (including without limitation TravelShare membership).

       3.      Upon the Effective Date, for and in consideration of the terms and

undertakings herein, Wyndham releases Plaintiffs Clarke and Rebecca Wixon, Norman and

Barbara Wixon, and Kandice Scattolon and Plaintiffs' Counsel from any and all claims or

causes of action that were, or could have been, asserted by Wyndham pertaining to the Action

or the State Case ("Additional Released Claims").  Wyndham recognizes that, even if it later

discovers facts in addition to or different from those which it now knows or believes to be true,

Wyndham nevertheless agrees that, upon entry of judgment, Wyndham fully, finally and

forever settles and releases any and all of the Additional Released Claims.  Additional Released

Claims do not include any claims, counterclaims, or cross-claims Wyndham may have, if any,

in the State Case with respect to WorldMark or Respondent Miller.   Additional Released

Claims also do not include any liabilities, claims, rights, suits, or causes of action any Party

hereto may assert to enforce the terms of this Settlement Agreement.  The Parties acknowledge

that the foregoing waiver and release was bargained for and is a material element of the

Settlement Agreement.

       4.      Released Claims do not include any claims, counterclaims, or cross-

Case 3:07-cv-02361-JSW   Document 66   Filed 07/21/10   Page 53 of 13

claims Wyndham may have, if any, in the State Case.  Released claims also do not include any liabilities, claims, rights, suits or causes of action either Party may assert to enforce the terms of this Settlement Agreement.

**C.     Covenant Not To Sue.**

1.     Plaintiffs and all members of the Settlement Class who do not timely elect to opt out of the Settlement further agree and covenant not to sue, bring any proceeding or action, or participate in any proceeding or action in an individual, joint, representative, or class capacity, in law or in equity, including without limitation any action in any court or arbitration forum, whether by original process or demand, claim, counterclaim, cross-claim, third-party process, interpleader, claim for indemnity or contribution, or otherwise, against any of the Released Persons for any Released Claim or any other matter settled in this Settlement Agreement.

2.     Wyndham further agrees and covenants not to sue, bring any proceeding or action, or participate in any proceeding or action in an individual, joint, representative, or class capacity, in law or in equity, including without limitation any action in any court or arbitration forum, whether by original process or demand, claim, counterclaim, cross-claim, third-party process, interpleader, claim for indemnity or contribution, or otherwise, against Plaintiffs Clarke Wixon, Rebecca Wixon, Norman Wixon, Barbara Wixon or Kandice Scattolon or their Counsel for any Additional Released Claim or any other matter settled in this Settlement Agreement.

**D.     Dismissal.**

Upon entry of the Approval Order, (i) the Action shall be dismissed, with prejudice, subject to the continuing jurisdiction of this Court and the provisions of paragraph VII.E.; and (ii) the Wixons shall dismiss with prejudice their complaint in intervention in the State Case

and withdraw from the State Case, including any proceedings in any California appellate court. Further, upon issuance of the Approval Order: (i) Wyndham shall not be subject to liability or expense of any kind to any Settlement Class member who does not opt out of the Settlement for reasons related to the Action or State Case, except as set forth herein; and (ii) Settlement Class members who do not opt out of the Settlement shall be permanently barred and enjoined from initiating, asserting, or prosecuting any and all Released Claims against Wyndham or any other Released Person, subject to the provisions of paragraph VII.E.

> ### E.    Required Actions If Settlement Is Voided After Effective Date.

If the Settlement is voided by Wyndham after the Effective Date pursuant to the provisions of paragraph III.B.6., the Parties shall, within ten (10) business days, move for an Order from the Court pursuant to the Court's continuing jurisdiction that: (i) the judgment and dismissal of the action be vacated; (ii) Plaintiffs' Fifth Amended Class Action Complaint and Wyndham's Answer thereto be reinstated as the operative pleadings and the record be reinstated in the litigation; (iii) the Parties shall be restored to their respective positions in the litigation as of July 2, 2010; (iv) all Settlement Class members shall be restored to their respective positions as of July 2, 2010, (v) the parties shall confer with respect to a new joint Case Management Statement; and (vi) notice to the Settlement Class shall be provided, if deemed necessary by the Court.

## VIII.   REPRESENTATIONS, WARRANTIES, AND COVENANTS.

1.    Plaintiffs' Counsel, who are signatories hereof, represent and warrant that they have the authority, on behalf of Plaintiffs, to execute, deliver, and perform this Settlement Agreement and to consummate all of the transactions contemplated hereby.  This Settlement Agreement has been duly and validly executed and delivered by Plaintiffs' Counsel and Plaintiffs and constitutes their legal, valid, and binding obligation.

2.      Wyndham, through its undersigned counsel, represents and warrants that it has
the authority to execute, deliver, and perform this Settlement Agreement and to consummate all
of the transactions contemplated hereby; provided, however, that the Parties acknowledge that
certain approvals may be required of third parties, as set forth herein, which are outside the
control of Wyndham.  The execution, delivery, and performance by Wyndham of this
Settlement Agreement and its consummation of the actions contemplated hereby have been
duly authorized by all necessary corporate action on the part of Wyndham.  This Settlement
Agreement has been duly and validly executed and delivered by Wyndham's Counsel and
Wyndham and constitutes their legal, valid, and binding obligation.

3.      This Settlement Agreement is entered into solely for purposes of compromise
and settlement.  In the event the Approval Order is not entered or is subsequently reversed on
appeal or the Effective Date does not occur for any reason or the Settlement Agreement is
voided pursuant to paragraph III.B.6., the Parties' Settlement and this Settlement Agreement,
including any releases or dismissals hereunder, are canceled and null and void, and no term or
condition of this Settlement Agreement or any draft thereof, or the discussion, negotiation,
documentation, or other part or aspect of the Parties' settlement discussions, shall have any
force or effect, except as expressly set forth in this Settlement Agreement; nor shall any such
matter be admissible in evidence for any purpose, or used for any purposes whatsoever, in the
Action, the State Case, or any other action or proceeding, and all Parties shall be restored to
their prior rights and positions as if the Settlement Agreement had not been entered into.

