**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARKE AND REBECCA WIXON, et al., | No. C 07-02361 JSW |
| Plaintiffs, | **ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING IN PART MOTION FOR ATTORNEYS' FEES AND INCENTIVE PAYMENTS** |
| v. | |
| WYNDHAM RESORT DEVELOPMENT CORP. (f/k/a TRENDWEST RESORTS, INC.), et al., | |
| Defendants. | **(Dockets 695, 696)** |

## INTRODUCTION

Now before the Court for consideration is the Motion for Final Approval of Settlement Between Plaintiffs and Defendant Wyndham Resort Development Corp. ("Wyndham"), filed by Plaintiffs Clarke Wixon, Rebecca Wixon, Norman Wixon, Barbara Wixon, and Kandace Scattolon (collectively "Plaintiffs"). The Court has considered the parties' papers, relevant legal authority, and the written objections submitted by Class Members.[1]

On August 5, 2011, the Court held a final approval hearing. Counsel for Plaintiffs and counsel for Wyndham appeared and argued at that hearing. The Court also heard from Stephan Willett, Esq., counsel for Zoe Smith-Fallgren and Gregory Miller, and Gary Wirt. Terry Wirt

---

[1] Zoe Smith-Fallgren and Gregory Miller filed a 96 page written objection, through counsel, and a 37 page reply brief. The Court grants their request for leave to file oversized briefs. The Court shall refer to their opening objections as the "Smith-Miller Objections."

1  and Daniel and Vanessa Van also were present.[2] For the reasons set forth in the remainder of
2  this Order, the Court HEREBY GRANTS the motion for final approval of the Settlement
3  Agreement, and HEREBY GRANTS IN PART Plaintiffs' Motion for Attorneys' Fees and
4  Incentive Payments.

## BACKGROUND

The Court has set forth the facts and procedural history underlying this dispute in several prior orders, and the parties' familiarity with those facts and the procedural history is presumed. (*See, e.g.,* Docket Nos. 39, 113, 114.) In brief, Plaintiffs brought claims against Wyndham for breach of contract, breach of the implied covenant of good faith and fair dealing, violations of California Business and Professions Code §§ 17200, *et seq.*, violations of California Business and Professions Code §§ 11210, *et seq.*, and for declaratory relief, based on allegations that Wyndham had violated numerous provisions of various documents governing the relationship between Wyndham, WorldMark, and WorldMark members ("the Government Documents"). (*See generally* Docket No. 671, Sixth Amended Complaint.)

On December 3, 2010, the Court issued an Order preliminarily approving the Settlement Agreement, which resolves the claims against Wyndham. (Docket No. 668.) Pursuant to the terms of the Settlement Agreement[3], the parties have agreed: (1) that Wyndham will cancel 22 million Vacation Credits at the Disputed Resorts; (2) that WorldMark will transfer to Wyndham no less than 400 and no more than 481 units from specific resorts and all Vacation Credits associated with those units will be cancelled; (3) that when the First Transfer Phase is complete, Wyndham will transfer 21 units and corresponding Vacation Credits from the WorldMark

---

[2] At the hearing on this matter, the Court advised all present that it would not hear from class members who attended the hearing but who had opted out of the Settlement Agreement, because, by opting out, those persons excluded themselves from the Class, are not bound by the Settlement Agreement, and, thus, do not have standing to object to the Settlement Agreement. *See, e.g., In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Practices Litig.*, 2001 WL 1877630, at *4 n. 3 (N.D. Cal. May 17, 2011) (citing *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 28-29 (D.D.C. 2000)). The Court also determined that it would not hear from those persons who had failed to file timely written objections to the Settlement Agreement.

[3] Terms that are not otherwise defined in this Order shall have the same meaning as used in the Settlement Agreement. (*See* Docket No. 661, Joint Application for Preliminary Approval, Ex. 1.)