## IX.     **ADDITIONAL PROVISIONS.**

1.      This Settlement Agreement may not be used in evidence and is not, and shall not
at any time be construed or deemed to be, an admission or concession by Wyndham with
respect to any alleged wrongdoing, violation of law, breach of contract, breach of any covenant,

liability, fault, or omission of any kind whatsoever, regardless of whether this Settlement Agreement results in entry of the Approval Order as contemplated herein. Wyndham denies all of the allegations, counts, and claims made by Plaintiffs in connection with the Action and the State Case. Neither this Settlement Agreement nor any class certification pursuant to it shall constitute, in this or in any other proceeding, an admission by Wyndham, or evidence or a finding of any kind, that any requirement for class certification is satisfied with respect to the Action, or any other litigation, except for the limited purpose of settlement pursuant to this Settlement Agreement. This Settlement Agreement is made with the Parties' express understanding and agreement that, (a) under applicable laws, it is appropriate that a class be certified for settlement purposes only (*i.e.*, without needing to satisfy fully the standard required for certification of the matter for litigation purposes); and (b) Wyndham contests and denies that any class, including the proposed Settlement Class, is suitable for certification as a class under the law of any jurisdiction, other than for the purposes of this Settlement Agreement. This provision shall survive any voiding of this Settlement Agreement.

2.      The Parties agree that the settlement consideration and other terms of the Settlement set forth in this Settlement Agreement were negotiated at arm's length in good faith by the Parties, and reflect a Settlement that was reached voluntarily after consultation with experienced legal counsel.

3.      The Parties agree to cooperate in good faith in the execution and implementation of the Settlement, and may mutually agree in writing to an amendment of the Settlement Agreement if deemed reasonable and necessary to effectuate the purpose and intent of the Settlement. The Parties agree that the terms of this Settlement Agreement can be implemented by amendment of the WorldMark Declarations of Vacation Ownership for the specific resorts affected by this Settlement Agreement and the execution of other documents

necessary to implement the terms of this Settlement Agreement without further vote of the WorldMark Membership.

4.       This Settlement Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed on behalf of all Parties or their successors-in-interest.

5.       The headings in this Settlement Agreement are used for the purpose of convenience only and are not meant to have legal effect.

6.       The administration and consummation of the Settlement set forth in this Settlement Agreement will be under the authority of the Court in the Action, and the Court will retain jurisdiction for, among other things, entering orders concerning enforcement of this Settlement Agreement.

7.       The waiver by one Party of any breach of this Settlement Agreement by any other Party will not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement.

8.       The exhibits to this Settlement Agreement are an integral part of the Settlement and are expressly incorporated in and made a part of this Settlement Agreement.  This Settlement Agreement and its exhibits constitute the entire agreement among the Parties concerning the Settlement of the Action; and no representations, warranties, or inducements have been made by any Party concerning this Settlement Agreement and its exhibits other than those contained and memorialized in such documents.  This Settlement Agreement supersedes all prior understandings, communications, and agreements with respect to the subject of this Settlement Agreement.

9.       This Settlement Agreement may be executed in one or more counterparts.  All executed counterparts and each of them will be deemed to be one and the same instrument,

provided that the Parties' respective counsel exchange among themselves all signed

counterparts.

10.     This Settlement Agreement will be binding on, and inure to the benefit of, all

representatives, heirs, successors, and assigns of the Parties.

11.     The construction, interpretation, operation, effect, and validity of this Settlement

Agreement, and all documents necessary to effectuate it, will be governed by the internal laws

of the State of California without giving effect to any choice or conflict of law provision or rule

that would cause the application of the laws of any other jurisdiction.

12.     Except as otherwise provided in this Settlement Agreement, each Party shall

bear his, her, or its own costs of litigation and the Settlement.

13.     The Parties reserve the right, by agreement and subject to Court approval, to

grant any reasonable extension of time that might be necessary to carry out the provisions of

this Settlement Agreement, as well as to correct any inadvertent, non-substantive mistakes or

typographical errors contained in any of the Settlement papers.

14.     Proper notice shall be given to Plaintiffs and Wyndham of all applications for

Court approval or Court orders required under this Settlement Agreement.

15.     The determination of the terms of, and the drafting of, this Settlement

Agreement has been by mutual agreement after negotiation, with consideration by and

participation of all Parties and their counsel.  Since this Settlement Agreement was drafted with

the participation of all Parties and their counsel, the presumption that ambiguities shall be

construed against the drafter does not apply.  The Parties were represented by competent and

effective counsel throughout the course of settlement negotiations and in the drafting and

execution of this Settlement Agreement, and there is no disparity in bargaining power between

the Parties to this Settlement Agreement.

16.     This Settlement Agreement constitutes the entire, fully integrated agreement among the Parties and cancels and supersedes all prior written and unwritten agreements and understandings pertaining to the Parties' Settlement.

17.     Plaintiffs' Counsel and Wyndham's Counsel agree to cooperate fully with one another in seeking entry of the Preliminary Approval Order, the Notice Order, the Court's approval of this Settlement Agreement and the Settlement set forth herein, and entry of the Approval Order, and to promptly agree on and execute all such other documentation as may be reasonably required to obtain the Court's approval of the Settlement.

18.     The Parties agree that any disputes regarding the meaning of the terms and conditions of this Settlement Agreement, the Parties' rights and obligations under this Settlement Agreement, or the manner in which any issue or dispute arising under this Settlement Agreement should be resolved, shall be submitted to the Court for resolution.