2

1 Anaheim Resort to the WorldMark Dolphin's Cove Resort and will cancel 7 million Vacation
2 Credits; (4) that there will be a maximum net reduction in the amount of Vacation Credits
3 Wyndham holds for sale; (5) that Wyndham will stop selling new TravelShare memberships
4 with Fun Time effective on the later of October 31, 2011 or 90 days after the Effective Date of
5 the Settlement Agreement; (6) that Wyndham will take certain actions with respect to the
6 WorldMark budget; (7) that Wyndham will work in conjunction with the Board to establish and
7 maintain a separate internet website for members to access during election cycles; and (8) that
8 Wyndham may continue to book Party Weekends, but on specific conditions set forth in the
9 Settlement Agreement.

10 The Court shall address specific additional facts as necessary in its analysis.

## ANALYSIS

**A. Motion to Be Appointed as Lead Counsel for Objectors and Motion for Discovery.**

Ms. Smith-Fallgren and Mr. Gregory Miller, through counsel, request that Mr. Willet be appointed lead counsel for all objectors and they request discovery. With respect to the request to be appointed lead counsel for objectors, assuming without deciding that Mr. Willet would be competent lead counsel, the Court concludes that based on the number of objectors and the issues in this case, it is not necessary to appoint counsel for all of the objectors. *See, e.g., Mandujano v. Basic Vegetable Prod., Inc.*, 541 F.2d 832, 836 n.6 (9th Cir. 1976) (noting that there is no specific authority regarding the appointment of counsel for objectors, but noting that where it appears that "objectors lack separate counsel due to their lack of sophistication rather than financial inability to attract counsel, it would be proper for a trial court to suggest that the court would be greatly aided if the objectors' position were presented by independent competent counsel").

Ms. Smith-Fallgren and Mr. Miller also request that they be permitted to conduct discovery on numerous issues. (*See* Docket No. 983, Smith-Miller Objections at ¶¶ 10, 60, 64, 85, 87, 96, 99-100, 109; Docket No. 1334, Smith-Miller Response to Final Brief, ¶ 47.) "Class members who object to a class action settlement do not have an absolute right to discovery; the Court may, in its discretion limit the discovery or presentation of evidence to that which may

assist it in determining the fairness and adequacy of the settlement." *Hemphill v. San Diego Assoc. of Realtors, Inc.*, 225 F.R.D. 616, 619 (S.D. Cal. 2004). In the *Hemphill* case, the court set forth the following criteria to consider when faced with a request for discovery: (1) the nature and amount of previous discovery; (2) whether there is a reasonable basis for the discovery requests; and (3) the number and interests of objectors. *Id.* at 620 (citation omitted). The Court finds that each of these criteria weigh against granting the request for discovery.

First, the record in this case establishes that the parties exchanged a significant number of documents, engaged in written discovery and depositions, and conducted expert discovery. The record also establishes that the parties litigated discovery as vigorously as they litigated the remainder of this case. Indeed, the Court appointed a Special Master to address discovery disputes that arose during the class certification process. Second, the Court concludes that the discovery Ms. Smith-Fallgren and Mr. Miller request primarily pertains to the merits of the case and would not assist in evaluating whether the Settlement Agreement should be approved. In addition, notwithstanding their arguments to the contrary, they have not shown that there is any evidence of collusion between counsel for Plaintiffs and Wyndham. Third, only a few persons chose to formally object to the settlement.

Accordingly, the Court denies the motion for discovery.

**B.     Objections.**

The Court received twenty-five timely written objections from Class Members.[4] A number of those objections, including the objections submitted by Mr. and Mrs. Van, provide no specific reason for the objection, state the Settlement Agreement is not in the best interests of the class, reduces owner benefits, or changes the terms of the contract, without further

---

[4] In addition to the Smith-Miller Objections, he following persons submitted objections acting on their own behalf: Mark and Virginia Blosser, Patricia Burkenpass, Marine and Frederick Cerauskis, John and Mary Dolbey, Robin and Rob Gangle, Todd Hammond, Stanley Jozefowicz, Arthur and Ferne Koo.pe, Diana Larios, Dean and Kryssia Lincoln, James and Wanda McClelland, Charles and Janet Reed, Leonard Sussman, Johann and Sandra Swart, Daniel and Vanessa Van, Darryl and Sheena Victoria, Marian Wanebo, Garty and Terry Wirt, Kenneth and Kathleen Wright, and Dennis and Linda Zea. (*See* Reply Declaration of Elizabeth C. Pritzker ("Pritzker Reply. Decl."), ¶ 4, Exs. A-T.) Although counsel did not construe them as such, Ronald Birchard, Donald and Betsy James, and Dana Reedy filed letters that the Court construes as objections. (*See* Pritzker Reply Decl., Ex. U, pp. 36, 48, 68.)