19.     All notices to the Parties or Counsel required by this Settlement Agreement shall be made in writing and communicated by electronic and regular mail to the following addresses (unless one of the Parties subsequently designates one or more other designees):

> Plaintiffs' Counsel:
>
> Jonathan K. Levine
> Elizabeth C. Pritzker
> GIRARD GIBBS LLP
> 601 California Street, Suite 1400
> San Francisco, California 94108
> Telephone: (415) 981-4800
> Facsimile: (415) 981-4846
> jkl@girardgibbs.com; ecp@girardgibbs.com
>
> James Helfrich
> GERSH & HELFRICH, LLP
> 1860 Blake Street, Suite 300
> Denver, Colorado 80202
> Telephone: (303) 293-2333
> Facsimile: (303) 293-2433
> jh@ghlawoffice.com

Case 3:07-cv-02361-JSW   Document 669   Filed 02/11/10   Page 60 of 73

Wyndham's Counsel:

J. Kirk Quillian
A. William Loeffler
TROUTMAN SANDERS LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia  30308-2216
Telephone:  (404) 885-3000
Facsimile:  (404) 885-3900
kirk.quillian@troutmansanders.com
bill.loeffler@troutmansanders.com

Stephen M. Hankins
SCHIFF HARDIN LLP
One Market, Spear Street Tower, 32nd Floor
San Francisco, California  94105
Telephone:  (415) 901-8700
Facsimile:  (415) 901-8701
SHankins@schiffhardin.com

IN WITNESS WHEREOF, the Parties have executed and caused this Settlement

Agreement to be executed by their duly authorized attorneys below.

Dated: October 21, 2010

      BY:

Jonathan Levine
Elizabeth C. Pritzker
GIRARD GIBBS LLP
Eric H. Gibbs
Elizabeth C. Pritzker
601 California Street
San Francisco, CA 94108

James Helfrich
GERSH & HELFRICH, LLP
1860 Blake Street, Suite 300
Denver, Colorado 80202

*Attorneys for Plaintiffs and the Class*

Dated: October 21, 2010

      BY:

J. Kirk Qullian
A. William Loeffler
TROUTMAN SANDERS, LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA 30308-2216

Stephen M. Hankins
SCHIFF HARDIN LLP
One Market, Spear Street Tower, 32nd Floor
San Francisco, California  94105
Telephone:  (415) 901-8700
Facsimile:  (415) 901-8701

*Attorneys for Wyndham Resort
Development Corporation*

IN WITNESS WHEREOF, the Parties have executed and caused this Settlement Agreement to be executed by their duly authorized attorneys below.

Dated: October 21, 2010

      BY:                         _____

Jonathan Levine
Elizabeth C. Pritzker
GIRARD GIBBS LLP
Eric H. Gibbs
Elizabeth C. Pritzker
601 California Street
San Francisco, CA 94108

James Helfrich
GERSH & HELFRICH, LLP
1860 Blake Street, Suite 300
Denver, Colorado 80202

*Attorneys for Plaintiffs and the Class*

Dated: October __, 2010

      BY:                         _____

J. Kirk Qullian
A. William Loeffler
TROUTMAN SANDERS, LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA 30308-2216

Stephen M. Hankins
SCHIFF HARDIN LLP
One Market, Spear Street Tower, 32nd Floor
San Francisco, California  94105
Telephone:  (415) 901-8700
Facsimile:  (415) 901-8701

*Attorneys for Wyndham Resort Development Corporation*

1

2       IN WITNESS WHEREOF, the Parties have executed and caused this Settlement

3  Agreement to be executed by their duly authorized attorneys below.

4

5  Dated: October 21, 2010

6       BY:

_____

7                      Jonathan Levine
Elizabeth C. Pritzker
GIRARD GIBBS LLP
Eric H. Gibbs

8

9                      Elizabeth C. Pritzker
601 California Street
San Francisco, CA 94108

10

11

_____

12                     James Helfrich
GERSH & HELFRICH, LLP
1860 Blake Street, Suite 300

13                     Denver, Colorado 80202

14                     *Attorneys for Plaintiffs and the Class*

15

16  Dated: October 21, 2010

17       BY:

18                     J. Kirk Quillian
A. William Loeffler

19                     TROUTMAN SANDERS, LLP
5200 Bank of America Plaza

20                     600 Peachtree Street, N.E.
Atlanta, GA 30308-2216

21

22                     Stephen M. Hankins
SCHIFF HARDIN LLP

23                     One Market, Spear Street Tower, 32nd Floor
San Francisco, California 94105

24                     Telephone: (415) 901-8700
Facsimile: (415) 901-8701

25

26                     *Attorneys for Wyndham Resort
Development Corporation*

27

28

Case 3:07-cv-02361-JSW   Document 669   Filed 02/17/10   Page 45 of 93

# EXHIBIT A

**DRAFT**

October 21, 2010

Chris W. Neri
Assistant Commissioner/Subdivisions
California Department of Real Estate
P.O Box 187005
2201 Broadway
Sacramento, California 95818-7005

      Re:     **Wixon v. Wyndham Resort Development Corporation**
               **United States District Court, Northern District of California**
               **Docket No. C-07-02361-JSW (BZ)**

Dear Mr. Neri:

Pursuant to Section 1715 of Title 28 of the United States Code (28 U.S.C. § 1715, the "Class Action Fairness Act of 2005"), this letter and its enclosures shall constitute notice of a proposed class action settlement in the above-referenced action. The action and proposed settlement involves a points-based time-share plan that may be subject to the jurisdiction of your office.

The time-share plan is commonly known as WorldMark, The Club ("WorldMark"). Wyndham Resort Development Corporation ("Wyndham") develops resorts for WorldMark. Pursuant to a written agreement with WorldMark, Wyndham transfers legal ownership of the resort properties it develops to WorldMark and, in exchange, Wyndham has the exclusive right to market memberships in the Club and to the proceeds from the sale of membership in the Club.

The proposed settlement, if approved, will effectuate changes in the WorldMark time-share plan. Specifically, credit values required to make reservations at specified WorldMark resorts will be reduced, and Wyndham will cancel credits associated with these reductions so that they will no longer be available for sale to the public. Additionally, certain units at WorldMark resorts that do not have high overall vacation credit usage will be removed from the WorldMark resort system, and transferred back to Wyndham or its designee. Credits associated with removed units also will be cancelled so that they will no longer be available for sale to the public. Wyndham will add up to 21 units at WorldMark's Dolphin's Cove resort in Anaheim, California to replace an equivalent number of higher credit value units that will be removed from WorldMark's Anaheim resort and transferred back to Wyndham or its designee. The number of units and credits remaining in the WorldMark system after the settlement is implemented will be sufficient to ensure that the number of accommodations available to WorldMark member usage will be equal to or greater than the number of vacation credits sold to the public.