1 elaboration, or the objections express general dissatisfaction with the Travel Share program. In
2 addition, at least one objection is based on a misunderstanding that the Settlement Agreement
3 will take away "Bonus Points." (*See* Pritzker Reply Decl., Exs. B, E-F,H-J, L, O-Q, Ex. U, pp.
4 36) Many of these objections are conclusory, and none of these specific objections cause the
5 Court to conclude that the Settlement Agreement is not fair, reasonable, and adequate.

6 Certain class members also object on the basis that the terms of the Settlement
7 Agreement propose changes that would require a vote of the WorldMark membership. (*See*
8 *generally* Smith-Miller Objections; *see also* Pritzer Decl., Exs. A, G, M-N, R-T, Ex. U, pp. 48,
9 68.) At the hearing, counsel for Plaintiffs and Wyndham cogently and persuasively explained
10 that the terms of the Settlement Agreement do not alter any of the terms of the Governing
11 Documents. The Court also finds persuasive their arguments explaining why the terms of the
12 Settlement Agreement do not trigger any of the provisions that might require a member vote.
13 As such, the Court concludes that these objections do not raise serious questions about the
14 fairness, adequacy, and reasonableness of the Settlement Agreement.

15 A number of objectors, including the Wirts, also criticize the Settlement Agreement on
16 the basis that it does not adequately address Wyndham's alleged abandonment of "Relative Use
17 Value," or the changes to the availability of Bonus Time. (*See, e.g.,* Smith-Miller Objections;
18 Pritzker Reply Decl., Exs. A, D, M, R-T.) These objections pertain to the merits of Plaintiffs'
19 allegations. "Settlement is the offspring of compromise; the question we address is not whether
20 the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free
21 from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). The parties
22 reached this discussion after extensive discovery, and counsel for Plaintiffs has represented that,
23 having reviewed the discovery, there was significant risk in pursuing these claims. (*See, e.g.,*
24 Docket No. 1313, Reply Br. at 11:6-12:18.) The Court therefore concludes that these objections
25 do not raise serious questions about the fairness, adequacy, and reasonableness of the
26 Settlement Agreement.

27 Several objectors also contend that the reduction in Credit Values at the Disputed
28 Resorts is not sufficient and that Fun Time must be eliminated. (*See, e.g.,* Smith-Miller

1  Objections; Pritzker Reply Decl., Es. A, M, R-T.) Again, the Settlement Agreement is the
2  product of compromise. Although these Class Members may argue that the parties could have
3  achieved better results, the Court does not find that these objections raise serious questions
4  about the fairness, adequacy, and reasonableness of the Settlement Agreement.

5  Finally, the Court finds that objections relating to the dismissal of the state court
6  litigation filed by Robin Miller, in which the Plaintiffs intervened, and to the alleged breadth of
7  the proposed release do not alter the Court's conclusion that the Settlement Agreement is fair,
8  reasonable and adequate.

**C.  The Court Approves the Settlement Agreement.**

On April 19, 2011, the Court approved the parties' proposed form of notice and directed that notice be provided to WorldMark members by United States mail. The Court also ordered that the Notice of Settlement be posted on WorldMark's website and on Plaintiffs' counsels' website. (*See* Docket No. 680.) The parties complied with the Court's directives. (*See* Docket No. 694, Declaration of David Herrick ("Herrick Decl."), ¶ 31; Docket No. 697, Declaration of Jonathan Levine ("Levine Decl."), ¶¶ 41-43; Docket No. 700, Declaration of Lance Blair ("Blair Decl.").)