In the event the settlement does not receive final court approval and final regulatory approval, the above-described changes to the WorldMark time-share plan will not occur.

The action and the proposed settlement are evidenced by the following enclosed materials:

1. Plaintiffs' Sixth Amended Class Action (operative) Complaint on Behalf of Nationwide Settlement Class;

To:     Chris W. Neri
Re:     **Wixon, et al . v. Wyndham Resort Development Corp. et al.**
October 21, 2010
Page 2

    2.  The parties' Settlement Agreement and Release, including exhibits thereto;

    3.  The Proposed Order of the United States District Court for the Northern District of California Granting Preliminary Approval of Class Action Settlement, which was filed with the Court on October 21, 2010; and

    4.  The Summary Notice for members of WorldMark, The Club that will be posted on the WorldMark member web site and on the class counsel's web site, as directed by the court.

Also enclosed with this letter is a chart prepared by Wyndham identifying the number of class members in each State encompassed within the proposed settlement that will be provided with Notice of the Class Action Settlement, and their percentage of the Class.

If, upon review of the enclosed materials, you have any questions or concerns regarding the proposed settlement or its implementation, please contact me directly prior to [date of expiration of 90-day CAFA period] to discuss these matters.

Sincerely,

[NAME]
[TITLE]
Wyndham Resort Development Corporation

cc:     J. Kirk Quillian, Troutman Sanders LLP, attorneys for Wyndham Resort Development Corp.
Jonathan K. Levine, Girard Gibbs LLP, Class Counsel for Plaintiffs and the Class

Case 3:07-cv-02361-JSW   Document 661   Filed 02/17/10   Page 68 of 73

1
2
3
4
5
6
7
8
9
10
11
12
13
14
# EXHIBIT B
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1 | Jonathan K. Levine (State Bar No. 220289)
   jkl@girardgibbs.com
2 | Elizabeth C. Pritzker (State Bar No. 146267)
   ecp@girardgibbs.com
3 | Todd I. Espinosa (State Bar No. 209591)
   tie@girardgibbs.com
4 | **GIRARD GIBBS LLP**
5 | 601 California Street, 14th Floor
San Francisco, California  94108
6 | Telephone:  (415) 981-4800
Facsimile:  (415) 981-4846
7 |
8 | Attorneys for Individual and Representative
Plaintiffs Clarke and Rebecca Wixon, Norman
9 | and Barbara Wixon, Kandice Scattolon and the Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Clarke and Rebecca Wixon, Norman and Barbara Wixon, and Kandice Scattolon, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>       v.<br><br>Wyndham Resort Development Corp. (f/k/a Trendwest Resorts, Inc.),<br><br>        Defendant. | Case No. C 07 2361 JSW (BZ)<br><br>**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>CLASS ACTION<br><br>Date:   December 3, 2010<br>Time:   9:00 a.m.<br>Courtroom:   Hon. Jeffrey S. White |

This matter came before the Court for hearing on December 3, 2010, on the joint application of Plaintiffs Clarke and Rebecca Wixon, Norman and Barbara Wixon and Kandice Scattolon ("Plaintiffs") and Defendant Wyndham Resort Development Corporation ("Wyndham") (Plaintiffs and Wyndham are referred to collectively as the "Parties") for preliminary approval of the proposed Settlement Agreement and Release ("Settlement"), resolving the class claims asserted in the litigation against Wyndham.  In their joint application, the Parties further request (i) leave for Plaintiffs to file a Sixth Amended Complaint to conform the class definition set forth in the pleadings with that contained in the proposed Settlement, (ii) preliminary certification of a settlement class, and (iii) approval of the form of Summary Notice to be electronically published to the settlement class.

The Court having considered all papers filed and proceedings had herein, and otherwise being fully informed in the premises and good cause appearing therefore, **IT IS HEREBY ORDERED** that:

1.      Solely for purposes of the proposed Settlement, the Court grants Plaintiffs leave to file a Sixth Amended Complaint to conform the class definition and class allegations to the proposed Settlement, which is attached as Exhibit 1 to the Parties' Joint Application.  Wyndham is excused from filing an answer or any other responsive pleading with respect to the Sixth Amended Complaint, without prejudice to Wyndham and its right to deny allegations and otherwise respond under the Federal Rules of Civil Procedure, absent this Settlement becoming effective.

2.      The Court previously entered an order certifying a litigation class pursuant to Fed. R. Civ. P. 23.  (*See* Dkt No. 420.)   For the reasons stated in the Court's prior class certification order, the Court finds that the Parties' proposed settlement class satisfies the prerequisites of numerosity, commonality, typicality, and adequacy of representation, and further finds that common questions predominate over any questions affecting only individual members such that resolution on a class basis is superior to other available methods for a fair resolution of this controversy.  Fed. R. Civ. P. 23(a), (b). Accordingly, the Court preliminarily certifies the following class for purposes of the proposed Settlement (the "Settlement Class"):

> All Current WorldMark, The Club members as of Preliminary Approval.  Excluded from the Class are Defendants, any entity in which any Defendant has or had a controlling interest, any officers or directors of Wyndham, the legal representatives, heirs, successors, and assigns of Defendants, and any judge assigned to this action and his or her immediate family.

1

3.       Capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Settlement.

4.       The Court preliminarily approves the proposed Settlement, finding that its terms appear sufficiently fair, reasonable, and adequate to warrant dissemination of notice of the proposed Settlement to the Settlement Class.  The Court finds that the proposed Settlement contains no obvious deficiencies and that the parties entered into the proposed Settlement in good faith, following arms-length negotiation between their respective counsel.