Ms. Smith-Fallgren and Mr. Miller argue that the notice was not prominently displayed on WorldMark's or counsel's websites, and they also take issue with the form of notice. The Court has reviewed the exhibits submitted with their objections, and it concludes that the website postings were adequate. Therefore, the Court finds that the form and manner of the notice is the best notice practicable under the circumstances and has been given in full compliance with Rule 23.1 and due process.

In order to determine whether the proposed settlement should be approved, the Court may weigh a number of factors, including: "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence

of a governmental participant; and the reaction of the ... members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).[5]

### 1. The amount of settlement, results achieved, the strength of Plaintiffs' case and the risk of further litigation.

As set forth above, the proposed settlement does not include a monetary component, except for purposes of compensating Plaintiffs' counsel for fees and expenses.[6] However, one theory of Plaintiffs' case has been that Wyndham's actions resulted in the issuance of excess credits, which made it harder for members to obtain reservations and increased Wyndham's voting power. As a result of this Settlement Agreement, Wyndham will cancel a large number of credits, which will reduce credit values at specific resorts to make them more affordable and will also reduce Wyndham's voting power. (*See* Levine Decl., ¶ 49.) Plaintiffs' counsel also notes that the estimated value of the credits that Wyndham has agreed to surrender is approximately $40 million. (*Id.*)

Wyndham has mounted a vigorous defense to Plaintiffs' claims at every step of this litigation, and the fact that it did not convince the Court to dismiss this case at the pleadings phase does not mean that it could not have prevailed on summary judgment or at trial. Similarly, although Plaintiffs prevailed on their motion for class certification, the Court could have revisited that decision at any point before trial. Finally, the proposed settlement provides for immediate changes and relief, and it removes the risk that after approximately four years of protracted litigation that the Plaintiffs and the Class Members might not recover anything. *See, e.g., Officers for Justice v. Civil Serv. Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

As such, the Court finds that these factors weigh in favor of approving the Settlement Agreement.

---

[5] Although none of the parties are governmental entities, the parties have provided notice of the Settlement Agreement to the California Department of Real Estate, and others. There has been no objection filed with the Court from any of the governmental entities to have received notice of the proposed Settlement Agreement.

[6] The Court addresses that portion of the Settlement Agreement in Section D of this Order.

7

**2. The extent of discovery completed, the stage of the proceedings, and the experience and views of counsel.**

The settlement does not come early in this litigation. Wyndham unsuccessfully moved to dismiss Plaintiffs' complaint, and thereafter the parties conducted fact discovery and exchanged expert reports on the issues of liability, class certification, and damages. As such, the parties reached the proposed settlement at time when they had a full and fair understanding of their cases and their opponents' case. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (factor weighed in favor of approving settlement where parties had conducted extensive discovery and had gone through a round of summary judgment motions); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (factor weighed in favor of approving settlement where plaintiffs had conducted significant discovery and consulted with damages and accounting experts). Furthermore, Plaintiffs' counsel have extensive experience in prosecuting complex consumer and securities litigation, and the Court may consider their view that the settlement is "an excellent result for the class." (Levine Decl., ¶¶ 6-7.) *See In re Mego Fin.*, 213 F.3d at 459.

Therefore, the Court finds that these factors also weigh in favor of approving the Settlement Agreement.

**3. The reaction of WorldMark members to the proposed settlement.**

According to the record, in addition to the website postings, notice was mailed to the 249,995 Class Members. (Blair Decl., ¶ 4.) Pursuant to that Notice, the Court set July 8, 2011 as the deadline to receive objections or comments on the proposed Settlement Agreement and to opt-out of the Settlement Agreement. As noted, the Court received approximately twenty-five objections. 11,208 Class Members chose to opt-out, which represents approximately 4.5 percent of the Class.[7] However, the Court takes into consideration that many of these persons chose to opt-out after receiving an email from Robin Miller, which presented his views of the Settlement Agreement. The Court finds that, overall, the reaction of the class to the Settlement

---

[7] Many of those members chose to do so for the same reasons raised by a number of the objectors.