5.       The Court hereby approves the form and procedures for disseminating a Summary Notice of Class Action Settlement ("Summary Notice") to the Settlement Class set forth in the proposed Settlement.  Within ten (10) business days after entry of this Order:  (a) Wyndham shall cause the Summary Notice to be posted in a clear and prominent manner in a location accessible only to WorldMark members on the WorldMark by Wyndham website (www.worldmarktheclub.com); and (b) Plaintiffs' counsel shall cause the Summary Notice to be posted in a clear and prominent manner on the Girard Gibbs LLP firm website (www.girardgibbs.com).  The Summary Notice shall remain on these websites until formal settlement notice is issued to the Settlement Class or until such other date as the Court may order.

6.       Wyndham shall comply with the requirements of 28 U.S.C. § 1715(b) and timely serve notice of the proposed Settlement upon the appropriate federal official and the appropriate State official of each State in which a Settlement Class member resides.  Wyndham shall also provide copies of its submissions to Plaintiffs' counsel.

7.       On or before _____, 2011, the Parties shall submit a report to the Court advising of: (i) the WorldMark Board's consent to the Settlement; and (ii) the status of the Parties' efforts to obtain Regulatory Approval to implement the terms of the Settlement.  If, at that time, Wyndham attests that Regulatory Approval is, in Wyndham's estimate, likely to be attained, the Parties may propose a timeline and procedure for providing formal settlement notice to the Settlement Class, and propose a hearing and schedule for final settlement approval by the Court.

//

//

1        8.      A further status conference shall be held on _____, 2011.

2  **IT IS SO ORDERED.**

3

4  Dated:_____, 2010

5                                          _____
                                           Honorable Jeffrey S. White
6                                          United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. C 07 2361 JSW (BZ)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT C

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Clarke and Rebecca Wixon et al. v. Wyndham Resort Development Corp. | Case No. C 07-02361 JSW (BZ)<br><br>**SUMMARY NOTICE OF CLASS ACTION SETTLEMENT** |

### TO:   OWNERS OF WORLDMARK, THE CLUB
### THIS SUMMARY NOTICE RELATES TO A PROPOSED SETTLEMENT OF A CLASS ACTION LAWSUIT AGAINST WYNDHAM RESORT DEVELOPMENT CORP.  PLEASE READ THIS NOTICE CAREFULLY.  IT CONTAINS IMPORTANT INFORMATION.

1.  **PURPOSE OF THIS SUMMARY NOTICE.**  This notice is being provided at the direction of the United States District Court, Northern District of California ("Court") to inform you about a proposed settlement ("Settlement") of litigation involving Wyndham Resort Development Corp. ("Wyndham") and WorldMark, The Club ("WorldMark"). If approved by the Court, the Settlement will fully, finally and forever resolve the litigation against Wyndham on the terms and conditions summarized in this notice.

    The Court has not yet set a date for a hearing to approve the Settlement ("Approval Hearing").  When the Court does set the date for the Approval Hearing, the parties will mail a formal Notice of Class Action Settlement to all WorldMark owners that will advise owners of the date of the Approval Hearing and of their rights to comment on any provision of the Settlement, to appear at the Approval Hearing, or to exclude themselves from the Settlement.

2.  **LITIGATION OVERVIEW.**  In 2007, four WorldMark owners ("Plaintiffs") filed a class action lawsuit, U.S. District Court Case No. C-07-02361 JSW (BZ), on behalf of certain WorldMark owners against Wyndham, alleging that Wyndham, as the developer and manager for the WorldMark resorts, engaged in certain acts that violate the WorldMark governing documents and California law.  Among other things, the lawsuit challenged the setting of credit values by Wyndham at 12 WorldMark resorts, Wyndham's implementation of TravelShare and Fun Time reservations, the reduction in the number of weeks set aside and not sold at new WorldMark resorts, and Wyndham's use of WorldMark resorts for sales and marketing purposes.  Wyndham contests and denies the alleged claims.

3.  **THERE HAS BEEN NO FINDING OF WRONGDOING OR LITIGATION SUCCESS.**  The Court has not decided the merits of the claims or defenses in the litigation. This notice does not, and is not intended to, imply that there have been or would be any findings of violation of law by Wyndham. Wyndham denies all liability or wrongdoing alleged in the litigation. It believes the Settlement is desirable to avoid the substantial expense, burden, risk, distraction, and uncertainty of protracted litigation. All parties believe the Settlement confers substantial benefits and is in the best interests of WorldMark and WorldMark owners.

4.  **THE SETTLEMENT.** The terms and conditions of the proposed Settlement are set forth in the parties' Settlement Agreement and Release, which has been filed with the Court. The Settlement, if approved, will lower credit values at certain resorts, cancel certain Vacation Credits held by Wyndham as unsold developer credits, remove underutilized units from the WorldMark system, and make other changes to the WorldMark time-share plan that may require consent of the WorldMark Board and approval from various regulatory authorities.  Wyndham has notified regulatory authorities of the settlement, and will periodically report to Class Counsel regarding the status of efforts to obtain regulatory approval.  The following description of the terms of the proposed Settlement is a summary only:

    A.  ***Credit Cancellation and Reduction of Credit Values at Certain Resort.*** If the Settlement is approved, and once the Settlement is effective, Wyndham will cancel 22 million WorldMark Vacation Credits that it currently holds as unsold developer credits.  Cancelled Vacation Credits will no longer be available for sale, will not be sold, and cannot be used in connection with voting in any WorldMark election.  The 22 million cancelled Vacation Credits will be allocated to reduce peak "red season" credit values in certain categories of units at certain of the resorts at issue in the lawsuit, as follows:

| Resorts Selected for Red Season Credit Value Reductions | Unit Type | Number of Units | Number of Season Weeks | Old Red Season Credit Value | New Reduced Red Season Credit Value | Credits Canceled To Permit Credit Reductions |
|---|---|---|---|---|---|---|
| Anaheim | Studio | 10 | 50 | 11,000 | 10,500 | |
| | 1 bd | 62 | 50 | 14,000 | 13,000 | |
| | 2 bd | 122 | 50 | 16,500 | 16,000 | 6,400,000 |
| Camlin | 1 bd | 57 | 31 | 12,000 | 11,500 | 883,500 |
| Las Vegas – Tropicana | 2 bd | 36 | 50 | 13,000 | 12,500 | |
| | 2 bd dlx | 48 | 50 | 15,000 | 14,500 | 2,100,000 |
| Long Beach - Washington | 2 bd | 59 | 33 | 13,500 | 13,000 | |
| | 3 bd | 3 | 33 | 15,500 | 15,000 | 1,023,000 |
| Mission Valley | 1 bd | 55 | 50 | 12,500 | 11,500 | 2,750,000 |
| New Orleans | 1 bd | 22 | 38 | 12,000 | 11,500 | 418,000 |
| San Diego | Studio H | 49 | 50 | 12,000 | 11,000 | |
| | 1 bd | 19 | 50 | 15,000 | 13,500 | 3,875,000 |
| San Francisco | Studio H | 40 | 40 | 9,000 | 8,500 | |
| | 1 bd | 47 | 40 | 12,000 | 11,500 | 1,740,000 |
| Santa Fe | Hotel | 1 | 36 | 9,000 | 8,500 | |
| | C-Studio | 10 | 36 | 12,000 | 10,500 | |
| | 1 bd-c | 5 | 36 | 13,000 | 12,000 | |
| | 1 bd | 14 | 36 | 14,000 | 12,500 | 1,494,000 |
| Taos | Studio | 15 | 36 | 11,000 | 10,500 | |
| | Studio-dlx | 4 | 36 | 12,000 | 11,500 | |
| | 1 bd | 9 | 36 | 13,000 | 12,500 | |
| | 2 bd | 2 | 36 | 15,000 | 14,500 | 540,000 |
| W Yellowstone | 2 bd | 67 | 20 | 13,500 | 13,000 | |
| | 3 bd | 10 | 20 | 15,500 | 14,500 | 870,000 |
| | | | | **TOTAL** | | **22,093,500** |

As a result of this Settlement term, Wyndham's rights and obligations as to the 22 million Vacation Credits, including Wyndham's voting rights in WorldMark elections, will be eliminated. Within 15 days of the Settlement's Effective Date, or as soon as practicable thereafter, the WorldMark reservation system will be modified, and the new lower credit red season values at the affected resorts reflected above will be in place for stays at these resorts, so that members have the benefit of the new, lower credit values when they book reservations or stay at these resorts.

B. ***Extraction of Underutilized Units and Cancellation of Related Credits.*** If the Settlement is approved, between 400 and 481 units at certain underutilized WorldMark resorts will be returned to Wyndham. Underutilized units include only units at resorts with overall Vacation Credit occupancy rates below WorldMark's 85% average rate. This provision of the Settlement "right-sizes" the resorts by eliminating units that WorldMark members underutilize and relieving WorldMark of the expense and ongoing burden of maintaining units that are being underutilized. The specific resorts and number of units being removed at each such resort are identified below (assuming all 481 units are removed):

| Resorts Selected for Extraction | Number of Credits Cancelled | Number of Units Removed |
|---|---|---|
| Angels Camp | 19,780,000 | 44 |
| Bisontown | 8,460,000 | 18 |
| Canmore | 13,824,000 | 31 |
| Denarau Island | 12,688,000 | 22 |
| Galena | 10,568,000 | 31 |
| Grand Lake | 13,968,000 | 32 |
| Indio | 59,384,000 | 113 |
| Lake of the Ozarks | 11,664,000 | 24 |
| Las Vegas Tropicana | 36,504,000 | 56 |
| Pinetop | 9,304,000 | 23 |
| Rancho Vistoso | 10,828,000 | 23 |
| Steamboat Springs | 18,008,000 | 27 |
| Taos | 20,652,000 | 37 |
| TOTAL | 245,632,000 | 481 |

If the Settlement is approved, within 12 months of the Settlement's Effective Date, Wyndham will seek regulatory approval to transfer out of WorldMark a minimum of 400 and up to a maximum of the 481 units identified above or, with the consent of Class Counsel and the WorldMark Board, and with Court approval, certain substitute units (subject to the overall 481 unit maximum) that meet the criteria used to identify the units listed above. Wyndham will complete the transfer of at least 400 units (the "First Transfer Phase") as soon as practicable upon obtaining regulatory approval. If more time is needed to obtain regulatory approval to complete the First Transfer Phase, Wyndham may, depending upon the amount of time required, seek the consent of Class Counsel or a Court order for additional time to complete the First Transfer Phase. After the First Transfer Phase is complete, Wyndham will cancel the Vacation Credits associated with these underutilized units from its pool of unsold developer credits.

When the First Transfer Phase is complete, Wyndham will promptly notify the Court and Class Counsel. At that time, to the extent that Wyndham has not reached the 481 unit maximum or the 245.6 million cap on Vacation Credits, Wyndham may either (i) continue to attempt to obtain the authority to legally transfer the remaining 81 units or such number of substitute units that meet the criteria used to select the original specified units (the "Additional Transfer Phase"); or (ii) declare that this term of the Settlement has been finally and fully performed. After the Settlement's Effective Date, Wyndham has the right to void the Settlement if and only if, after exhausting all commercially reasonable efforts, Wyndham is unable to obtain regulatory approval to legally and effectively transfer out of WorldMark a minimum of 400 units as provided for under this term of the Settlement.

If all 481 units are removed, Wyndham will cancel the 245.6 million Vacation Credits associated with these underutilized units from its pool of unsold developer credits. The 245.6 million cancelled Vacation Credits will no longer be available for sale, will not be sold, and cannot be used in connection with voting in any WorldMark election. As a result of this Settlement term, Wyndham's rights and obligations as to the 245.6 million Vacation Credits, including Wyndham's voting rights in WorldMark elections, will be eliminated. If fewer units are

3

removed, the corresponding number of Vacation Credits to be cancelled will be reduced accordingly. Based on a thorough review of occupancy and credit usage data, Plaintiffs and Wyndham agree that extraction of the units will not materially impair availability at the resorts identified above.