8

1 Agreement is favorable. *See, e.g., Rodriguez*, 563 F.3d at 967. Therefore, the Court finds that this factor also weighs in favor of approving the Settlement Agreement.

Accordingly, for the foregoing reasons, the Court concludes that the Settlement Agreement is fair, reasonable, and adequate, and the Court GRANTS the motion for final approval.

## C. The Court Grants, in Part, the Motion for Attorneys' Fees and Incentive Payments.

The Settlement Agreement also provides that Wyndham will pay Plaintiffs' counsel up to $5 million as compensation for fees and costs incurred prosecuting this portion of the action. Plaintiffs attest that they have spent more than 6,740 hours on the class claims, and they actually incurred $3,426,729in legal fees. (Levine Decl., ¶ 44.) Plaintiffs seek a multiplier of 1.27, which brings their total fee request to $ 4,367,537. Plaintiffs also attest that they have incurred $607,463 in expenses. (*Id.*, ¶ 45.)

The parties have expended an extraordinary amount of time and energy to litigate this case, which has now been pending for over four years. The parties did not reach an agreement on fees until after the substantive terms had been negotiated and did so only with the assistance of a neutral third party. (Levine Decl., ¶ 45.) The Court finds the fee award to be reasonable in light of the time expended by counsel and the benefits to be conferred upon the Class Members. Accordingly, the Court also approves that aspect of the Settlement Agreement.

Plaintiffs also request that the Court approve an incentive payment in the amount of $5,000.00 to be awarded to each of the five plaintiffs. "Incentive awards are fairly typical in class action cases." *Rodriguez*, 563 F.3d at 958. However, the decision to approve such an award is a matter within the Court's discretion. *See In re Mego Fin.*, 213 F.3d at 463. In general, an incentive award is designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *West*, 563 F.3d at 958-59.

Plaintiffs submit declarations stating that they have monitored the progress of the case, remained in regular contact, via telephone and in person, with Class Counsel, have reviewed

9

papers filed in the case, searched for documents, attended depositions, case management conferences, and Clarke Wixon attests that he attended the mediation session. (*See* Docket No. 698, Joint Declaration of Wixons, ¶¶ 2-7; Docket No. 699, Declaration of Kandice Scattolon, ¶¶ 2-5.) Plaintiffs, however, have not provided an estimate of how much actual time they have devoted to this case over other obligations. Nor have they suggested that they undertook any great risk to either their finances or to their reputations in bringing this action. In addition, although the Plaintiffs ask that they each receive the same incentive payment, Ms. Scattalon has only been involved in this case, since 2010, whereas the Wixons have been involved in the case since its inception in 2007.

The Court does believe that Plaintiffs' efforts should be recognized but not in the amount they seek. Accordingly, the Court shall grant each of the Wixons an incentive payment in the amount of $3,500 and shall award Ms. Scattalon an incentive payment in the amount of $1,750.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS the motion for final approval of the Settlement Agreement and GRANTS IN PART Plaintiffs' Motion for Attorneys Fees and Costs. (Docket Nos. 695, 696.)

It is FURTHER ORDERED that those persons listed in Docket No. 1337, Attachment A and in Docket No. 1342 have submitted timely opt-out letters and are hereby excluded from the Settlement Class.

It is FURTHER ORDERED that this action is DISMISSED with prejudice and without costs, except as provided for in the Settlement Agreement. Wyndham, the Plaintiffs, and the Settlement Class shall be deemed to have, and by operation of the separate judgment that the Court shall issue, shall have released the claims and causes of action as set forth in the Settlement Agreement.

//
//
//

1  It is FURTHER ORDERED that, without affecting the finality of the judgment in any
2  way, administration of the Settlement as embodied in the Settlement Agreement shall be under
3  the authority of this Court. The Court shall retain jurisdiction in order to protect, preserve, and
4  implement the Settlement Agreement, and shall retain jurisdiction to enter such further orders as
5  may be necessary or appropriate to administer and implement the terms and provisions of the
6  Settlement Agreement.

The Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: August 8, 2011

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California