**C.** ***Exchange of Certain Units in Anaheim to Provide More Availability at Lower Credit Values.*** If the Settlement is approved, upon completion of the First Transfer Phase described above, 21 units at WorldMark Anaheim will be returned to Wyndham. These 21 units at WorldMark Anaheim will be replaced by weeks equivalent to 21 units at WorldMark's Dolphin's Cove Resort (also in Anaheim), which has lower credit values. Wyndham will cancel 7 million Vacation Credits associated with this exchange (16.9 million from WorldMark Anaheim less 9.9 million for WorldMark Dolphin's Cove) from its pool of unsold developer credits, as follows:

| Resorts Selected for Exchange | Number of Credits | Number of Units |
|---|---|---|
| Anaheim - REMOVED | (16,874,000) Cancelled | (21) Removed |
| Dolphin's Cove - ADDED | + 9,860,000 Added | + 21 Added |
| **NET CHANGE** | **( 7,014,000) Cancelled** | **-0-** |

The 7 million cancelled Vacation Credits will no longer be available for sale, will not be sold, and cannot be used in connection with voting in any WorldMark election. As a result of this Settlement term, Wyndham's rights and obligations as to the 7 million Vacation Credits, including Wyndham's voting rights in WorldMark elections, will be eliminated.

**D.** ***Aggregate Changes in Credits and Units and Reserves.*** If the Settlement is approved and implemented, the maximum net reduction in the number of Vacation Credits held by Wyndham for sale as WorldMark Vacation Credits will be 274.7 million, calculated as follows: 22 million cancelled + 262.5 million extracted – 9.86 million added at WorldMark Dolphin's Cove. As a result of the Settlement, Wyndham's rights and obligations as to the 274.7 million Vacation Credits, including Wyndham's voting rights in WorldMark elections, will be eliminated. WorldMark owners would be relieved of maintenance and other costs associated with the extracted units, and the number of credits available to compete for reservations at WorldMark resorts will be reduced, while ensuring that the number of units remaining after extraction will be sufficient to meet owner demand.

At the time units are transferred out of WorldMark, exterior reserves maintained for future refurbishment and repair at resorts where units are being returned to Wyndham will be transferred to, and held by, an independent association or governing body responsible for exterior maintenance at the resort. Interior reserves maintained for future refurbishment and repair of the units returned to Wyndham will be deposited with an escrow agent.

**E.** ***Cessation of Sales of TravelShare with Fun Time.*** If the Settlement is approved, Wyndham will cease selling new TravelShare memberships with Fun Time on the later of October 31, 2011 or 90 days after the Settlement's Effective Date. WorldMark owners who join TravelShare prior to that date will not be affected by this aspect of the Settlement.

**F.** ***Election Website.*** If the Settlement is approved, Wyndham will establish a separate internet website for owners to access during election cycles for the purpose of, and with content pertaining to, WorldMark Board of Director election matters, subject to reasonable review and approval of any owner postings by the WorldMark Board or the Board's authorized designee. Wyndham will notify WorldMark owners of the website's existence each election cycle via Destinations Magazine and the Insider Magazine.

**G.** ***Limitations of Party Weekends.*** If the Settlement is approved, Wyndham will not be able to book Party Weekends at any specific WorldMark resort during any particular calendar month in which the occupancy at the resort has exceeded 90% based on occupancy data from the same month in the preceding calendar year.

**H.** ***Release of Claims.*** If the Settlement is approved, all WorldMark owners as of December __ 2010 who do not exclude themselves from the Settlement will release all claims that have been or could have been alleged in the

litigation or that arise out of, are connected with, or are related to the claims asserted in the litigation, including any unknown claims against Wyndham. Wyndham will similarly release all such claims against Plaintiffs and Plaintiffs' Counsel. For a fuller description of the claims being released, please see paragraphs VII.B.1-B.2 of the Settlement Agreement and Release, which is posted at www.GirardGibbs.com/Wyndham-Settlement.asp.

I. ***Dismissal of Pending Litigation; Required Action if Settlement is Voided.*** If the Settlement is approved, the class action lawsuit will be dismissed, with prejudice, subject to the continuing jurisdiction of this Court. The Wixon plaintiffs also will dismiss with prejudice their complaint in intervention filed in the California state litigation involving a dispute as to the distribution of the owner register and owner email addresses, *WorldMark v. Miller*, Sacramento County Superior Court Case No. 34-2008-00025130-CU-PT-GDS.

After the Settlement's Effective Date, Wyndham has the right to void the Settlement if and only if, after exhausting all commercially reasonable efforts, Wyndham is unable to obtain regulatory approval to extract and transfer out of WorldMark a minimum of 400 units as provided for under the extraction provision of the Settlement. If Wyndham exercises this right, the Parties will, within ten (10) business days thereafter, request a Court order that: (i) the judgment and dismissal of the Action be vacated; (ii) Plaintiffs' Fifth Amended Class Action Complaint and Wyndham's Answer thereto be reinstated as the operative pleadings and the record be reinstated; (iii) the Parties shall be restored to their respective positions in the litigation as of July 2, 2010; (iv) all Settlement Class members shall be restored to their respective positions as of July 2, 2010; and (v) notice to the settlement class shall be provided, if deemed necessary, by the Court at Wyndham's expense.

5. **PLAINTIFFS' COUNSEL'S FEE AND EXPENSE APPLICATION.** Plaintiffs and the Class have been represented by Girard Gibbs LLP, a law firm in San Francisco, California. Girard Gibbs has been assisted by Gersh & Helfrich LLP, a Denver, Colorado law firm. To date, Plaintiffs' Counsel have not been compensated for any of their work or reimbursed for any of the significant expenses incurred in the litigation. Wyndham has agreed, subject to Court approval, to pay a fee award up to $5 million to compensate Plaintiffs' Counsel for the work they have performed for the Class, the litigation expenses incurred (including experts), and the costs associated with the notice and administration of the Settlement, together with any amounts paid to Plaintiffs as incentive awards. This award will be deposited into an escrow account, and dispensed to Plaintiffs' counsel in two phases as the Parties fulfill their obligations under the Settlement. Also subject to Court approval, each named Plaintiff will receive a $5,000 incentive award to be paid out of any fee award to Plaintiffs' Counsel. Neither Plaintiffs, WorldMark, nor the Class will be responsible for the payment of any of Plaintiffs' Counsel's fees or expenses or the incentive awards. In addition, the Settlement described above is not contingent upon the Court's award of fees or expenses to Plaintiffs' Counsel or the incentive awards to the named Plaintiffs.

Plaintiffs' Counsel's fee and expense application, including the incentive awards, are subject to Court approval. If you wish to comment on the fee and expense application before the Court considers it, the Notice of Class Action Settlement will explain how and when to submit comments.

6. **MORE INFORMATION.** This notice only summarizes the lawsuit and the Settlement. For more details, you may review the Settlement Agreement and Release, available online in Adobe Portable Document Format (pdf) at www.GirardGibbs.com/Wyndham-Settlement.asp. The Settlement Agreement and all other pleadings and papers filed in the lawsuit are available for inspection and copying during regular business hours at the office of the Clerk of the Court, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102.

**If you would like more information about the Settlement, you may contact Plaintiffs' counsel, Girard Gibbs LLP, 601 California Street, Suite 1400, San Francisco, CA 94108; telephone number (415) 981-4800; or by email to Wyndham-Settlement@GirardGibbs.com.**

---

**PLEASE DO <u>NOT</u> CONTACT THE COURT WITH QUESTIONS ABOUT THE SETTLEMENT.**

---

DATED: _____, 2010          BY ORDER OF THE UNITED STATES DISTRICT COURT
                                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

1
2
3
4
5
6
7
8
9
10
11
12
13
14

# EXHIBIT D

16
17
18
19
20
21
22
23
24
25
26
27
28

## EXHIBIT D

**Reduction of Credit Values and Cancellation of Credits**

| Resorts Selected for Red Season Credit Value Reductions | Unit Type | Number of Units | Number of Season Weeks | Old Red Season Credit Value | New Reduced Red Season Credit Value | Credits Canceled To Permit Credit Reductions |
|---|---|---|---|---|---|---|
| **Anaheim** | Studio | 10 | 50 | 11,000 | 10,500 | |
| | 1 bd | 62 | 50 | 14,000 | 13,000 | |
| | 2 bd | 122 | 50 | 16,500 | 16,000 | 6,400,000 |
| **Camlin** | 1 bd | 57 | 31 | 12,000 | 11,500 | 883,500 |
| **Las Vegas – Tropicana** | 2 bd | 36 | 50 | 13,000 | 12,500 | |
| | 2 bd dlx | 48 | 50 | 15,000 | 14,500 | 2,100,000 |
| **Long Beach - Washington** | 2 bd | 59 | 33 | 13,500 | 13,000 | |
| | 3 bd | 3 | 33 | 15,500 | 15,000 | 1,023,000 |
| **Mission Valley** | 1 bd | 55 | 50 | 12,500 | 11,500 | 2,750,000 |
| **New Orleans** | 1 bd | 22 | 38 | 12,000 | 11,500 | 418,000 |
| **San Diego** | Studio H | 49 | 50 | 12,000 | 11,000 | |
| | 1 bd | 19 | 50 | 15,000 | 13,500 | 3,875,000 |
| **San Francisco** | Studio H | 40 | 40 | 9,000 | 8,500 | |
| | 1 bd | 47 | 40 | 12,000 | 11,500 | 1,740,000 |
| **Santa Fe** | Hotel | 1 | 36 | 9,000 | 8,500 | |
| | C-Studio | 10 | 36 | 12,000 | 10,500 | |
| | 1 bd-c | 5 | 36 | 13,000 | 12,000 | |
| | 1 bd | 14 | 36 | 14,000 | 12,500 | 1,494,000 |
| **Taos** | Studio | 15 | 36 | 11,000 | 10,500 | |
| | Studio-dlx | 4 | 36 | 12,000 | 11,500 | |
| | 1 bd | 9 | 36 | 13,000 | 12,500 | |
| | 2 bd | 2 | 36 | 15,000 | 14,500 | 540,000 |
| **W Yellowstone** | 2 bd | 67 | 20 | 13,500 | 13,000 | |
| | 3 bd | 10 | 20 | 15,500 | 14,500 | 870,000 |
| | | | | | **TOTAL** | **22,093,500** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

# EXHIBIT E

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2                                   **EXHIBIT E**

3                          **Extraction of Units and Credits**

4

| Resort | Number of Credits Cancelled | Number of Units Removed |
|---|---|---|
| Angels Camp | 19,780,000 | 44 |
| Bisontown | 8,460,000 | 18 |
| Canmore | 13,824,000 | 31 |
| Denarau Island | 12,688,000 | 22 |
| Galena | 10,568,000 | 31 |
| Grand Lake | 13,968,000 | 32 |
| Indio | 59,384,000 | 113 |
| Lake of the Ozarks | 11,664,000 | 24 |
| Las Vegas Tropicana | 36,504,000 | 56 |
| Pinetop | 9,304,000 | 23 |
| Rancho Vistoso | 10,828,000 | 23 |
| Steamboat Springs | 18,008,000 | 27 |
| Taos | 20,652,000 | 37 |
| **TOTAL** | **245,632,000** | **481** |

**Exchange of Units in Anaheim, CA**

| Resort | Number of Credits | Number of Units |
|---|---|---|
| Anaheim - REMOVED | (16,874,000) Cancelled | (21) Removed |
| Dolphin's Cove - ADDED | + 9,860,000 Added | + 21 Added |
| **NET CHANGE** | **( 7,014,000) Cancelled** | **-0-** |